January 17, 2018

**VIA ECF**

The Honorable P. Kevin Castel
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, NY 10007-1312

  Re: *SEC v. Rashid*, No. 17-cv-8223-PKC (S.D.N.Y.)

Dear Judge Castel:

  In accordance with the Court's Initial Pretrial Conference Order dated November 15, 2017 ("Order"), Plaintiff United States Securities and Exchange Commission ("Commission" or "SEC") and Defendant Mohammed Ali Rashid's ("Defendant" or "Mr. Rashid"), by counsel, respectfully submit this joint letter in advance of the Initial Pretrial Conference in this case that is scheduled for January 24, 2018, at 11:30 a.m.

  1. Brief Description of the Case

  This case concerns allegations by the Commission that from January 2010 to June 2013, Mr. Rashid, a former partner of Apollo Management, L.P. ("Apollo"), misappropriated approximately $290,000 by expensing personal items from certain Apollo private equity funds. The SEC's complaint alleges violations of §§ 206(1) and (2) of the Investment Advisers Act of 1940 ("the "Advisers Act") and aiding and abetting Apollo's violations of these provisions. The Commission seeks a permanent injunction against future violations of the federal securities law and a civil money penalty.

  a. Plaintiff's Statement of Factual and Legal Bases for the Claims

  Sections 206(1) and (2) of the Advisers Act prohibit an investment adviser from: (1) employing any device, scheme, or artifice to defraud clients or prospective clients; or (2) engaging in any transaction, practice, or course of business that operates as a fraud or deceit upon clients or prospective clients. An investment adviser is a fiduciary whose actions are governed by the highest standards of conduct. *See SEC v. Capital Gains Research, Inc.*, 375 U.S. 180, 191-92 (1963). As fiduciaries, investment advisers have a duty of utmost good faith, to fully disclose all material facts, and to employ reasonable care to avoid misleading clients. *See id.* at 194. Investment adviser fraud must concern a material fact. *See id.* at 200. Scienter is a required element of a Section 206(1) violation, but a violation of Section 206(2) can be satisfied by a showing of simple negligence. *See SEC v. Steadman*, 967 F.2d 636, 643 n. 5 (D.C. Cir. 1992). Particularly relevant to this case, "diversion and misappropriation of funds by an adviser are necessarily material." *SEC v. Penn, III et al.*, 225 F. Supp. 3d 225, 238 (S.D.N.Y. 2016). *See also*

*Blair Alexander West v. SEC*, 641 Fed. Appx. 27 (2d Cir. 2016) ("[m]isappropriation or misuse of customer funds constitutes a serious violation of the securities laws, involving a betrayal of the most basic and fundamental trust owed to a customer.").

The Complaint alleges Defendant was an investment adviser and fiduciary to his client funds, but he nonetheless regularly charged personal expenses to his corporate credit card and submitted expense reports that falsely characterized those expenses as legitimate business expenses. The Complaint further alleges that Defendant, through Apollo, obtained reimbursement from the client funds based on Defendant's false representations and that Defendant knew this would happen. The personal expenses that Defendant is alleged to have misrepresented as business expenses include: (1) travel and hotel expenses for vacations at resorts in Cancun, Rio de Janeiro and other locales; (2) bed and breakfast expenses for weekends at the New Jersey shore and weekend trips to Las Vegas; and (3) hair salon charges, clothing expenses and consumer electronics purchases. The Complaint alleges that Defendant continued to charge such personal expenses to client funds even after he was twice caught by Apollo and told to stop.

To establish that Defendant misappropriated client funds, the Commission intends to rely on his own admissions, detailed spreadsheets that include such admissions, and on contemporaneous documents and relevant witness testimony to establish that Defendant's claims that certain expenses were business related – and should be charged to the funds that he managed – were false. As the Complaint alleges, Defendant ultimately admitted to Apollo that many of the expense items that he had characterized as legitimate business expenses during the Relevant Period were actually his personal expenses. After being placed on leave in mid-2013, Defendant and his counsel participated in a detailed review of his expenses being conducted by Apollo's auditor and outside counsel. Defendant and his counsel were afforded access to his emails, calendars and other records and sought to identify business justification for his claimed expenses. In the course of the review, Defendant's lawyers were given detailed spreadsheets that listed thousands of individual expenses that Defendant had incurred during the Relevant Period. Each entry showed the expense amount, date of expense, merchant and the description that Defendant had provided in his original expense reports. The spreadsheets also contained a column titled "expense classification." After attempting to identify a business justification for each of the expense entries listed in the spreadsheets, Defendant and/or his counsel annotated the "expense classification" with the designation "personal," "business" or sometimes "partial business." The expenses that Defendant acknowledged were "personal" added up to approximately $220,000.

In addition to the amounts that Defendant identified as his "personal" expenses on the spreadsheets, Apollo's auditor determined that another approximately $61,000 worth of the expense entries on the spreadsheets lacked a documented business justification. Defendant's lawyers were shown versions of the spreadsheets that contained the auditor's findings. Moreover, in addition to the expenses that Defendant self-identified as "personal" and the additional expenses that the auditor found was personal, Defendant had previously admitted that another approximately $8,000 in claimed business expenses were actually his personal expenses. All told, Defendant agreed to repay a total of approximately $290,000.

