

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
DIVISION OF ENFORCEMENT
100 F Street, N.E.
WASHINGTON, D.C. 20549-1004

DIVISION OF
ENFORCEMENT

Duane K. Thompson
Assistant Chief Litigation Counsel
Telephone: (202) 551-7159
Facsimile: (202) 772-9282
ThompsonD@sec.gov

December 4, 2018

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, NY 10007-1312

Re:   *SEC v. Rashid*, No. 17-cv-8223-PKC (S.D.N.Y.)

Dear Judge Castel:

In accordance with Your Honor's Order dated November 13, 2018 (the "Order"), Plaintiff Securities and Exchange Commission ("SEC") submits this reply letter in further support of its request for a ruling on Defendant Mohammed Ali Rashid's ("Rashid") assertion of common interest privilege (or protection) as a basis to instruct his former lawyer, Glen McGorty, Esq. ("McGorty") of Crowell & Moring, LLP ("Crowell"), not to answer questions during his deposition.[1]   As discussed below, none of Rashid's arguments withstand analysis:

1) While acknowledging that he must establish a "meeting of the minds" between Crowell and Paul Weiss as representatives of their respective clients, Rashid fails to identify any objective evidence of mutual assent.   McGorty's *belief* that he discussed common interest privilege with Paul Weiss is plainly insufficient given his admitted lack of any *actual recollection* of such discussion.   The fact that Paul Weiss partner Roberto Finzi also has no such recollection does not somehow show that McGorty's belief is reliable

---

[1] Rashid's objection pertains to the period July 2 – August 1, 2013.   Rashid has conceded that common interest protection does not attach to communications at his July 1, 2013 meeting with personnel from Apollo Management, L.P. ("Apollo") and Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss").   Rashid has also conceded that such protection does not attach to the "Master Spreadsheet" that Crowell transmitted to Paul Weiss on August 1, 2013, or to subsequent communications between those two firms.   *See* Doc. 58 (Order dated Oct. 25, 2018), *citing* Doc. 57 at 2 (Letter to Court from Gregory W. Kehoe, Esq.).

or sufficient to prove that such a discussion must have happened. This is particularly true when there is no documentary evidence proving the existence of a "meeting of the minds."

2) Rashid's assertion that the common interest was identifying personal expenses in order to reduce his and Apollo's exposure to regulatory sanctions is both illogical and counter-factual. *Rashid's identification of personal expenses is precisely what led Apollo to report him to the SEC.* Schaeffler v. United States, 806 F.3d 34 (2d Cir. 2015) does not remotely support Rashid's position. Completely unlike the present case, *Schaeffler* involved entities that were collaborating on a multi-billion dollar deal under an *explicit, written confidentiality agreement pursuant to which they expressly agreed to request regulatory approval.*

3) Rashid's asserts that his document production did not waive privilege because he only produced emails that were dated after August 1, 2013 and/or supposedly were not "substantive" communications. But contrary to those assertions, Rashid did produce emails dated *before* August 1, 2013 that attached a draft of the Master Spreadsheet.

Though not addressed in Rashid's opposition, it is telling that he does not rely on any meeting notes or other internal reports memorializing Crowell's contacts with Paul Weiss. Rashid was Crowell's client and surely would have directed the firm to waive work product privilege and/or to produce those materials in redacted form if they referred to Paul Weiss indicating assent to a common interest agreement. Rashid's silence speaks volumes.

## ARGUMENT

### 1. Rashid has Failed to Identify Objective Evidence of a Meeting of the Minds

Rashid acknowledges, as he must, that he bears the burden to establish a meeting of the minds between himself and Apollo and/or their respective attorneys. See Doc. 60 at p. 1, *citing Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 416 (S.D.N.Y. 2004). He even cites contract cases for the proposition that the test is objective rather than subjective. *Id., citing Missigman v. USI Ne., Inc.*, 131 F. Supp. 2d 495, 518 (S.D.N.Y. 2001); and *Rule v. Brine, Inc.*, 85 F.3d 1002, 1010 (2d Cir. 1996). But while purporting to rely on "objective markers," Rashid only discusses his and McGorty's beliefs or other innocuous facts that have little, if any, probative value:

- Crowell's November 18, 2016 letter to the SEC (aside from being advocacy sent long after the communications in question) only makes assertions about *Rashid's* state of mind. See Doc 60 at p. 2 ("As Crowell explained, *Mr. Rashid* 'understood that the goal of that exercise ....") (Emphasis supplied). The Crowell letter does not

- claim that *Apollo and Paul Weiss* agreed that there was a common interest understanding.

- The Crowell letter also notes that Rashid was paid his full salary and benefits during the expense review. (Doc. 60 at p. 2.) But salary continuation pending the completion of an internal investigation is *routine* and has no probative value here one way or the other on the issue of whether there was a meeting of the minds between Apollo and Rashid or whether they shared a common interest.

