UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>v.<br><br>MOHAMMED ALI RASHID,<br><br>                  Defendant. | No. 17-cv-8223 (PKC) |

## DECLARATION OF JAMES CROSSEN

I, James Crossen, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age and reside in the State of Connecticut. I am making this declaration on the understanding that counsel to the Securities and Exchange Commission ("SEC") intends to submit it as my direct testimony in this case. I intend to appear at trial to reaffirm that my declaration is true and correct, and to answer questions on cross examination and re-direct examination. I have been represented by my own counsel in connection with the preparation of this declaration.

2. In 1999, I obtained a Bachelor of Arts Degree in Accounting from the University of Connecticut.

3. From 1991 to 1995, I served in the United States Marine Corps. My highest rank was Corporal. I received an honorable discharge on August 11, 1995.

4. I have been licensed as a Certified Public Accountant in the state of New York since 2001.

5. I am currently employed by an affiliate of Apollo Global Management LLC (together with its affiliates, and excluding portfolio companies, "Apollo"). My title is Chief Financial Officer, Private Equity and Real Assets. In this capacity, among other things, I supervise controllers who are responsible for maintaining the financial records of Apollo-managed funds in these areas. I have served in this role since December 2014, and report to Apollo's CFO, Martin Kelly. From March 2010, when I first joined Apollo, until December 2014, I was a fund controller, with responsibility for Apollo Investment Fund VII, L.P. and its parallel funds ("Fund VII") as well as Apollo Natural Resources Partners, L.P. and its parallel funds ("ANRP"). I was one of several fund controllers during this period.

6. During the time when I was a fund controller, when Apollo-affiliated management companies that provided investment advice and management services to private equity funds ("Funds") incurred expenses on behalf of the Funds that were reimbursable under the fund governing documents, it was the practice of those management entities to invoice the applicable Funds for reimbursable expenses. The controllers were (and remain) responsible for reviewing those invoices, overseeing payment of the invoices and ensuring proper accounting for such transactions. A controller was assigned to each Fund with responsibility for overseeing payment of reimbursable expenses charged to the Fund. As noted, I had this responsibility for Fund VII and ANRP.

7. During the time period 2010-14, the management companies generally invoiced the Funds for reimbursable expenses on either a monthly or quarterly basis, depending on the fund and the time period. The invoices were directed to each Fund's controller. The invoices set forth the amount due, wire instructions to pay the invoice, and an inventory of the charges included in the invoice by category. The invoices also included credits or offsets that the

management companies owed to the Funds when applicable. (*See* Plaintiff's Exhibit ("Pl.'s Ex.") 191; APOLLO00114214-00116771 (invoices and other payment information for the Relevant Funds, as defined *infra* paragraph 18, from January 2010 through December 2013.))

8. These reimbursable expenses included, among other things, business-related expenses that were incurred directly by individual Apollo employees while working on specific investments owned by the Funds and/or portfolio companies. For example, when Apollo investment professionals met with portfolio company executives, bankers, lawyers, underwriters and others to discuss making, monitoring, managing or exiting an investment, their expenses in attending those meetings generally would be business expenses billable to the specific Fund, or to a portfolio company code affiliated with that Fund, that owned the investment in question.

9. Each Fund and each portfolio company had a unique billing code assigned to it to enable Apollo to allocate and properly bill its expenses. Apollo also maintained billing codes for costs allocable to management company entities, to which its employees could allocate expenses. When employees submitted T&E reports, they indicated the applicable code for each expense. Expenses allocated to billing codes related to general overhead and similar expenses would typically be paid by affiliates of Apollo itself, and not billed to the Funds, or to portfolio company codes affiliated with those Funds.

10. During this period, Apollo used the PeopleSoft Travel and Expense reporting system. Apollo employees, often through their assistants, would submit T&E reports into that system. After they were approved by Apollo's shared services accounting group, the employee would be reimbursed.

11. It was the responsibility of each individual Apollo employee who incurred reimbursable business related expenses to verify and then submit their own expense reports.

Specifically, any Apollo employee incurring reimbursable business-related expenses had to provide a description of each business expense incurred, justifying why it was a legitimate business expense (*i.e.,* what the business purpose of the expense was; if it was a meeting or meal, who attended; and, if it was travel, the business reason for the travel). In order to be approved for reimbursement, every expense had to be allocated to a specific expense code. Otherwise the expense was deemed personal and had to be paid by the individual who incurred it.

12. In or about June and November 2014, as the controller in Apollo's private equity group responsible for Fund VII and ANRP, I received invoices from Apollo that reimbursed (via credits to the invoice) the respective Funds for certain operating expenses that it had been determined were improperly charged to (and paid by) Fund VII and ANRP in previous billing cycles. (*See* Pl.'s Ex. 190, at APOLLO 00042192-00042208.)

13. I subsequently determined that approximately $3,350 of the reimbursed operating expenses referred to in paragraph 11 above were charges incurred by former Apollo senior partner Mohammed Ali Rashid ("Mr. Rashid") from January 1, 2010 through June 30, 2013 (the "Relevant Period") and allocated to Fund VII and ANRP as business expenses, which were subsequently reclassified as Mr. Rashid's personal expenses. (*See* Pl.'s Ex. 190, at APOLLO 00042149; APOLLO 00042192-00042208.)

