UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | No. 17-cv-8223 (PKC) |
| v. | |
| MOHAMMED ALI RASHID, | |
| Defendant. | |

## DECLARATION OF GARY ENZOR

I, Gary Enzor, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am over 18 years of age, and I am a United States citizen residing in Nashville, Tennessee. I am currently the Chairman of the Board and Chief Executive Officer of Quality Distribution, Inc. ("QDI"), a privately held company headquartered in Tampa, Florida.

2.     I make this Declaration based upon personal knowledge, information, and belief. To the extent that there are assertions herein concerning dates, charges, and numbers, they are based upon my best information and recollection.

3.     Attachments A through M hereto are true and correct copies of records in my possession. Attachments A, B, and D through M reflect charges that I made, to the best of my knowledge.

4.     In November 2004, I became the Chief Operating Officer and Executive Vice President of QDI, a chemical bulk tank trucking and chemical tank container company headquartered in Tampa, Florida. In November 2005, in addition to my role as Chief Operating Officer, I became President of QDI. In 2007, I became Chief Executive Officer of QDI. In

SEC-SEC-E-0000138

2008, in addition to my role as CEO of QDI, I became a member of the QDI board of directors. In 2013, I became Chairman of the Board, and since that time I have remained Chairman and CEO of QDI.

5.        When I joined QDI in November 2004, it was a publicly traded company, and Apollo Investment Fund III, L.P., which was managed by private equity firm Apollo Global Management LLC ("Apollo"), was its majority shareholder. As the largest shareholder, Apollo controlled five of the ten QDI director positions at that time.

6.        In June 2005, Defendant Mohammed Ali Rashid ("Rashid"), then an Apollo partner, became a member of the QDI board of directors. Rashid remained on the QDI board until Apollo exited its ownership position in QDI in or about August 2013. At all times from June 2005 through August 2013, while Rashid was a director of QDI, it was a publicly traded company.

7.        In or about January 2013, Rashid knew that I was going to be in New Orleans for the Super Bowl that year. Rashid told me that he was going to the game because one of his friends was an executive with the San Francisco 49ers, which was one of the teams playing in the game.

8.        On February 3, 2013, QDI hosted a social brunch for some of its outside legal associates in New Orleans before the Super Bowl. Because I knew Rashid would be in town, I had previously invited him to attend, and Rashid brought a woman to that event; but in my view, this brunch would not have justified Rashid treating his airfare, lodging, or other travel expenses that weekend as QDI-related business expenses.

2

SEC-SEC-E-0000139

9.      From 2010 through 2013, to the best of my knowledge, I had lunch with Rashid in New York only once without other members of the QDI management team or board being present. We ate at a sushi restaurant across the street from Apollo's New York office.

10.     From 2010 through 2013, to the best of my knowledge, I never had dinner alone with Rashid.

11.     From 2010 through 2013, I was present at a limited number of dinners attended by Rashid and other QDI officers and directors. To the best of my knowledge, these dinners were always in conjunction with board or investor meetings.

12.     If I attended a business dinner with members of the QDI board while I was CEO and Chairman of the Board, it was QDI's practice that I or another QDI executive pay the bill and submit it to the QDI accounting department for reimbursement. It would have been atypical for a QDI director to pay for a meal when I was present.

13.     I do not recall Rashid ever paying for a dinner that I attended.

14.     To the best of my knowledge, I did not have dinner with Rashid at Brother Jimmy's in New York City on Saturday, April 3, 2010. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York at any time in April 2010. I do not believe I have ever eaten at Brother Jimmy's in New York.

15.     To the best of my knowledge, I did not have dinner at the Cooper Square Hotel with Rashid in New York City on Friday, April 9, 2010. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York at any time in April 2010. I do not believe I have ever been to the Cooper Square Hotel in New York. Moreover, my credit card records show that I was in Tampa, Florida, on April 9,

3

SEC-SEC-E-0000140

2010. *See* Attachment A hereto, which is an excerpt of my credit card account activity for the month of April 2010, reflecting transactions in the Tampa area on April 9, 2010.

