**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **No. 17-cv-8223 (PKC)** |
| **Plaintiff,** | |
| **v.** | |
| **MOHAMMED ALI RASHID,** | |
| **Defendant.** | |

## DECLARATION OF KEVIN M. PIERCE

I, Kevin M. Pierce, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am over eighteen years of age and reside in Willoughby, Ohio.  I am making this declaration on the understanding that counsel to the Securities and Exchange Commission (the "SEC") intends to submit it as my direct testimony in this case.   I intend to appear at trial to reaffirm that my declaration is true and correct, and to answer questions on cross examination and re-direct examination.

2.      I have been retained by the SEC as an expert witness on this matter.  I have provided two reports: (1) my initial report dated April 15, 2019; and (2) my rebuttal report dated May 13, 2019.  My initial report is incorporated herein as containing my opinions and direct testimony in this case, and it is attached to my declaration as Exhibit A.

3.      I intend to submit a separate direct testimony affidavit regarding my rebuttal expert report on August 16, 2019.

### Expert Qualifications

4.      I am a Director in the Dispute Consulting Group at Stout Risius Ross, LLC ("Stout").  I am a licensed Certified Public Accountant ("CPA") with over 23 years of experience.

I hold the Certified Fraud Examiner ("CFE") and the Certified in Financial Forensics ("CFF") designations.

5.      I have consulted with lawyers and their clients regarding business, financial and economic issues related to complex litigation and disputes in a wide array of industries.  Most of these matters related to the assessment and estimation of economic damages and/or financial forensic investigations.  I have issued expert reports in many of these matters in addition to providing testimony.

6.      Stout is a professional financial and operational advisory services firm serving a variety of businesses in numerous industries and countries. Stout focuses its services in the areas of Investment Banking; Valuations & Financial Opinions; and Dispute Advisory & Forensic Services. Stout has over 450 professionals located in multiple offices throughout the United States, Europe and Asia.

7.      During the course of my work at Stout, I have performed analyses and issued expert reports relating the business and/or personal nature of expenditures by individuals and businesses. This includes, but is not limited to, analyzing expense reports submitted by professional services providers including attorneys and investment advisors.  Additionally, I have analyzed the business or personal nature of the expenditures of hedge fund managers, construction project owners/managers, accountants, business managers and others.  I have also worked in professional services for over 23 years in which I have submitted expenses for reimbursement under various corporate expense policies.

8.      Prior to joining Stout, I was a Senior Associate at The Siegfried Group, LLP, a national consulting firm.  While at The Siegfried Group, LLP, I primarily worked with a "Big 4" accounting firm providing audit and review services to publicly held and large privately held

companies.  My previous work experience also includes providing audit, review, compilation, internal control review and remediation, and other accounting and consulting services at public accounting firms.

9.      I am a member of the American Institute of Certified Public Accountants ("AICPA"), the Ohio Society of Certified Public Accountants ("OSCPA"), and the Association of Certified Fraud Examiners ("ACFE").

## Scope of My Assignment

10.      As a result of Apollo's investigation into Mr. Rashid's expense reports, Mr. Rashid and his advisors self-identified items that he charged his clients as business expenses that he later reclassified as "Personal", "Partial Business Expense", or "Personal (prev. paid back)" expenses. A worksheet within PX 19 Bates Number APOLLO00109357 that represents Mr. Rashid's reclassification of expenses from business to personal is referred to as the "Master Spreadsheet."

11.      As described in further detail throughout my Initial Expert Report, the Master Spreadsheet includes 988 individual expense items noted as "Personal", "Partial Business Expense", or "Personal (prev. paid back)" totaling approximately $250,000 (the "Relevant Expenses").

12.      I have been asked by the SEC to analyze, investigate and evaluate, based on the documents made available to me, whether or not the Relevant Expenses are business expenses or personal expenses of Mr. Rashid.

## Summary of My Opinions

13.      Based on the information available to me and using the process as described within my attached Initial Expert Report, I determined whether each of the 988 transactions comprising the Relevant Expenses were business related or personal.

14.     During the course of my review I noticed that, at times, Mr. Rashid would extend a business trip for personal reasons. I also noticed that Mr. Rashid would occasionally have an out of town business trip, but instead of returning home, he would fly to another location for a personal trip. Circumstances such as these made the classification of certain Relevant Expenses difficult. Therefore, I have classified such expenses as "Partial Business" as detailed documentation was not available to allocate the expenses between the business and personal portions of the trip.  It should be noted that the Relevant Expenses classified as "Partial Business" also include a portion that is personal in nature.

15.     Based on my review of the Relevant Expenses and the documentation made available to me, $185,542 of the total $250,126 is related to personal items expensed by Mr. Rashid as business related. Of the remaining expenses, $59,313 are partial business and $5,373 are business related.  *See* Ex. C*,* attached to my expert report.

### Summary of My Methodology

16.     The documents I reviewed in my classification of the Relevant Expenses as business or personal primarily consisted of the following main categories of documents:

- Apollo's Travel and Expense Reimbursement Policies;

- Apollo Employee Handbook and Apollo Code of Ethics;

- Expense summaries for Mr. Rashid prepared by Apollo;

- Mr. Rashid's Employee Expense Receipt Form and supporting documentation (receipts, affidavits for expenses missing receipts, travel agency statements, etc.), if applicable, during the Relevant Period;

- Mr. Rashid's Expense Report Accounting Distributions reports;

- Mr. Rashid's calendar entries in his Apollo email in Microsoft Outlook;

- Mr. Rashid's emails to/from his Apollo email address;

- Credit card statements from Mr. Rashid's corporate American Express Card;

- Fact witness declarations and depositions, including Mr. Rashid's;

- Detailed trip expense summaries prepared by Mr. Rashid's attorneys;

- Defendant Mohammed Ali Rashid's Responses and Objections to Plaintiff Securities and Exchange Commission's First Set of Requests for Admissions; and

- The Private Placement Memoranda.

17.    The approximately $250,000 of Relevant Expenses identified by Mr. Rashid as personal or partial business served as the starting point for my analyses.[1] *See* Ex. D, attached to my initial report for a full listing of the Relevant Expenses.  This Relevant Expense listing included the following information for each of the 988 transactions:

- Transaction number;

- Date of the expense;

- Merchant (who the expense was paid to);

- Description;[2]

- Transaction amount;

- Payment Type (Corporate American Express versus Out of Pocket);

- Project name;

- Mr. Rashid's expense classification; and

- Allocation Suggestions/Comments (only one of the Relevant Expenses was populated for this field).

18.    As described in more detail in my Initial Expert Report, I performed the following tasks to determine whether the 988 transactions were personal or business in nature:  (1) researched

---

[1] PX19 at APOLLO 00109357.