The Honorable P. Kevin Castel
January 17, 2018
Page 3 of 5

In addition to reliance on Defendant's admissions, to the extent necessary, the Commission intends to present contemporaneous documents and testimony from Apollo executives, Apollo fund clients, and others to establish that certain of Defendant's claimed business expenses were actually personal, that he acted with scienter, and that his misappropriation was material.

b. Defendant's Statement of Factual and Legal Bases for Defenses

By pre-motion letter dated December 26, 2017, Mr. Rashid sought leave to file a motion to dismiss. If granted leave, Mr. Rashid intends to argue that the Complaint should be dismissed because: (1) it fails to comply with Federal Rule of Civil Procedure Rule 9(b); in failing to allege with the required specificity the "more than one thousand" personal expenses purportedly at issue; (2) the alleged misconduct is immaterial, given the infinitesimal effect or potential effect that approximately $300,000 in expenses could ever have had on the relevant private equity funds, which had tens of billions of dollars in balances; and (3) a five-year limitations period under 28 U.S.C. § 2462 applies to the Commission's claims for injunctive and monetary relief, with the consequence that claims based on conduct pre-dating June 2011 are time-barred.

Mr. Rashid intends to hold the Commission to its burden of proving that he intentionally submitted false expense claims for the purpose of misappropriating client funds. Contrary to the SEC's assertions, Mr. Rashid has never admitted fraud. In mid-2013, while resolving what was at the time an internal employment dispute between himself and Apollo, Mr. Rashid reviewed expense claims and spreadsheets summarizing his reimbursed expenses from as early as January 2010, or more than three years prior. This review was conducted as part of what Mr. Rashid believed to be a confidential, internal process which stemmed largely from Mr. Rashid's use of a single corporate credit card for both personal and business expenses (a practice among its employees that Apollo permitted at the time) and mischaracterizations in expense claims prepared by Mr. Rashid's administrative assistants, who in retrospect lacked adequate guidance, from Mr. Rashid and others. Mr. Rashid helped Apollo identify many items that were clearly reimbursable business expenses. For the smaller subset of expenses that could not be easily determined from memory or from the paltry set of records made available to Mr. Rashid at the time, Mr. Rashid decided to repay them all. That repayment encompassed all expense claims at issue in this case. He did so for the avoidance of doubt and in an effort to resolve the matter expeditiously. The SEC had no involvement in the process between Apollo and Mr. Rashid.

The SEC's reliance on Mr. Rashid's re-payment as an "admission" of fraudulent intent is therefore completely unfounded. That Mr. Rashid was acting with a fraudulent intent at the time these expenses were submitted for reimbursement will be strongly disputed, including for the reason that Apollo's reimbursement policies for travel and other business-related expenses were far from clear, or routinely or uniformly enforced. Apollo never reprimanded Mr. Rashid for his expense claims before mid-2013 review described above; it repeatedly promoted him. The SEC will also bear the burden of showing that there was no business purpose for each and every one of the "more than one thousand" expenses to which the Complaint repeatedly refers, without particularization. Mr. Rashid expects that the information produced in discovery will demonstrate instead that many expenses referenced in the Complaint had a legitimate business purpose or fell within the scope of Apollo's reimbursement policies and practices at the time, even though he agreed to re-pay them.

2. <u>Contemplated Motions</u>

The Commission does not presently contemplate being able to file a dispositive motion in this case, but will continue to evaluate the possibility of such a motion as discovery proceeds. Further, the Commission anticipates filing certain pre-trial motions depending upon defendant's proposed evidence, including but not limited to his use of expert witnesses, and any proposed attacks on the Commission's investigation, its decision to file the case, and the nature of the case.

Mr. Rashid has filed the pre-motion letter described above, seeking leave to file a motion to dismiss. Like the Commission, Mr. Rashid cannot yet determine whether he will file additional dispositive motions or discovery motions, assuming the case is not dismissed. Mr. Rashid will evaluate such motions as he learns more about the proof on which the Commission intends to rely.

3. <u>The Prospect for Settlement</u>

The parties are willing to discuss settlement. The parties further state as follows:

a. <u>The Plaintiff's Position</u>

This matter is likely to settle only if Defendant agrees to an order that bars him from acting as an investment adviser fiduciary in the future. Absent settlement, the Commission's Division of Enforcement will seek a bar in a separate proceeding before the Commission following a decision on the merits in the present litigation. A bar is necessary and in the public interest as Defendant's conduct was egregious, continued after Apollo informed him that it was improper, and occurred over an extended period of time. Defendant knew his conduct was improper as he took steps to conceal it while he continued to directly benefit from it. Should Defendant remain an investment adviser, it is certain his position will present the opportunity for future violations.

b. <u>The Defendant's Position</u>

It would be an insurmountable barrier from Mr. Rashid's perspective, if the Commission insisted on structuring the settlement so as to bar Mr. Rashid from working in the investment adviser industry. Mr. Rashid's career has already been irreparably damaged by the SEC investigation, and he is currently unemployed. A bar, which would foreclose even future prospects, would be a term to which Mr. Rashid has no reason or incentive to agree.

The Honorable P. Kevin Castel
January 17, 2018
Page 5 of 5

4. Conclusion

As the Court's Order also requires, the parties are jointly preparing a proposed Case Management Plan to be submitted at the Initial Pretrial Conference. The undersigned counsel look forward to addressing these matters at the Conference and thank Your Honor for his attention to this case.

Respectfully submitted,

| | |
|---|---|
| *Duane K. Thompson* (signed) | *William A. Burck* (signed) |
| Duane K. Thompson | William A. Burck |
| James M. Carlson | Christine H. Chung |
| Securities and Exchange Commission | R. Brian Timmons |
| 100 F Street NE, | Quinn Emanuel Urquhart & Sullivan, LLP |
| Washington, D.C., 20549 | 777 Sixth Street NW, 11th Floor |
| | Washington, D.C., 20001 |
| Attorneys for Plaintiff | Attorneys for Defendant |