- The reference to the SEC investigation in Crowell's retainer letter with Rashid obviously has no bearing on whether or not they ever had a meeting of the minds *with Apollo and Paul Weiss* on a common legal strategy. (Doc. 60 at p. 3.) This is especially true given that McGorty did not know the purpose or scope of the SEC examination and recalled no discussion of it with Paul Weiss. (McGorty Dep. 51:5 – 52:10; 54:5-8.)

- The fact that Paul Weiss did not repeat the *Upjohn* warning to Rashid after July 1, 2013 does not prove that it believed a common interest privilege arose thereafter. (Doc. 60 at p. 3.) Rather, the more plausible explanation is that Paul Weiss simply did not believe it was necessary to repeat the warning.

- McGorty's testimony that Crowell's use of the term "common interest privilege document" in the subject line of emails "confirms" the existence of the privilege merely reflects *his own impression*. (Doc. 60 at pp. 2-3.) McGorty's impression is insufficient to establish a meeting of the minds, especially since he also testified that *he recalled no discussion with Paul Weiss about the subject line. (McGorty Dep.,* 145:18 – 146:14.)

Equally insufficient to establish a meeting of the minds with Apollo and Paul Weiss is McGorty's testimony that he believed he discussed common interest with Paul Weiss.[2] McGorty repeatedly admitted to having no recollection of an actual conversation with Paul Weiss on the subject. (*Id.*, 39:25 – 42:12; 136:10 – 137:8.) Moreover, Rashid's suggestion that McGorty's unspecific and unsupported "belief" should be deemed sufficient because he cannot be expected to remember the details of communications that would have occurred five years ago is without merit. (See Doc. 60 at 5.) It is obvious that memory fades over time. But Rashid is the party *affirmatively asserting* that there was agreement on common interest privilege. And Rashid is also

---

[2] McGorty testified that "I am not saying that [common interest privilege] was never discussed and that "my belief at the time [was] that we [had] a common-interest understanding." (McGorty Dep.42:7 – 12.)

The Honorable P. Kevin Castel
December 4, 2018
Page 4

the party who could have prevailed on Crowell to produce contemporaneous meeting notes or file memos *if* they supported McGorty's belief. Rashid also misses the mark in suggesting that McGorty's mere belief should be deemed sufficient because Paul Weiss partner Roberto Finzi also had no recollection of discussing common interest privilege. (See Doc. 60 at p. 5.) Finzi is *not* asserting that there *was* such an agreement. To the contrary, Finzi has specifically attested that "in the ensuing month" after his initial meeting with Rashid on July 1, 2013, he had communications with Rashid's counsel and that he "did not view them as privileged." (See Doc. 56-2, Finzi Decl. at ¶ 5.)

2. **The Supposed Common Interest Rashid Describes is Illiogical and Counter-Factual**

Rashid asserts that the nature of his supposed common legal interest with Apollo is obvious, and therefore, sufficient reason to overlook McGorty's inability to remember any actual discussion of it with Paul Weiss. (Doc. 60 at pp. 3-5.) According to Rashid, the common interest that he shared with Apollo was that:

> To the extent Mr. Rashid and Apollo could *confirm that Mr. Rashid's expenses were personal,* Apollo's potential exposure to the SEC and Mr. Rashid's potential exposure to both Apollo and the SEC were *reduced in step.*" (Doc. 60 at p. 4.) (Emphasis supplied.)[3]

Rashid's attempt to recast his cooperation with Apollo as something more than an attempt to save his job is untenable and should be rejected. Contrary to what Rashid now asserts, he and Apollo had sharply *divergent interests*. Apollo had an interest in learning the full extent of Rashid's misconduct and assessing its own potential regulatory exposure. Confirming that expenses were personal would be in *Apollo's* regulatory interest because Apollo could report Rashid's conduct to the SEC in hopes of demonstrating that it had acted responsibly. On the other hand, confirming that expenses were personal was decidedly against *Rashid's* regulatory interest. Rashid no doubt hoped Apollo would not report his conduct to the SEC, and appears to have calculated that the chance of saving his job was worth the risk. But Rashid could not have rationally believed that his admissions would be overlooked if they were reported to the SEC. Of course, Apollo *did* report Rashid's conduct to the SEC in September 2013. (See McGorty Dep Ex. 30 Ex. 30 [Paul Weiss's Power Point presentation to the SEC's Office of Compliance Inspections and Examinations dated Sept. 16, 2013 and titled, "Apollo Global Management Expense Review — Preliminary Results"], attached to Doc.

---

[3] Rashid asserts that this is "not a complex notion" and is reflected in McGorty's testimony that:

> Well, I believe, I think I believed that the common interest was resolving concerns that Apollo had reflected about Mr. Rashid's expense use at Apollo; to assist them in resolving their concerns about Mr. Rashid; to resolve Mr. Rashid's concerns about being employed at Apollo; and to the extent that there was linkage to the SEC examination, to assist Apollo in resolving that. (Doc. 60 at p. 3, *citing* McGorty Dep. Tr. 64:21 – 65:5.)