14. In the summer of 2017, in my capacity as CFO, Private Equity and Real Assets, I personally directed and oversaw a detailed review (the "2017 Review") of the accounting for a large number of Mr. Rashid's expenses that were reclassified as "personal" as a result of a review of Mr. Rashid's expenses in the period January 2010-June 2013. I understand that overall results of the review were summarized in a spreadsheet that is sometimes referred to as the "BDO Spreadsheet." (*See* Pl.'s Ex. 111.) My understanding is that the BDO Spreadsheet

originated as an export from PeopleSoft of all of Mr. Rashid's expenses in the Relevant Period, and that there then was a review, in 2013, involving counsel, BDO USA, LLP ("BDO"), and Mr. Rashid that resulted in certain reclassifications. I was not personally involved in that process, but understand the BDO Spreadsheet to be the ultimate result of it.

15. The purpose of the 2017 Review was twofold. First, we wanted to confirm that the expenses that had been reclassified as "personal" in the BDO Spreadsheet (and originally classified as a fund or a management company expense) had, in fact, been included in invoices to Funds for reimbursement to Apollo fund manager entities. As a general matter, when invoices to Funds are generated, any reimbursed expense in PeopleSoft attributable to that fund code is then automatically billed to the fund in question—but we wished to verify that.

16. Second, we wanted to verify that any such reimbursement paid by the Funds had been subsequently refunded back to those funds after the reclassification of Mr. Rashid's expenses. The 2017 Review was conducted by members of my finance team, acting under my supervision and direction. I estimate that we spent in excess of 50 hours conducting the review.

17. To determine whether any Funds had been billed for any of Mr. Rashid's expenses that had been reclassified as personal expenses, we did the following work:

- **First,** under my direction and supervision, my team verified that each individual expense that Mr. Rashid allocated as a business expense that was subsequently reclassified as "personal" on the BDO Spreadsheet had been, in fact, billed to the respective Fund (or to a portfolio company code affiliated with that Fund) or to a special purpose vehicle affiliated with the Fund, via an operating expense invoice. This process involved reviewing tens of accounting entries, and cross-referencing each of Mr. Rashid's reclassified expenses on the BDO Spreadsheet

5

to a specific expense billing invoice. *This process confirmed that all of the charges Mr. Rashid allocated to Funds, or to portfolio company codes affiliated with Funds, in his expense reports had been, in fact, billed to the Funds, or special purpose vehicles affiliated with the Funds.*

- **Second,** under my direction and supervision, the controller for each Relevant Fund reviewed the relevant wire transfers together with cash reconciliation records to verify that the bank accounts of the respective Funds, or special purpose vehicles affiliated with those Funds, invoiced had been, in fact, debited for the amounts billed in the operating expense invoices. *This process confirmed that all of the charges Mr. Rashid allocated to Apollo clients in his expense reports had been, in fact, paid by those clients.*

18. We determined the following Apollo clients had been invoiced for alleged business expenses that subsequently were reclassified as Mr. Rashid's personal expenses: Apollo Investment Fund III, L.P.("Fund III"), Apollo Investment Fund V, L.P. ("Fund V") Apollo Investment Fund VI, L.P. ("Fund VI"), Fund VII, ANRP (the "Relevant Funds") and various special purpose vehicles affiliated with those Funds.

19. The second objective of the accounting review was to verify that any expenses incurred by Mr. Rashid during the Relevant Period that were billed to Relevant Funds, or to portfolio company codes affiliated with those Funds, and paid by the Relevant Funds, or special purpose vehicles affiliated with those Funds, and subsequently determined to be Mr. Rashid's personal expenses were fully credited back to the respective Funds, or the special purposes vehicles, that had paid for them.

20. Under my direction and supervision, the controller for each of the funds involved reviewed their respective operating expense invoices from and surrounding July 2013, together with the detailed online itemized backup documentation for any amounts credited to the entities. *This process confirmed that, in 2014, at least $279,342.51 incurred by Mr. Rashid during the Relevant Time Period that was allocated to, billed to and paid by the Relevant Funds, portfolio company codes affiliated with those Funds, or special purpose vehicles affiliated with those Funds—which amount was subsequently reclassified as Mr. Rashid's personal expenses—was reimbursed (as operating expense credits) to the respective Funds or special purpose vehicles affiliated with those Funds.* (*See* Pl.'s Ex. 190, at APOLLO 00042149-00042218.)

21. Attached hereto as Plaintiff's Exhibit 183 are five individual sample verifications for expenses Mr. Rashid charged to various Funds, or special purpose vehicles affiliated with Funds, that were subsequently determined to be his personal expenses and thus were credited back to the respective Funds and special purpose vehicles. The first page of each example shows specific rows extracted from the BDO Spreadsheet. Each row represents an individual charge incurred by Mr. Rashid and submitted on his expense reports for reimbursement as a business expense. Each row lists the individual charge at issue, the date of the charge, the amount of the charge, the vendor where the charge was incurred, and the narrative description of the alleged business purpose of the charge. The second page of each example is a copy of the operating expense invoice from Apollo to the Relevant Fund, or special purpose vehicle affiliated with that Fund, that includes the expenses itemized on page one. Page three is a copy of the relevant wire transfer documentation that verifies the invoiced amount was paid by the Relevant Fund or a special purpose vehicle affiliated with that Fund. Page four is the summary expense reimbursement file sent by Apollo to the Relevant Fund summarizing the operating expense

invoice. Finally, page five is the PeopleSoft extract detail which ties to the summary on the previous page. (*See* Pl.'s Ex. 183, at SEC-CORRESPOND-E-0005447-0005473.)

22. As part of the accounting review, the verification processes detailed in Paragraphs 18-20 above were performed for over 1,000 individual charges incurred by Mr. Rashid.

23. The total dollar amount of charges that the 2017 Review determined Mr. Rashid allocated as business expenses to the Relevant Funds that the clients were billed, paid and subsequently were reimbursed for was approximately $279,342. (*See* Pl.'s Ex. 190, at APOLLO 00042149.)

Executed on July 22, 2019
New York, New York

James Crossen