16.     To the best of my knowledge, I did not have dinner with Rashid at Peter Luger in New York City on July 28, 2010.  I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York at any time in July 2010.  I do not believe I have ever eaten at Peter Luger in New York.

17.     To the best of my knowledge, I did not have dinner with Rashid in New York City on Saturday, August 14, 2010.  I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York on August 14, 2010.  To the best of my knowledge, I was returning from a cruise that docked in Fort Lauderdale, Florida, that day; and my credit card records show that I was in Bartow, Florida, at one point on August 14, 2010.  *See* Attachment B hereto, which is an excerpt from a credit card statement for the monthly period ending on September 16, 2010, showing a transaction in Bartow on August 14, 2010.

18.     To the best of my knowledge, I did not have dinner with Rashid and other members of the QDI management team in New York City on October 20, 2010.  I have personally reviewed my QDI expense reports and related documentation, and those materials indicate that I took a flight from Phoenix, Arizona, to Tampa, Florida, that day, with a scheduled landing at 5:20 PM EDT.  *See* Attachment C hereto, which is a screenshot of my Southwest Airlines flight confirmation for the October 20, 2010 flight from Phoenix to Tampa. Additionally, my credit card records reflect an airport parking charge in Tampa dated October 20, 2010.  *See* Attachment D hereto, which is an excerpt from a credit card statement for the

4

SEC-SEC-E-0000141

monthly period ending on November 15, 2010, showing an October 20, 2010 SunPass charge for parking at Tampa International Airport.

19.     To the best of my knowledge, I did not have drinks with Rashid and other members of the QDI management team in New York City on Friday, October 22, 2010.  I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day.  Moreover, my credit card records show that I was in Clearwater, Florida, on October 22 and 23, 2010.  *See* Attachment D hereto, which is an excerpt from a credit card statement for the monthly period ending on November 15, 2010, showing transactions in Clearwater on October 22 and 23, 2010.

20.     To the best of my knowledge, I did not have dinner with Rashid in New York City on Saturday, December 11, 2010.  I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day.  My credit card records show that I was in Tampa, Florida, that weekend.  *See* Attachment E hereto, which is an excerpt of my credit card account activity in December 2010, showing charges in the Tampa area on December 10–12, 2010.

21.     To the best of my knowledge, I did not have dinner with Rashid and other members of the QDI management team in New York City on Saturday, February 26, 2011.  I have personally reviewed my QDI expense reports and related documentation, and those materials indicate that I participated in a business event with QDI affiliate partners in Tampa, Florida, that weekend.

22.     To the best of my knowledge, I did not have dinner with Rashid in New York City on Friday, April 1, 2011.  I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day.  My credit

5

SEC-SEC-E-0000142

card records show that I was in Tampa, Florida, on April 1, 2011. *See* Attachment F hereto, which is an excerpt from a credit card statement for the monthly period ending on April 15, 2011, showing charges in Tampa on April 1, 2011.

23.     To the best of my knowledge, I did not have dinner with Rashid in New York City on Sunday, April 24, 2011. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day. My credit card records show that I was in the Tampa, Florida area on April 24, 2011. *See* Attachment G hereto, which is an excerpt from a credit card statement for the monthly period ending on May 15, 2011, showing charges in the Tampa area on April 24, 2011.

24.     To the best of my knowledge, I did not have dinner with Rashid in New York City on June 8, 2011. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York at any time in June 2011.

25.     To the best of my knowledge, I did not have dinner with Rashid in New York City on Saturday, July 9, 2011. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York on July 9, 2011. My credit card records show that I was in the Chicago, Illinois area with family that weekend. *See* Attachment H hereto, which is an excerpt from a credit card statement for the monthly period ending on July 15, 2011, showing charges in the Chicago area on July 6–10, 2011.

26.     To the best of my knowledge, I did not have dinner with Rashid in New York City on Saturday, July 30, 2011. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York on July 30, 2011. My credit card records show that I was in Tampa and Wesley Chapel, Florida, that day,

6

SEC-SEC-E-0000143

celebrating my daughter's birthday, I believe. *See* Attachment I hereto, which is an excerpt from a credit card statement for the monthly period ending on August 15, 2011, showing charges in Tampa and Wesley Chapel on July 30, 2011.