[2] In certain instances, the transaction description did not match the content found in Mr. Rashid emails and/or Calendar entries.  For example, on May 17, 2010 there is a $99.83 charge from KOI NY. The long description found in PX 19 – APOLLO00109357 says this expense was for "late at office dinner with Aleris". However, based on the email review (process explained further in report) I have identified an email that contains evidence that dinner at KOI was with Farah Khan, Chirag Shah and Akhil Dhawan.

the listed Merchant; (2) matched Relevant Expenses to Rashid's Expenses from Apollo's Business Records; (3) analyzed Rashid's employee expense receipt forms and receipts; (4) reviewed Apollo's Travel & Expense Policies; (5) analyzed Rashid's calendar entries produced in this litigation; (6) reviewed various declarations and depositions; and (7) searched over 12,000 of Rashid's emails, which were produced in this litigation. *See* Pierce Initial Expert Report at ¶¶ 27-49, Ex. C.

## My Methodology Applied to Representative Examples

19.     To provide representative examples of my analysis, I have chosen three sample transactions from the Relevant Expenses to further demonstrate my methodology for reviewing, analyzing, and evaluating the Relevant Expenses.[3]  I chose a transaction from within each of the Travel – Airfare, Travel – Hotel, and Meals & Drinks categories.

## Example #1 – Travel - Airfare

20.     In order to demonstrate my methodology for expenses related to Travel – Airfare transactions, I chose a $1,548.90 charge from United Airlines on January 29, 2013 allegedly for "flight for business meetings in Louisiana."   The following steps demonstrate the analysis methodology based on the available documentation as described in my report:

- •     Based on the merchant and Mr. Rashid's description found in the Relevant Expense listing, I assigned a category of Travel - Airfare to this transaction.

- •     I aligned this singular transaction with the information found in the "Data" worksheet of PX 10 - APOLLO00109071 and captured additional information as described in my Initial Expert Report.

- •     I did not locate this particular transaction in the Expense Report Accounting Distributions.

- •     While searching in the Employee Expense Receipt Forms, I did not find this particular transaction; therefore, no receipt was attached for this specific expense.

---

[3] *See* **Exhibit D to my Initial Expert Report** for a full listing of the transactions analyzed.

- Next, I reviewed the T&E Policies to understand if and when airfare can be expensed. Based on the T&E Policies airfare can be expensed for business purposes.

- I then searched Mr. Rashid's calendar entries using targeted searches as described in my Initial Expert Report. Starting with January 29, 2013 and followed by the day before and after January 29, 2013, I searched the entries for any information relating to why Mr. Rashid would be traveling. I did not find any calendar entries demonstrating a business reason for Mr. Rashid to be traveling to New Orleans.

- However, for Travel – Airfare expenses, the date shown in the Relevant Expense listing and in the "Data" worksheet of PX 10 - APOLLO00109071 often lists the payment processing date and not the travel date. Therefore, as with all Travel - Airfare expenses, I broadened my search to four days before and after the transaction date. After expanding my search on the dates, I still did not find any relevant calendar entries.

- I performed a targeted search on the transaction amount and located a statement from the travel agency, Travel Leaders, related to this expense.  I also identified this expense on the American Express credit card statement.  Based on the Travel Leaders statement Mr. Rashid left for New Orleans, LA on Friday, February 1, 2013.

- I attempted to verify Mr. Rashid's explanation for the expense with the fact witness declarations.  In this particular instance, Mr. Rashid attributes this flight to business meetings with QDI in Louisiana.  According to Gary Enzor – President, CEO, and Chairman of the Board for QDI – Mr. Rashid was going to the Super Bowl and was invited to a QDI brunch that weekend but does not believe the brunch would constitute treating Mr. Rashid's travel expenses as QDI-related.

- Mr. Rashid testified about this transaction in his deposition.  He stated that he met with Gary Enzor, as well as several other meetings.   Mr. Rashid states he had meetings with Lance Ostendorf as well as other people during his trip to New Orleans, including colleagues from Apollo, people from Aries Capital and contacts from business school that are in venture capital, private equity, and investment banking.

- Finally, I reviewed the provided emails using the nine-day range as described in my Initial Expert Report. These emails included, but were not limited to, an email from Mr. Rashid to Patrick McGinnis and David Richman dated January 26, 2013 that states, "I am in Nola for the Super Bowl next weekend!"

- After gathering and evaluating all the information as described, I concluded that this expense was personal and not business related.

**Example #2 – Travel - Hotel**

21.     For Travel – Hotel expenses I chose a $1,832.90 hotel charge at the Hospes Maricel in Barcelona, Spain on August 22, 2010 for "Hotel in Barcelona for Metals meetings."

- To support the classification as a Hotel expense, I researched merchant information and verified that it was a hotel.

- I aligned this particular transaction with the information found in the "Data" worksheet of PX 10 - APOLLO00109071 and captured additional information as described in my Initial Expert Report.

- I located this transaction in the Expense Report Accounting Distribution reports. This transaction can be found on Expense Report Accounting Distribution number 4261.

- While searching in the Employee Expense Receipt Forms, I did not find this particular transaction; therefore, no receipt was attached for this specific expense.

- Next, I reviewed the T&E Policies to understand if and when hotels can be expensed. Based on the T&E Policies hotels can be expensed for business purposes. It is noted in the policy that weekend trips may be reimbursable if the additional hotel costs are less than the airfare saved.   However, I did not see any documentation that this was the case.

- I then searched Mr. Rashid's calendar entries using targeted searches as described in my Initial Expert Report. Starting with August 22, 2010 and followed by the day before and after August 22, 2010, I searched the entries for any information relating to why Mr. Rashid would be traveling to Barcelona.

- None of the declarations provided to me were relevant to this expense. However, Mr. Rashid testified about this expense in his deposition.  Mr. Rashid testified that he recalled being in Barcelona at some point with Patrick McGinnis.  He also stated that he didn't recall doing business with Mr. McGinnis in Barcelona related to Metals USA.

- Next, I looked to gather evidence on when, where, and why Mr. Rashid would be staying in a hotel based on Mr. Rashid's emails.  To do this, I once again used a nine-day range – the day of the expense with four days before and after – to search through the emails provided. I did not find any relevant emails within this nine-day range. However, in this particular case, using this search technique to look for evidence related to other Relevant Expenses, I located emails pertaining to this transaction. According to emails between Mr. Rashid, his sister Erem Rashid, his friend Patrick McGinnis, and a travel agent dated August 12 & 13, 2010, the hotel was for a trip from August 20-23, 2010.  For example, on August 12, 2010, an email

from Kelly Grumbach to Erem Rashid recommends that "if you want to party, you want to be in Mallorca" and indicated that Hospes Maricel would be a potential lodging option. Subsequently, Mr. Rashid responds to his sister informing her that he would like to reserve the Hospes Maricel for August 20-23.   In another email, Kelly Grumbach notifies Erem Rashid that her suite has been confirmed and booked at hotel Hospes Maricel.