McGorty admitted, however, that he never knew the purpose or scope of the SEC examination and did not recall any discussion with Paul Weiss about it. (McGorty Dep. 51:5 – 52:10; 66:1-4.)

The Honorable P. Kevin Castel
December 4, 2018
Page 5

59-1 [Declaration of Duane K. Thompson].) Apollo did so without consulting Rashid or Crowell so far as McGorty knows. (McGorty Dep. 51:17 – 52:10; 195:18 – 200:23).

Finally, Rashid is equally wrong in asserting that *Schaeffler v. United States* supports his position that the pendency of the SEC examination establishes that his supposed common interest with Apollo was of a "sufficient legal character" to form a common legal interest. (Doc. 60 at p. 2.) *Schaeffler* did *not* find "that the common interest was legal in character, simply because the primarily business relationship 'would likely involve a legal encounter with the IRS.'" *(Id.)* Nor did *Schaffler* involve an employer and employee in an internal investigation of potential misconduct. *Schaeffler* in no way supports Rashid's position that the mere commencement of the SEC examination is sufficient to establish the existence of a common legal interest.[4]

### 3. Rashid's has Waived Any Privilege Even by His Own Criteria

Rashid proceeds from a false premise in arguing that his production of emails between Crowell and Paul Weiss did not constitute a waiver of privilege pursuant to Rule 502 of the Federal Rules of Evidence. Rashid incorrectly asserts that he only produced documents that "are either (a) after August 1 [2013] or (b) not the type of substantive communications that would be privileged in the first place." Doc. 60 at 5.[5] Rashid is mistaken because he *did* produce pre-August 1, 2013 emails between the two firms. (See Doc. 56-3 [Declaration of Donna K. Norman and attached exhibits] at pp. 46 - 47 (July 26, 2013 email from Paul Weiss to Crowell; July 27, 2013 email from Crowell to Paul Weiss Bates numbered "Rashid 00001871-72" and attaching "DRAFT spreadsheets showing: 1. Expenses classified by trip [and] 2. Expenses (revised)).[6] Rashid also produced three emails dated August 1, 2013. See Doc. 56-3 (Declaration of Donna K. Norman) at pp. 48-52 (August 1, 2013 emails from Crowell to Paul Weiss Bates numbered "Rashid 00001882-1902" and attaching draft spreadsheets). These emails were undoubtedly "substantive" communications even

---

[4] Quite the contrary, *Schaeffler* involved a U.S. company that had coordinated with a banking consortium in an effort to finance an eleven-billion Euro acquisition of a German company. 806 F.3d at 37-38. The U.S. company hired accountants to advise on whether certain novel refinancing arrangements might secure a particular tax treatment, and thereby, allow the company and the consortium to avoid "mutual financial disaster." *Id. at 41.* The company and the consortium specifically agreed to request an IRS private letter ruling on the refinancing arrangements. *Id.* And critically, the accountants' opinions on the refinancing arrangement were shared as between company and the consortium pursuant to a *written agreement* styled "Attorney Client Privilege Agreement" that *expressly* provided for the sharing of "certain core tax advice prepared by the U.S. tax advisors." 806 F.3d at 41-42, n. 2. It was in that robust set of facts that the Second Circuit held that a common legal interest between the U.S. company and the banking consortium had been established.

[5] Although Rashid does not elaborate on what he means by "substantive," his earlier submission on the common interest issue suggests he means that they did not attach the Master Spreadsheet. See Doc. 57 at n. 3 and accompanying text.

[6] The July 26, 2013 email that Rashid produced was also produced by Apollo as "Apollo 000109339," along with the actual spreadsheets that were attached. At the McGorty deposition, Rashid's counsel instructed the witness not to answer questions about the email and its attachments. Rashid Dep. 133:16 – 135:22.

under Rashid's logic because they attached iterations of the Master Spreadsheet and/or inputs to it. Thus, for the reasons stated in the SEC's initial letter, the Court should rule that Rashid's waiver relates not just to the July 26 and 27 emails but to the entire course of dealing relating to the expense review. (See Doc. 59 at pp. 7-8, citing *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94 (W.D.N.Y. 2011) ("It is also fundamental that voluntary disclosure by or on behalf of a party during judicial proceedings may waive the privilege as to the disclosed information as well as all the otherwise privileged information relating to the same subject matter of the disclosed information")).

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court overrule Rashid's objections based on the common interest doctrine and order McGorty's deposition to be resumed to permit examination on communications between Crowell and Paul Weiss in the entire period July 1, 2013 – August 1, 2013.

Respectfully submitted,

Duane K. Thompson
James M. Carlson
Donna K. Norman

cc: Counsel of Record (via ECF)

    Thomas Hanusik, Esq.,
      Counsel to Crowell & Moring LLP
    (Via email)