27.     To the best of my knowledge, I did not have dinner with Rashid and other members of the QDI management team in New York City on September 1, 2011. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day. My credit card records show that I was in Brandon, Florida, on September 1, 2011. *See* Attachment J hereto, which is an excerpt from a credit card statement for the monthly period ending on September 15, 2011, showing a charge in Brandon on September 1, 2011.

28.     To the best of my knowledge, I did not have dinner with Rashid and other members of the QDI management team in New York City on Saturday, April 21, 2012. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day. My credit card records show that I was in Tampa, Florida, that weekend. *See* Attachment K hereto, which is an excerpt from a credit card statement for the monthly period ending on May 15, 2012, showing charges in Tampa on April 21 and 22, 2012.

29.     To the best of my knowledge, I did not have dinner with Rashid in New York City on Friday, April 27, 2012. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day. My credit card records show that I was in Tampa, Florida, that weekend. *See* Attachment K hereto, which is an excerpt from a credit card statement for the monthly period ending on May 15, 2012, showing charges in Tampa on April 26–28, 2012.

SEC-SEC-E-0000144

30.     To the best of my knowledge, I did not have dinner with Rashid and other members of the QDI management team in New York City on August 14, 2012. I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York that day. My credit card records show that I was in the Tampa, Florida area on August 14, 2012. *See* Attachment L hereto, which is an excerpt from a credit card statement for the monthly period ending on September 15, 2012, showing charges in the Tampa area on August 14 and 15, 2012.

31.     In August 2012, Gerald Detter, Bo Leslie, Dennis Copeland, and Thomas Finkbiner were not employees of QDI and would not have been having a business dinner with Rashid and the then-current QDI management team in New York City. Detter was the CEO of QDI from June 2005 through July 2007 and a director of QDI through May 2008, when he retired. Leslie was Executive Vice President of QDI from March 2000 through April 2008, when he left QDI. His severance payments ran through July 2009. Copeland was a senior executive of QDI from October 1988 through April 2010. He received severance and consulting fees through April 2013, but to the best of my knowledge he did not attend QDI management meetings in 2012. Finkbiner was the President and CEO of QDI from November 1999 through June 2005, when he left QDI. His severance payments ran through June 2007.

32.     To the best of my knowledge, I did not have dinner with Rashid and other members of the QDI management team in New York City on February 14, 2013 (Valentine's Day). I have personally reviewed my QDI expense reports and related documentation, and those materials do not indicate that I was in New York on February 14, 2013. My records show that I had dinner with my wife that night at the Tampa Palms Country Club in Tampa, Florida. *See*

8

SEC-SEC-E-0000145

Attachment M hereto, which is a bill for the month of February 2013, reflecting our February 14, 2013 dinner in Tampa.

33.     QDI has no business operations in Hawaii.  There would not have been a business reason for Rashid to be in Hawaii on behalf of or in any way to benefit QDI.

34.     I do not recall ever receiving ties, shirts, electronics, gift cards, or any other gifts from Rashid.

35.     I do not recall ever receiving ties, shirts, electronics, gift cards, or any other gifts from any individual Apollo employee other than Thomas White, who sent me a Ritz Carlton gift card as a wedding gift.


Pursuant to 28 U.S.C. § 1746, I, Gary Enzor, declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2018
Tampa, Florida


Gary Enzor

9

SEC-SEC-E-0000146





SEC-SEC-E-0000148



GEnzor



SEC-SEC-E-0000149

Attachment C    Page 1 of 1



Statement Date:   10/16/10 – 11/15/10
Account Number:
Page 2 of 3
OVER

**ACCOUNT ACTIVITY (CONTINUED)**

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 10/20 | SUNPASS OPERATIONS 888-8655352 FL | 55.00 |
| 10/22 | NORTH BEACH WINE & SPIRI CLEARWATER FL | 58.58 |
| 10/22 | BELCHER BP CLEARWATER FL | 33.58 |
| 10/23 | FRENCHY'S ROCKAWAY GRILL CLEARWATER FL | 40.50 |