- After gathering and evaluating all the information as described, I concluded that this expense was personal and not business related.

**Example #3 – Meals & Drinks**

22.   As an example of a Meals expense, I chose a $265.09 dinner at Fig & Olive on August 16, 2011 for "Dinner with Beddows and Vaughn – Welspun."

- To support the classification as a Meal expense, I researched merchant information and verified that it was a restaurant in New York City.

- I aligned this particular transaction with the information found in the "Data" worksheet of PX 10 - APOLLO00109071 and captured additional information as described in my Initial Expert Report.

- I located this transaction in the Expense Report Accounting Distribution reports. This transaction can be found on Expense Report Accounting Distribution number 6728.

- While searching in the Employee Expense Receipt Forms, I did not find this particular transaction; therefore, no receipt was attached for this specific expense.

- Next, I reviewed the T&E Policies to understand if and when meals can be expensed. Based on the T&E Policies meals can be expensed for business purposes.

- I then searched Mr. Rashid's calendar entries using targeted searches as described in my Initial Expert Report. Starting with August 16, 2011 and followed by the day before and after August 16, 2011, I searched the entries for any information relating to why Mr. Rashid would be going out to dinner. I found a calendar entry for "Dinner at Fig & Olive" for August 16, 2011 from 7:30-9:30 pm.

- None of the declarations provided to me were relevant to this transaction.

- I continued with the email analysis and found that on August 15, 2011, Mr. Rashid's sister Erem Rashid sent a confirmation email saying, "We are confirmed for dinner

tomorrow evening in honor of Ruhi's birthday" followed by the reservation details: Fig & Olive on Tuesday, August 15, 2011 at 7:30 PM.[4]

•      After gathering and evaluating all the information as described, I concluded that this expense was personal and not business related.

**Required Disclosures Regarding My Engagement**

23.      My conclusions are based on the information received to date. I reserve the right to change those conclusions should additional information be provided.

24.      No one that worked on this engagement has any known financial interest in the Defendant or the Plaintiff or the outcome of the analysis.

25.      Further, Stout's compensation is neither based nor contingent on the results of the analysis.

26.      Stout is compensated at a rate of $315 per hour for time incurred by me. Other individuals from Stout also provided assistance in this matter; their hourly rates range from $125 per hour to $375 per hour.

Executed on July 18, 2019

Cleveland, Ohio


_Kevin M. Pierce_
Kevin M. Pierce

---

[4] It appears Erem Rashid accidentally typed "Tuesday, August 15, 2011" instead of "Tuesday, August 16, 2011."

# EXPERT WITNESS REPORT OF
# KEVIN M. PIERCE, CPA, CFF, CFE

**April 15, 2019**

**Presented in:**

## <u>Securities and Exchange Commission v. Mohammed Ali Rashid</u>

**CASE NO. 17-cv-8223**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



– **This Page Intentionally Left Blank** –



**Securities Exchange Commission v. Mohammed Ali Rashid**

**Expert Report of Kevin M. Pierce**

**April 15, 2019**

## Table of Contents

I.   Scope of Opinion and Disclosures Required Under Rule 26(A)(2)(B) ................ 3
II.  Qualifications ................................................................................. 4
III. Background ..................................................................................... 5
IV.  Analysis ......................................................................................... 7
V.   Conclusion ..................................................................................... 19
VI.  Assumptions and Limiting Conditions ............................................. 20



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

## Exhibits

Exhibit A………………………………………………..List of Documents Considered
Exhibit B………………………………………………...………………Curriculum Vitae
Exhibit C....……………………………………………..Summary of Relevant Expenses
Exhibit D…………………………………………………......Detail of Relevant Expenses
Exhibit E………….…………….Example 1 – Travel – Airfare Supporting Documentation
Exhibit F…………………………Example 2 – Travel – Hotel Supporting Documentation
Exhibit G…………………….. Example 3 – Meals & Drinks Supporting Documentation



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

### I.   Scope Of Opinion And Disclosures Required Under Rule 26(A)(2)(b)

1.      This report presents my opinions resulting from my analysis of certain expenditures made by Mohammed Ali Rashid ("Mr. Rashid" or "Defendant") in relation to the matter of the Securities Exchange Commission ("SEC or "Plaintiff") v. Mohammed Ali Rashid.   Specifically, I have been asked to determine whether expenditures made by Mr. Rashid were business related or personal in nature based upon documentation provided to me.

2.      This report contains a summary of the information I considered in the development of my opinions and a statement of my qualifications.  My opinions, detailed herein, are based on the data and information reviewed to date as summarized in this report.   I reserve the right to supplement and/or amend my opinions should additional relevant data be provided to me.

3.      A detailed list of the sources of information considered is presented in *Exhibit A*.

4.      My curriculum vitae and lists of recent testimony, publications, and relevant presentations are presented in *Exhibit B*.

5.      Stout Risius Ross, LLC ("Stout") is compensated at a rate of $315 per hour for time incurred by me.  Other individuals from Stout also provided assistance in this matter; their hourly rates range from $125 per hour to $375 per hour.

3



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

## II.   Qualifications

6.   I am a Director in the Dispute Consulting Group at Stout.

7.   I am a licensed Certified Public Accountant ("CPA") with over 22 years of experience.

8.   I hold the Certified Fraud Examiner ("CFE") and the Certified in Financial Forensics ("CFF") designations.

9.   I have consulted with lawyers and their clients regarding business, financial and economic issues related to complex litigation and disputes in a wide array of industries.  Most of these matters related to the assessment and estimation of economic damages and/or financial forensic investigations.  I have issued expert reports in many of these matters in addition to providing testimony.

10.   I am a Director in the Dispute Consulting Group at Stout. Stout is a professional financial and operational advisory services firm serving a variety of businesses in numerous industries and countries. Stout focuses its services in the areas of Investment Banking; Valuations & Financial Opinions; and Dispute Advisory & Forensic Services. Stout has over 450 professionals located in multiple offices throughout the United States, Europe and Asia.

11.   During the course of my work at Stout, I have performed analyses and issued expert reports relating the business and/or personal nature of expenditures by individuals and businesses.  This includes, but is not limited to, analyzing expense reports submitted by professional services providers including attorneys and investment advisors.  Additionally, I have analyzed the business or personal nature of the expenditures of hedge fund managers, construction project owners/managers, accountants, business managers and others.  I have also worked in professional services for over 22 years in which I have submitted expenses for reimbursement under various corporate expense policies.

12.   Prior to joining Stout, I was a Senior Associate at The Siegfried Group, LLP, a national consulting firm.  While at The Siegfried Group, LLP, I primarily worked with a "Big 4" accounting firm providing audit and review services to publicly held and large privately held companies.  My previous work experience also includes providing audit, review, compilation, internal control review and remediation, and other accounting and consulting services at public accounting firms.