Attachment D                                                        Page 1 of 1

SEC-SEC-E-0000150



### ACCOUNT ACTIVITY (CONTINUED)

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 12/11 | CYPRESS CREEK SUPER STR WESLEY CHAPEL FL | 34.13 |
| 12/11 | TARGET 00013921 WESLEY CHAPEL FL | 4.12 |
| 12/10 | PIZZAZZONE TAMPA FL | 33.28 |
| 12/11 | TARGET 00013021 WESLEY CHAPEL FL | 103.89 |
| 12/11 | MCDONALDS F26492 TAMPA FL | 18.78 |
| 12/11 | BARNES & NOBLE 2349 WESLEY CHAPEL FL | 8.46 |
| 12/12 | PANERA BREAD #3343 TAMPA FL | 39.54 |
| 12/12 | INTERCONTINENTAL TAMPA TAMPA FL | 138.00 |
| 12/12 | WALGREENS #12577 LUTZ FL | 14.10 |
| 12/12 | CALIFORNIA PIZZA 292 BRANDON FL | 51.31 |
| 12/12 | INTERCONTINENTAL TAMPA TAMPA FL | 5.00 |

Brick House Tavern + Tap
Tampa
1102 North Dale Mabry
(813)350-9108

Server: TANYA          DOB: 12/17/2010
01:48 PM               12/17/2010
#: 22/1                3/300

104:5

XXXXXXXXX
card present: ENZOR GARY
121710

Amount:        87.7

+ Tip:          16

= Total:      113.70

Attachment E                                    Page 1 of 1

SEC-SEC-E-0000151



Statement Date:  03/16/11 - 04/15/11
Account Number: ▮▮▮▮▮
Page 2 of 3
OVER

**ACCOUNT ACTIVITY (CONTINUED)**

Date of
Transaction                Merchant Name or Transaction Description                $ Amount

04/01     BJS WHOLESALE #163 TAMPA FL                                      33.81

04/01     BJS FUEL #9163 TAMPA FL                                         74.91
04/01     CHICK-FIL-A #00694 TAMPA FL                                      6.42

Attachment F
Page 1 of 1

SEC-SEC-E-0000152



Statement Date:    03/16/11 – 04/15/11
Account Number:
Page 2 of 3
OVER

**ACCOUNT ACTIVITY (CONTINUED)**

Date of
Transaction          Merchant Name or Transaction Description          $ Amount

| Date | Description | Amount |
|------|-------------|--------|
| 04/01 | BJS WHOLESALE #183 TAMPA FL | 33.81 |
| 04/01 | BJS FUEL #3183 TAMPA FL | 74.91 |
| 04/01 | CHICK-FIL-A #00694 TAMPA FL | 6.42 |

Attachment F
Page 1 of 1

SEC-SEC-E-0000153



Attachment H
Page 1 of 2

SEC-SEC-E-0000154



| ACCOUNT ACTIVITY (CONTINUED) | | |
| --- | --- | --- |
| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
| 07/10 | MCDONALD'S F30786 CHICAGO IL | 17.70 |
| 07/10 | RELAY 4182 CHICAGO IL | 10.97 |

Attachment H
Page 2 of 2

SEC-SEC-E-0000155





Statement Date:    08/16/11 - 09/15/11
Account Number:
Page 2 of 3
OVER

**ACCOUNT ACTIVITY (CONTINUED)**

Date of
Transaction                    Merchant Name or Transaction Description          $ Amount