13.   I am a member of the American Institute of Certified Public Accountants ("AICPA"), the Ohio Society of Certified Public Accountants ("OSCPA"), and the Association of Certified Fraud Examiners ("ACFE").

4



Securities Exchange
Commission v.
Mohammed Ali Rashid

Expert Report of
Kevin M. Pierce

April 15, 2019

### III.   Background[1]

#### *Background of Parties*

14.     Mohammed Ali Rashid is an individual with who currently resides in Florida. Mr. Rashid was an employee of Apollo Management, L.P ("Apollo") from August 2000 through February 2014. Mr. Rashid ultimately became a Senior Partner. Mr. Rashid's duties at Apollo consisted of advising private equity funds managed by Apollo affiliates, including (collectively "Apollo Affiliates" or the "Relevant Funds"):

- Apollo Investment Fund III, L.P.

- Apollo Investment Fund V, L.P.

- Apollo Investment Fund VI, L.P.

- Apollo Investment Fund VII, L.P.

- Apollo Natural Resource Partners, L.P.

15.     Apollo is an indirect subsidiary of Apollo Global Management, LLC, which engages in private equity, credit, and real estate lines of business. Apollo operates the private equity segment of Apollo Global Management, LLC. Apollo is a multi-billion dollar investment advisory practice registered with the Securities Exchange Commission since 2007.

#### *Background of Dispute*

16.     According to the SEC's Complaint, during his career at Apollo, Mr. Rashid provided investment advice to at least five private equity funds managed by Apollo Affiliates and received millions of dollars each year for his advisory services to his clients. Mr. Rashid had fiduciary duties to the client funds he advised and was required to act in his clients' best interest.

17.     According to the SEC's Complaint, from at least January 2010 through June 2013 (the "Relevant Period"), Mr. Rashid misappropriated the private equity funds' money by submitting false expense reports. Mr. Rashid submitted expense reports containing items classified as business expenses that were actually personal expenses. This violated Mr. Rashid's fiduciary duties to the clients that he advised as well as Apollo's Travel & Expense Policies ("T&E Policies").  Through the misreporting of his personal expenses as business related, the SEC alleges that Mr. Rashid misappropriated approximately $290,000 from the Relevant Funds.

18.     According to the SEC's Complaint, due to issues with Mr. Rashid's expense reports during the Relevant Period and as a result of a firm-wide review of expense allocations, Apollo conducted an internal investigation into Mr. Rashid's expense reports during the Relevant Period.   Ultimately, Mr. Rashid repaid Apollo

---

[1] Complaint, October 25, 2017, unless otherwise noted.



**Securities Exchange Commission v. Mohammed Ali Rashid**

**Expert Report of Kevin M. Pierce**

**April 15, 2019**

approximately $290,000 for personal expenses that he admittedly charged to his and Apollo's clients.[2]

19. According to the SEC's Complaint, Apollo and Mr. Rashid entered into a separation agreement effective February 28, 2014.

20. The claims set forth in the Complaint are as follows: 1) Violations of Section 206(1) of the Advisors Act (Against Rashid), 2) Violations of Sections 206(2) of the Advisors Act (Against Rashid), 3) Aiding and Abetting Violations of Section 206(1) of the Advisors Act (Against Rashid) and 4) Aiding and Abetting Violations of Section 205(2) of the Advisors Act (Against Rashid)

21. Defendant has denied the claims as described above (and as presented in the Defendant Mohammed Ali Rashid's Answer and Affirmative Defenses).[3]

---

[2] The $290,000 worth of expenses consists of: 1) Mr. Rashid charged and paid back over $10,000 in expenses in 2010 and 2012, 2) Mr. Rashid self-identified $220,000 worth or expenses as personal in 2013 and 3) An additional, $61,000 of expenses were identified as personal by the accounting firm Apollo hired.

[3] Defendant Mohammed Ali Rashid's Answer and Affirmative Defenses, August 14, 2018.



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

### IV. Analysis

*__Assignment__*

22.    As a result of Apollo's investigation into Mr. Rashid's expense reports that Mr. Rashid and his advisors self-identified items that he charged his clients as business expenses that he later reclassified as "Personal", "Partial Business Expense", or "Personal (prev. paid back)" expenses.[4] A worksheet within Plaintiff's Exhibit 19 Bates Number APOLLO00109357 that represents Mr. Rashid's reclassification of expenses from business to personal which is referred to as the "Master Spreadsheet".[5] As described in further detail throughout my report, the Master Spreadsheet includes 988 individual expense items noted as "Personal", "Partial Business Expense", or "Personal (prev. paid back)" totaling approximately $250,000 (the "Relevant Expenses").[6]

23.    I have been asked by the SEC to analyze, investigate and evaluate, based on the documents made available to me, whether or not the 988 items are business expenses or personal expenses of Mr. Rashid.

*__Documents Reviewed and Analyzed__*

24.    The documents I reviewed in my classification of the Relevant Expenses as business or personal primarily consisted of a review of the following main categories of documents:

- Apollo's Travel and Expense Reimbursement Policies;

- Apollo Employee Handbook and Apollo Code of Ethics;

- Expense summaries for Mr. Rashid prepared by Apollo;

- Mr. Rashid's Employee Expense Receipt Form and supporting documentation (receipts, affidavits for expenses missing receipts, travel agency statements, etc.), if applicable, during the Relevant Period;

- Mr. Rashid's Expense Report Accounting Distributions reports;

- Mr. Rashid's calendar entries in his Apollo email in Microsoft Outlook;

- Mr. Rashid's emails to/from his Apollo email address;

- Credit card statements from Mr. Rashid's corporate American Express Card;

- Fact witness declarations and depositions, including Mr. Rashid's;

---

[4] March 11, 2019 Deposition of Glen G. McGorty, Esq., pages 38-39.
[5] Plaintiff's Exhibit 19 – APOLLO00109357.
[6] March 11, 2019 Deposition of Glen G. McGorty, Esq., pages 46-37.



**Securities Exchange Commission v. Mohammed Ali Rashid**

**Expert Report of Kevin M. Pierce**

**April 15, 2019**

- Detailed trip expense summaries prepared by Mr. Rashid's attorneys;

- Defendant Mohammed Ali Rashid's Responses and Objections to Plaintiff Securities and Exchange Commission's First Set of Requests for Admissions; and

- The Private Placement Memoranda.

25.    A description of how these documents were utilized in my analysis of the Relevant Expenses is discussed in further detail below. A detailed list of the documents considered for the purposes of reaching my opinions included in this report is included at *Exhibit A*. I reserve the right to supplemental and/or amend my opinions contained in this report should I be provided with additional information relevant to my opinions.