09/01          FIVE GUYS- FL # 13 BRANDON FL                                    8.01

Attachment J
Page 1 of 1

SEC-SEC-E-0000157



Statement Date:   04/16/12 - 05/16/12
Account Number:   
Page 2 of 3
OVER

## ACCOUNT ACTIVITY (CONTINUED)

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 04/22 | BAGELS PLUS TAMPA FL | 41.62 |
| 04/22 | BJ WHOLESALE #0183 TAMPA FL | 84.89 |
| 04/22 | BJS FUEL #9183 TAMPA FL | 99.12 |
| 04/21 | PAPA JOHNS 926 8139100-7272 FL | 44.52 |
| 04/22 | CVS PHARMACY #6007 TAMPA FL | 22.93 |
| 04/26 | FIVE GUYS - FL 116 TAMPA FL | 8.76 |
| 04/26 | MARRIOTT 3370/8 WATERSIDE TAMPA FL | 13.00 |
| 04/27 | CHICK-FIL-A #00934 TAMPA FL | 7.16 |
| 04/28 | LOWES #01000* TAMPA FL | 2.27 |
| 04/27 | PANERA BREAD #3343 TAMPA FL | 5.34 |
| 04/28 | BJS FUEL #9183 TAMPA FL | 88.86 |
| 04/26 | 641 OCEAN PRIME TAMPA TAMPA FL | 150.00 |
| 04/28 | CVS PHARMACY #2760 Q03 TAMPA FL | 7.52 |
| 04/27 | TACO BELL #20447 TAMPA FL | 7.68 |
| 04/28 | MCDONALDS F26492 TAMPA FL | 8.63 |

Attachment K
Page 1 of 1

SEC-SEC-E-0000158



**ACCOUNT SUMMARY**

Account Number:

Previous Balance
Payment, Credits
Purchases
Cash Advances
Balance Transfers
Fees Charged
Interest Charged
New Balance

Opening/Closing Date        08/16'12 - 09/16'12
Credit Access Line
Available Credit
Cash Access Line
Available for Cash

**PAYMENT INFORMATION**

New Balance
Payment Due Date
Minimum Payment Due

Late Payment Warning: If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

Minimum Payment Warning: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| | | |

If you would like information about credit counseling services, call 1-866-797-2885.

**ACCOUNT ACTIVITY**

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 08/15 | SQUEAKY-KLEAN CAR CR3 TAMPA FL | 8.86 |
| 08/15 | BJS FUEL #0183 TAMPA FL | 68.27 |
| 08/14 | DUNKIN #346608    C38 WESLEY CHAPEL FL | 18.24 |
| 09/15 | 7-ELEVEN 33019 TAMPA FL | 10.98 |
| 09/15 | MCDONALDS F26482 TAMPA FL | 27.76 |
| 09/15 | FLORIDA MEDICAL CLINIC, P ZEPHYRHILLS FL | 30.00 |
| 09/15 | CVS PHARMACY 69007 TAMPA FL | 60.64 |

Attachment L
Page 1 of 1

SEC-SEC-E-0000159



Member Statement

**My Statements**    Gary Enzor
                     Member # █████
                     Tampa Palms Golf & Country Club

**Balance Due**

| Date | Item Number | Description | Amount | Additional Charges | Tax | Line Total |
|---|---|---|---|---|---|---|
| Feb 14, 2013 | 030016 | Main Dining Room | $99.90 | $19.98 | $8.39 | $128.27 |
| Feb 14, 2013 | 030016 | Added Gratuity | $15.00 | | | $15.00 |

*** AUTO PAY - DO NOT PAY ***

According to Federal Reserve Board guidelines, receipt of your check authorizes us to convert your check to a one-time electronic funds transfer. Funds may be drawn from your account the same day as your payment is received. You will not receive your check back.

The Club account of each member shall be due and payable upon receipt of the monthly statement. Any account which remains unpaid for a period of thirty (30) days after the billing date shall be considered delinquent and the Club will assess a late charge as established by the Club from time to time in it's sole discretion, but in no event more than the maximum allowed by law for handling past due accounts for each billing period on an amount that is delinquent. Members accounts unpaid thirty (30) days after the billing date are considered delinquent and a one-time late charge equal to 18.0% of the past due amount (maximum of $30.00) shall be added to the members' next statement.

**Make Checks Payable and Send to: Tampa Palms Golf & Country Club 5811 Tampa Palms Blvd, Tampa FL 33647**

| Item # | 030016 |
|---|---|
| Date | 14-FEB-13 |
| 2 Filet Mignon | $99.90 |
| Amount | $99.90 |
| Service Charge | $19.98 |
| Tax | $8.39 |
| Total | $128.27 |

SEC-SEC-E-0000160