### *Analysis of the Relevant Expenses*

26.    The approximately $250,000 of Relevant Expenses identified by Mr. Rashid as personal or partial business served as the starting point for my analyses.[7] See *Exhibit D* for a full listing of the Relevant Expenses. This Relevant Expense listing included the following  information for each of the 988 transactions:

- Transaction number;

- Date of the expense;

- Merchant (who the expense was paid to);

- Description;[8]

- Transaction amount;

- Payment Type (Corporate American Express versus Out of Pocket);

- Project name;

- Mr. Rashid's expense classification; and

- Allocation Suggestions/Comments (only one of the Relevant Expenses was populated for this field).

---

[7] Plaintiff's Exhibit 19 – APOLLO00109357.
[8] In certain instances, the transaction description did not match the content found in Mr. Rashid emails and/or Calendar entries.  For example, on May 17, 2010 there is a $99.83 charge from KOI NY. The long description found in Plaintiff's Exhibit 19 – APOLLO00109357 says this expense was for "late at office dinner with Aleris". However, based on the email review (process explained further in report) I have identified an email that contains evidence that dinner at KOI was with Farah Khan, Chirag Shah and Akhil Dhawan.



**Securities Exchange Commission v. Mohammed Ali Rashid**

**Expert Report of Kevin M. Pierce**

**April 15, 2019**

Research of "Merchant"

27.    When the Merchant information in the Relevant Expenses was not apparent or obvious based on the merchant name (for example, Starbucks or American Airlines), I researched the respective Merchant to ascertain their primary line of business.[9] Additionally, I researched the Merchant to verify it aligned with the transaction description provided by Mr. Rashid.  In certain circumstances, the transaction description did not align with the merchant's business.  For example, an expense on February 25, 2010 with the description of "dinner with mgmt. for realogy" for $180 had a merchant of La Contessa, Inc., which appears to be a beauty salon.  I incorporated any relevant findings from my independent research on the "Merchant" in my determination of the Relevant Expenses as personal or business related.

28.    I also used the merchant data to summarize the Relevant Expenses into broader categories for ease of presentation of the results of my analysis.  The categories are as follows:

- Travel – Airfare

- Travel – Hotel

- Meals & Drinks

- Transportation expenses (car services, train, tolls taxis, parking etc.)

- Goods & Services

- Miscellaneous (fees, publications, other expenses not classified elsewhere)

Relevant Expenses Agreed to Mr. Rashid's Expenses from Apollo Business Records

29.    It is my understanding that in Plaintiff Exhibit 10, the "Data" worksheet from the Excel file at Bates Number APOLLO00109071 includes substantially all of Mr. Rashid's expenses from the Relevant Period as downloaded from Apollo's accounting system.

30.    Using this file, I was able to match the Relevant Expenses to the corresponding expense detail maintained in Apollo's accounting system.  This provided me with the following additional information relating to each item of the Relevant Expenses:[10]

- Project number;

---

[9] Some of the Merchants listed were the actual legal or corporate name rather than the name of the restaurant or store. For these items, I researched the legal and/or corporate names to identify any information relevant to determine the industry in which the business operates.

[10] Note that additional information was included in the Plaintiff's Exhibit 10 - APOLLO00109071 file that was not relevant to my analysis.



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

- Project name (portfolio company to which the expense was charged);

- Expense Report ID;

- Expense Type.

31.    In addition to providing data regarding the Relevant Expenses, by matching the Relevant Expenses to Plaintiff Exhibit 10 – APOLLO00109071, I verified that the Relevant Expenses had been classified as business expenses in the PeopleSoft system based on Mr. Rashid's expense reports.  This was further verified by agreeing the Relevant Expenses in the Plaintiff's Exhibit 10 – APOLLO00109071 "Data" worksheet to the "Expense Report Accounting Distributions" reports, which detailed Mr. Rashid's expenses during the Relevant Period.[11]  963 of the 988 Relevant Expenses transactions were agreed to the "Expense Accounting Distribution Reports" without exception.[12]

<u>Employee Expense Receipt Form</u>

32.    I was provided with the receipts and the affidavits for expenses missing receipts submitted by Mr. Rashid in support of his expenses as attached to the "Employee Expense Receipt Forms" as provided by Apollo.[13]  I searched the "Employee Expense Receipt Forms" and the attached receipts and captured the following information relating to the Relevant Expenses:

- Date on the receipt, if available;

- Time Stamp on the receipt, if available;

- Location on the receipt, if available; and

- Any handwritten notes helpful in determining if an expense was personal or business related, if available.

33.    The receipts submitted by Mr. Rashid to support his expenses and produced by Apollo varied greatly in their nature.  Some of the receipts appeared to be printed by the respective merchant, while other support included emails from Rashid, receipts from generic receipt pads, and handwritten notes.[14]  Additionally, 745 of

---

[11] APOLLO0040970-41240. It is my understanding that the Expense Report Accounting Distributions reports were generated by Apollo and include descriptions from the original expense reports that were submitted by Mr. Rashid, or by his assistants on his behalf. It is also my understanding that there are missing expenses that did not appear on the Expense Report Accounting Distribution reports due to a change in corporate cards.

[12] The "Report ID" column in Plaintiff's Exhibit 10 - APOLLO00109071 denotes the "Expense Report Accounting Distributions" number.  For 25 of the Relevant Expenses, the specific expense does not appear in the report denoted on Plaintiff's Exhibit 10 - APOLLO00109071.

[13] APOLLO00041241-00041546.

[14] Included in the receipts submitted by Mr. Rashid were hand written notes. Common handwritten notes included items such as: "SF Hotel", "Tips at Conference", "Hotel Tips", and "Lunch @ Office Weekend". It is my understanding based on Mr. Rashid's deposition testimony and Defendant Mohammed Ali Rashid's Responses and Objections to Plaintiff Securities and



**Securities Exchange Commission v. Mohammed Ali Rashid**

**Expert Report of Kevin M. Pierce**

**April 15, 2019**

the 988 transactions comprising the Relevant Expenses did not include any type of receipt.[15]

34.     I analyzed the available receipts for any information potentially useful in determining the business or personal nature of the Relevant Expenses.

<u>Apollo's Travel & Expense Policies</u>

35.     I reviewed the January 2009 and the November 2011 Apollo Global Management LLC Travel & Expense Reimbursement Policy.[16] In addition to the T&E Policies I also reviewed the Apollo Handbook which references the T&E Policy.[17] I generally used the rules and guidelines from the T&E Policies to assist in my determination of whether certain expenses were allowable under the policy.  For example, the T&E Policy from November 2011 specifically lists "books, trade journals…" and other publications as not reimbursable.[18]  Therefore, in the event an expense was for items specifically noted as non-reimbursable, I classified it as personal.  However, in the instance in which certain limitations were put on expenses, such as expense limitations for entertainment in certain cities, I did not use such information in my classification of expense as personal or business related.[19]  Rather, I reviewed the information and documentation available to me in emails, calendar entries and other documentation, in addition to what was submitted with Mr. Rashid's expense reports to determine if any evidence existed that indicated the expense was for business purposes.  I did not consider whether the existing documentation complied with the T&E Policies expense substantiation requirements, or whether the expenses were within T&E Policy limitations.

36.     Expense policies generally require certain documentary evidence to support business expenses.  For example, IRS Publication 463 – Travel, Gift, and Car Expenses states that generally, documentary evidence such as receipts, cancelled checks, or bills should are needed to support expenses.[20]  The November 2011

---

Exchange Commission's First Set of Requests for Admissions that he denies or is unable to verify that he wrote the actual notes on the receipts and the expense reports.  However, for purposes of my analysis, I used the handwritten notes to obtain information about what Mr. Rashid claimed the Relevant Expenses pertained to, when applicable, as it provided contemporaneous information about the expense.

[15] Note that January 2009 Travel & Entertainment Policy requires a receipt for all items over $25 in the US.  The November 2011 Travel & Entertainment Policy does not require a receipt for any expense included on the Apollo Corporate Amex Card, but requires receipts for all expenses not on the Apollo Corporate Amex Card greater than $75.

[16] Plaintiff Exhibit 102 - APOLLO00004578-4596, and Plaintiff Exhibit 103 – RASHID00000639-650. The expense reimbursement policies contain similar language, procedures and requirements compared to expense policies I have seen across various industries, including professional services companies. I also reviewed Plaintiff's Exhibit 4 – RASHID00000659-674.  It is my understanding that Plaintiff's Exhibit 4 - RASHID00000659-674, which is undated, was effective after the Relevant Time Period.

[17] Plaintiff Exhibit 108 – APOLLO00004727-4777.

[18] RASHID00000648

[19] APOLLO00004586

[20] IRS Publication 463 – Travel, Gift, and Car Expenses



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

T&E Policy specifically cites IRS requirements that any tax deductible travel/entertainment costs include documentation of:[21]

- Amount of the expense

- Date and place incurred

- Type of entertainment

- Names and titles of others attending

- Specific business purpose of the expense…"Lunch/dinner meeting" or "business meeting" are unacceptable business purposes.

37.    Additionally, it should be noted that the Apollo's T&E Policies contain similar language, procedures and requirements compared to expense policies I have seen across various industries, including professional services companies.

38.    The Association of Certified Fraud Examiners describes a "mischaracterized expense reimbursement" scheme as a scheme in which an employee submits a request for expense reimbursement from the company for a personal expense by claiming that the expense is business related. Common elements in these schemes are failure to submit detailed expense reports, failure to include receipts, and failure to explain the business purpose of the listed expenses.[22]  Had I applied all of Apollo's T&E Policy requirements in assessing the personal or business nature of the Relevant Expenses, it is probable additional expenses would have been classified as personal.[23]  Instead, as mentioned above, if any documentation existed that indicated an expense was business related, whether submitted with Mr. Rashid's expenses or not, I classified the expense as business.

<u>Calendar Entries</u>

39.    Mr. Rashid's calendar entries during the Relevant Period were produced by Apollo.[24] Using Relativity, an online document review platform, I performed targeted searches for the dates of the transactions including the day before and after to identify information pertinent to my analysis of the Relevant Expenses.

40.    For airfare, the date for a transaction on the Relevant Expense listing is sometimes the payment processing date, rather than the date the actual travel occurred. Therefore, I would broaden my search to four days before and after the transaction date to identify potentially relevant calendar entries. I also searched on the transaction amount to locate Mr. Rashid's corporate credit card statements and statements from travel agencies to identify the actual dates of travel relating to airfare expenses.   I then reviewed calendar entries within the dates of travel to

---

[21] RASHID00000642.
[22] Association of Certified Fraud Examiners - 2017 Fraud Examiners Manual.
[23] For example, I did not apply spending limitations on Meals & Drinks as outlined in the T&E Policies as discussed previously in my report.
[24] APOLLO00005286-40013.



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

identify relevant information in determining the business or personal nature of airfare expenses.

41.     I captured any relevant information from the calendar entries that would assist in my determination whether an expense was personal or business related.  The types of information reviewed and considered includes, but is not limited to: time stamps, descriptions, names of other attendees, location and any narrative or descriptions of the appointment/meeting.

<u>Declarations/Depositions</u>

42.     I reviewed various declarations from fact witnesses that were produced in this matter as well as deposition testimony.   I compared information from the declarations and depositions with the Relevant Expenses and noted any pertinent information that would assist in the determination of the proper expense classification. For example, Gary Enzor stated in his declaration that he never had dinner alone with Mr. Rashid.[25] Therefore, I considered this in my analysis of items in which Mr. Rashid denoted in the "Description" found in the Relevant Expense listing that he had dinner with Gary Enzor.  I performed a similar analyses for all of the declarations and depositions which were provided to me.

<u>Email Review</u>

43.     Over 12,000 of Mr. Rashid's emails were produced in this matter.[26]  Due to the volume of emails produced, a review of each email was not feasible.  Therefore, I used the following methodology to complete my review of Mr. Rashid's emails.

44.     I began my analysis by focusing on individual items in the Relevant Expense listing with values over $100.

45.     For each transaction identified above the $100 threshold, I searched Mr. Rashid's emails within a nine-day range that consisted of the date of the transaction listed in the Relevant Expense listing and four days before and after the transaction occurred. If the review of the nine-day range for one particular transaction contained evidence relating to another transaction, I would document this as evidence in my analysis.  If expenses lower than $100 had a transaction date within the nine-day range of an expense over $100, I would capture relevant information for those transactions as well. I identified and documented any evidence that would assist in determining the appropriate classification of the expenses as business related or personal.

46.     I performed additional targeted searches to determine the appropriate classification as business or personal of any remaining Relevant Expenses for which I was unable to classify as business or personal after performing the procedures above.  This was done for all of the remaining Relevant Expenses, regardless of dollar value.

47.     If no evidence was available from the date range selected, I searched the dollar amount of the transaction in the American Express credit card statements provided

---

[25] Declaration of Gary Enzor.
[26] APOLLO00058387-108237.



**Securities Exchange Commission v. Mohammed Ali Rashid**

**Expert Report of Kevin M. Pierce**

**April 15, 2019**

by Apollo to gather additional information such as the actual date and location of the transaction. I then compared the information of the selected transaction with transactions on or near the same date to see if any relationship could be discerned. For example, if an expense fell during a time when Mr. Rashid appeared to be traveling for personal reasons, I used such information to assist in the determination of the transaction as personal or business related. To illustrate, in Example #2 for hotel charges discussed in detail below, it appears that Mr. Rashid flew to Barcelona for a personal trip after being in London for business meetings.

48.     In addition to the methodology noted above, I also performed targeted searches on key words and phrases. For example, if a specific transaction was related to a certain location, such as a restaurant, I searched Mr. Rashid's emails for the name of the restaurant to determine if any additional evidence relating to the transaction existed.

49.     During the review of Mr. Rashid's emails, I noticed that he often makes dinner plans outside of the nine-day window, as noted above. Due to the high volume of meal expenses included in the relevant expenses, I have performed a targeted search on the word "dinner" in order to collect relevant evidence to determine whether any of the Relevant Expenses were personal or business related.[27]

### *Relevant Transaction Examples*

50.     To provide representative examples of my analysis, I have chosen three sample transactions from the Relevant Expenses to further demonstrate my methodology for reviewing, analyzing, and evaluating the Relevant Expenses.[28] I chose a transaction from within the Travel – Airfare, Travel – Hotel, and Meals & Drinks categories.

Example #1 – Travel - Airfare[29]

51.     In order to demonstrate my methodology for expenses related to Travel – Airfare transactions, I chose a $1,548.90 charge from United Airlines on January 29, 2013 allegedly for "flight for business meetings in Louisiana."[30] The following steps demonstrate the analysis methodology based on the available documentation as described in my report:

- Based on the merchant and Mr. Rashid's description found in the Relevant Expense listing, I assigned a category of Travel - Airfare to this transaction.

- I aligned this singular transaction with the information found in the "Data" worksheet of Plaintiff's Exhibit 10 - APOLLO00109071 and captured additional information as described above.

---

[27] Meal & Drink expenses represented 419 of the 988 Relevant Expenses.
[28] See ***Exhibit D*** for a full listing of the transactions analyzed.
[29] See ***Exhibit E*** for supporting documentation.
[30] Plaintiff's Exhibit 19 – APOLLO00109357.



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

- I did not locate this particular transaction in the Expense Report Accounting Distributions.[31]

- While searching in the Employee Expense Receipt Forms, I did not find this particular transaction; therefore, no receipt was attached for this specific expense.[32]

- Next, I reviewed the T&E Policies to understand if and when airfare can be expensed. Based on the T&E Policies airfare can be expensed for business purposes.[33]

- I then searched Mr. Rashid's calendar entries using targeted searches as described above. Starting with January 29, 2013 and followed by the day before and after January 29, 2013, I searched the entries for any information relating to why Mr. Rashid would be traveling. I did not find any calendar entries demonstrating a business reason for Mr. Rashid to be traveling to New Orleans.

- However, for Travel – Airfare expenses the date shown in the Relevant Expense listing and in the "Data" worksheet of Plaintiff's Exhibit 10 - APOLLO00109071 often lists the payment processing date and not the travel date. Therefore, as with all Travel - Airfare expenses, I broadened my search to four days before and after the transaction date. After expanding my search on the dates, I still did not find any relevant calendar entries.

- I performed a targeted search on the transaction amount and located a statement from the travel agency, Travel Leaders, related to this expense.[34] I also identified this expense on the American Express credit card statement.[35] Based on the Travel Leaders statement Mr. Rashid left for New Orleans, LA on Friday, February 1, 2013.[36]

- I attempted to verify Mr. Rashid's explanation for the expense with the fact witness declarations. In this particular instance, Mr. Rashid attributes this flight to business meetings with QDI in Louisiana. According to Gary Enzor – President, CEO, and Chairman of the Board for QDI – Mr. Rashid was going to the Super Bowl and was invited to a QDI brunch that

---

[31] The "Report ID" column in Plaintiff's Exhibit 10 - APOLLO00109071 denotes the "Expense Report Accounting Distributions" number. This specific expense does not appear in the report denoted on Plaintiff's Exhibit 10 - APOLLO00109071.

[32] The "Report ID" column in Plaintiff's Exhibit 10 - APOLLO00109071 denotes the "Employee Expense Receipt Form" number. This specific expense does not appear in the report denoted on Plaintiff's Exhibit 10 - APOLLO00109071.

[33] Plaintiff Exhibit 103 – RASHID00000639-650; The T&E Policy also requires air travel to be booked through an approved travel agency, but I did not consider this requirement when determining the expense classification of airfare as personal or business.

[34] APOLLO00009596-9597.

[35] APOLLO00005111.

[36] APOLLO00009596-9597.

15



**Securities Exchange Commission v. Mohammed Ali Rashid**

**Expert Report of Kevin M. Pierce**

**April 15, 2019**

weekend but does not believe the brunch would constitute treating Mr. Rashid's travel expenses as QDI-related.[37]

- Mr. Rashid testified about this transaction in his deposition. He stated that he met with Gary Enzor, as well as several other meetings.[38] Mr. Rashid states he had meetings with Lance Ostendorf as well as other people during his trip to New Orleans, including colleagues from Apollo, people from Aries Capital and contacts from business school that are in venture capital, private equity, and investment banking.[39]

- Finally, I reviewed the provided emails using the nine-day range as described above. These emails included, but were not limited to, an email from Mr. Rashid to Patrick McGinnis and David Richman dated January 26, 2013 that states, "I am in Nola for the Super Bowl next weekend!"[40]

- After gathering and evaluating all the information as described, I concluded that this expense was personal and not business related.

Example #2 – Travel - Hotel[41]

52.    For Travel – Hotel expenses I chose a $1,832.90 hotel charge at the Hospes Maricel in Barcelona, Spain on August 22, 2010 for "Hotel in Barcelona for Metals meetings."[42]

- To support the classification as a Hotel expense, I researched merchant information and verified that it was a hotel.

- I aligned this particular transaction with the information found in the "Data" worksheet of Plaintiff's Exhibit 10 - APOLLO00109071 and captured additional information as described above.

- I located this transaction in the Expense Report Accounting Distribution reports. This transaction can be found on Expense Report Accounting Distribution number 4261.[43]

- While searching in the Employee Expense Receipt Forms, I did not find this particular transaction; therefore, no receipt was attached for this specific expense.

- Next, I reviewed the T&E Policies to understand if and when hotels can be expensed. Based on the T&E Policies hotels can be expensed for

---

[37] Declaration of Gary Enzor, June 26, 2018.
[38] Deposition of Mohammed Ali Rashid, page 245.
[39] Deposition of Mohammed Ali Rashid, pages 245-253.
[40] APOLLO00101715.
[41] See **Exhibit F** for supporting documentation.
[42] Plaintiff's Exhibit 19 – APOLLO00109357.
[43] APOLLO00041027; note that based on my analysis the hotel appears to be in Mallorca, not Barcelona.



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

business purposes. It is noted in the policy that weekend trips may be reimbursable if the additional hotel costs are less than the airfare saved.[44] However, I did not see any documentation that this was the case.

- I then searched Mr. Rashid's calendar entries using targeted searches as described above. Starting with August 22, 2010 and followed by the day before and after August 22, 2010, I searched the entries for any information relating to why Mr. Rashid would be traveling to Barcelona.

- None of the declarations provided to me were relevant to this expense. However, Mr. Rashid testified about this expense in his deposition. Mr. Rashid testified that he recalled being in Barcelona at some point with Patrick McGinnis.[45] He also stated that he didn't recall doing business with Mr. McGinnis in Barcelona related to Metals USA.[46]

- Next, I looked to gather evidence on when, where, and why Mr. Rashid would be staying in a hotel based on Mr. Rashid's emails. To do this, I once again used a nine-day range – the day of the expense with four days before and after – to search through the emails provided. I did not find any relevant emails within this nine-day range. However, in this particular case, using this search technique to look for evidence related to other Relevant Expenses, I located emails pertaining to this transaction. According to emails between Mr. Rashid, his sister Erem Rashid, his friend Patrick McGinnis, and a travel agent dated August 12 & 13, 2010, the hotel was for a trip from August 20-23, 2010. For example, on August 12, 2010, an email from Kelly Grumbach to Erem Rashid recommends that "if you want to party, you want to be in Mallorca" and indicated that Hospes Maricel would be a potential lodging option. Subsequently, Mr. Rashid responds to his sister informing her that he would like to reserve the Hospes Maricel for August 20-23.[47] In another email, Kelly Grumbach notifies Erem Rashid that her suite has been confirmed and booked at hotel Hospes Maricel.[48]

- After gathering and evaluating all the information as described, I concluded that this expense was personal and not business related.

Example #3 – Meals & Drinks[49]

53.    As an example of a Meals expense, I chose a $265.09 dinner at Fig & Olive on August 16, 2011 for "Dinner with Beddows and Vaughn – Welspun."[50]

---

[44] Plaintiff Exhibit 102 - APOLLO00004578-4596.
[45] Deposition of Mohammed Ali Rashid, page 502.
[46] Deposition of Mohammed Ali Rashid, page 502.
[47] APOLLO00107375.
[48] APOLLO00107354-107357.
[49] See *Exhibit G* for supporting documentation.
[50] Plaintiff's Exhibit 19 – APOLLO00109357.

17



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

- To support the classification as a Meal expense, I researched merchant information and verified that it was a restaurant in New York City.

- I aligned this particular transaction with the information found in the "Data" worksheet of Plaintiff's Exhibit 10 - APOLLO00109071 and captured additional information as described above.

- I located this transaction in the Expense Report Accounting Distribution reports. This transaction can be found on Expense Report Accounting Distribution number 6728.[51]

- While searching in the Employee Expense Receipt Forms, I did not find this particular transaction; therefore, no receipt was attached for this specific expense.

- Next, I reviewed the T&E Policies to understand if and when meals can be expensed. Based on the T&E Policies meals can be expensed for business purposes.[52]

- I then searched Mr. Rashid's calendar entries using targeted searches as described above. Starting with August 16, 2011 and followed by the day before and after August 16, 2011, I searched the entries for any information relating to why Mr. Rashid would be going out to dinner. I found a calendar entry for "Dinner at Fig & Olive" for August 16, 2011 from 7:30-9:30 pm.[53]

- None of the declarations provided to me were relevant to this transaction.

- I continued with the email analysis and found that on August 15, 2011, Mr. Rashid's sister Erem Rashid sent a confirmation email saying, "We are confirmed for dinner tomorrow evening in honor of Ruhi's birthday" followed by the reservation details:  Fig & Olive on Tuesday, August 15, 2011 at 7:30 PM.[54]

- After gathering and evaluating all the information as described, I concluded that this expense was personal and not business related.

---

[51] APOLLO00041089.
[52] Plaintiff Exhibit 102 - APOLLO00004578-4596.; The T&E Policy sets a dollar limit of $125 per person in New York City, but I did not apply this limitation in determining the classification of the expense as personal or business.
[53] APOLLO000007095.
[54] APOLLO00099496. It appears Erem Rashid accidentally typed "Tuesday, August 15, 2011" instead of "Tuesday, August 16, 2011."



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

### V.   Conclusion

54.   Based on the information available to me and using the process as described above, I determined whether each of the 988 transactions comprising the Relevant Expenses were business related or personal. If evidence did not support the expense description in Mr. Rashid's expense submissions, I classified it as personal.[55]

55.   During the course of my review I noticed that, at times, Mr. Rashid would extend a business trip for personal reasons. I also noticed that Mr. Rashid would occasionally have an out of town business trip, but instead of returning home, he would fly to another location for a personal trip. Circumstances such as these made the classification of certain Relevant Expenses difficult. Therefore, I have classified such expenses as "Partial Business" as detailed documentation was not available to allocate between the business related and personal. It should be noted that the Relevant Expenses classified as "Partial Business" also include a portion that is personal in nature.

56.   Based on my review of the Relevant Expenses and the documentation made available to me, $185,542 of the total $250,126 is related to personal items expensed by Mr. Rashid as business related. Of the remaining expenses, $59,313 are partial business and $5,373 are business related. **See *Exhibit C*.**[56]

57.   According to the Complaint, Securities law violations within June 13, 2011 to June 2013 are within the five-year limitation period.[57] The total amount of Relevant Expenses during this time period is $138,156, of this total $101,775 is related to personal items expenses by Mr. Rashid as business related. Of the remaining expenses, $33,388 are partial business and $3,095 are business related.[58]

---

[55] IRS Publication 463 – Travel, Gift, and Car Expenses.
[56] $102 is related to Credits/Refunds.
[57] Complaint, October 25, 2017.
[58] $102 is related to Credits/Refunds; The amounts disclosed are based on the dates that the Relevant Expenses were incurred. It is likely that had I performed the calculation based on the dates that the Relevant Expenses were billed to the Relevant Funds, the amounts disclosed would be different.



**Securities Exchange
Commission v.
Mohammed Ali Rashid**

**Expert Report of
Kevin M. Pierce**

**April 15, 2019**

**VI.   Assumptions and Limiting Conditions**

58.   My conclusions are based on the information received to date.  I reserve the right to change those conclusions should additional information be provided.

59.   No one that worked on this engagement has any known financial interest in the Defendant or the Plaintiff or the outcome of the analysis.  Further, Stout Risius Ross, LLC's compensation is neither based nor contingent on the results of the analysis.

60.   My conclusions are applicable for the stated date and purpose only and may not be appropriate for any other date or purpose.  This report is solely for use in the cited dispute, for the purpose stated herein, and is not to be referred to or distributed, in whole or in part, without prior written consent.

_____

Kevin M. Pierce, CPA, CFE, CFF
Director
Stout Risius Ross, LLC