Exhibit 7

1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK
2

    _____
3                                      )
    UNITED STATES SECURITIES AND       )
4   EXCHANGE COMMISSION,               )
                                       )
5                    Plaintiff,        )   Case No.
                                       )  17-cv-8223(PKC)
6   vs.                                )
                                       )
7   MOHAMMED ALI RASHID,               )
                                       )
8                    Defendant.        )
    _____)
9
10                   DEPOSITION OF EREM RASHID
11             (Volume 1, pages 1 - 86 inclusive)
12                 Thursday, November 15, 2018
13                        9:42 a.m.
14                        Taken at:
15             Securities and Exchange Commission
16                    200 Vesey Street
17                   New York, New York
18
19
20
21
22
23
24  Reported by:
    MONIQUE CABRERA,
25  JOB No. 181115PXL

                                                      1

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF, UNITED STATES SECURITIES AND

 3   EXCHANGE COMMISSION:

 4   UNITED STATES SECURITIES AND EXCHANGE COMMISSION

 5   BY:      DUANE K. THOMPSON, ESQUIRE

 6            DONNA NORMAN, ESQUIRE

 7            Division of Enforcement

 8            100 F Street, N.E.

 9            Washington, DC 20549

10            Telephone:  202.551.7159

11            E-mail: Thompsond@sec.gov

12

13

14   FOR THE DEFENDANT, MOHAMMED ALI RASHID:

15            GREENBERG TRAURIG, LLP

16            BY:  GREGORY W. KEHOE, ESQUIRE

17                 DANIEL FRIEDMAN, ESQUIRE

18            200 Park Avenue

19            New York, New York 10166

20            Telephone:  212.801.9200

21            E-mail:  Kehoeg@gtlaw.com

22            Telephone:  212.801.6788

23            E-mail:  Friedmand@gtlaw.com

24

25
```

2

```
 1   FOR THE WITNESS, EREM RASHID

 2           GENOVESE JOBLOVE & BATTISTA, P.A.

 3           BY:  THERESA M.B. VAN VLIET, ESQUIRE

 4           200 East Broward Boulevard, Suite 1110

 5           Fort Lauderdale, Florida 33301

 6           Telephone:  954.453.8012

 7           E-mail:  Tvanvliet@gjb-law.com

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1   INDEX

 2   THURSDAY, NOVEMBER 15, 2018

 3   EREM RASHID

 4                                              Page

 5          Examination By   MR. THOMPSON        7

 6                           MR. KEHOE          76

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
1                        EXHIBITS
2    EREM RASHID
3    Plaintiff's   Page   Description
4    Exhibit 32    18     E-mail string, #Apollo 6341748
5    Exhibit 33    25     E-mail string, #Apollo 10734-57
6    Exhibit 34    27     E-mail, #Apollo 105176
7    Exhibit 35    29     E-mail, #Apollo 68908
8    Exhibit 36    30     E-mail, #Apollo 4254-56
9    Exhibit 37    32     E-mails and attachment, #Apollo
10                        98779-80
11   Exhibit 38    37     E-mail string, #Apollo 98816-17
12   Exhibit 39    42     E-mail string, #Apollo 94796-97
13   Exhibit 40    44     E-mail string, #Apollo 86771-72
14   Exhibit 41    49     E-mail string, #Apollo 87078-79
15   Exhibit 42    59     E-mail string, #Apollo 86096
16   Exhibit 43    60     E-mail string, #Apollo 4502
17   Exhibit 44    64     E-mail string, #Apollo 88855
18
19
20
21
22
23
24
25
                                                      5
```

|   |   |
|---|---|
| | 1 |
| 09:53:58 | 2 |
| 09:53:58 | 3 |
| 09:54:04 | 4 |
| 09:54:06 | 5 |
| 09:54:10 | 6 |
| 09:54:14 | 7 |
| 09:54:16 | 8 |
| 09:54:20 | 9 |
| 09:54:22 | 10 |
| 09:54:26 | 11 |
| | 12 |
| 09:54:28 | 13 |
| 09:54:32 | 14 |
| 09:54:34 | 15 |
| 09:54:36 | 16 |
| 09:54:38 | 17 |
| 09:54:40 | 18 |
| 09:54:46 | 19 |
| 09:54:48 | 20 |
| 09:54:50 | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |

1      THURSDAY, NOVEMBER 15, 2018; A.M. SESSION

2         THE VIDEOGRAPHER:  We are now on the

3   record.  My name is Daniel Ortega.  I am the legal

4   videographer for Gradillas Court Reporters.  Today's

5   date is November 15, 2018.  The time is 9:43 a.m.

6   This individual deposition is being held at 200

7   Vesey Street, New York, New York, in the matter of

8   SEC versus Mohammed Ali Rashid, for the United

9   States District Court, Southern District of New

10   York.  The deponent is Erem Rashid.

11         Will counsel please identify yourselves for

12   the record.

13         MR. THOMPSON:  For the Plaintiff,

14   Securities and Exchange Commission, Duane Thompson.

15         MS. NORMAN:  Also from the Securities and

16   Exchange Commission, Donna Norman.

17         MR. KEHOE:  For Mr. Rashid, Gregory Kehoe,

18   Theresa Van Vliet and Daniel Friedman, and for the

19   witness as well.

20         THE VIDEOGRAPHER:  The Court Reporter,

21   Monique Cabrera, will now swear in the witness.

22         E R E M    R A S H I D, called as a

23   witness, having been first duly sworn by

24   Monique Cabrera, a Notary Public within and for the

25   State of New York, was examined and testified as

6

1    follows:

2    EXAMINATION BY

09:55:02   3    MR. THOMPSON:

09:55:02   4         Q.  Good morning, Ms. Rashid.

09:55:04   5         A.  Good morning.

09:55:04   6         Q.  We met briefly before the deposition.  My

09:55:10   7    name is Duane Thompson.  I am here representing the

09:55:14   8    Securities and Exchange Commission in this case

09:55:16   9    versus Mohammed Ali Rashid.  Before we get started

09:55:18  10    with questions, I would just like to mention a

09:55:20  11    couple of things which may make the discussion

09:55:24  12    easier here today.

09:55:24  13         I anticipate we will probably finish up in

09:55:26  14    a couple of hours, certainly before lunchtime,

09:55:30  15    nonetheless if we go more than an hour or so now, my

09:55:34  16    custom is to take a break every hour, hour and 15

09:55:38  17    minutes or so.  If you need a break at any other

09:55:42  18    time, for any reason, just let me know and we can go

09:55:44  19    off the record.  I just ask that we not go off the

09:55:48  20    record while a question is pending.  In other words,

09:55:50  21    when I have asked a question, before you have

09:55:52  22    answered the question.

09:55:54  23         I am going to try to make my questions

09:55:56  24    clear and understandable to you.  If they are not,

09:55:58  25    please let me know and I will seek to clarify the

7

| | | |
|---|---|---|
| 09:56:02 | 1 | question or rephrase the question. |
| 09:56:06 | 2 | As you see, the Court Reporter, the |
| 09:56:08 | 3 | stenographer is taking down everything that is being |
| 09:56:12 | 4 | said.  So it's important for us not to speak over |
| 09:56:20 | 5 | one another.  So please let me try to get out my |
| 09:56:22 | 6 | question before you start answering and I will |
| 09:56:24 | 7 | certainly try to be polite and not ask another |
| 09:56:30 | 8 | question while you are still answering the question. |
| 09:56:32 | 9 | We will be looking at some documents today |
| 09:56:34 | 10 | to hopefully refresh your recollection.  The events |
| 09:56:38 | 11 | that we are talking about occurred five to seven |
| 09:56:44 | 12 | years ago, so you may not remember things.  If you |
| 09:56:48 | 13 | don't remember things, I don't want you to speculate |
| 09:56:50 | 14 | or guess.  If "I don't know" is your honest |
| 09:56:54 | 15 | recollection, that is a perfectly acceptable answer. |
| 09:56:58 | 16 | Before we get started, do you have any |
| 09:57:00 | 17 | questions? |
| 09:57:02 | 18 | A.  No.  I am just suffering from a very bad |
| 09:57:06 | 19 | sinus attack.  So there may be moments where I may |
| 09:57:10 | 20 | have a coughing spasm or blow my nose, so it's an |
| 09:57:12 | 21 | apology for that in advance. |
| 09:57:14 | 22 | Q.  No, not a problem. |
| 09:57:16 | 23 | Can you please state your full name for the |
| 09:57:18 | 24 | record. |
| 09:57:18 | 25 | A.  Erem Rashid. |

8

| | | |
|---|---|---|
| 09:57:20 | 1 | Q.   And where do you reside, Ms. Rashid? |
| 09:57:24 | 2 | A.   In New York City. |
| 09:57:26 | 3 | Q.   Do you have any other residences? |
| 09:57:28 | 4 | A.   No, that is my primary residence. |
| 09:57:30 | 5 | Q.   What is your age, if you don't mind my |
| 09:57:36 | 6 | asking? |
| 09:57:36 | 7 | A.   I am 48. |
| 09:57:36 | 8 | Q.   Do you have any siblings? |
| 09:57:38 | 9 | A.   I do. |
| 09:57:38 | 10 | Q.   Who are they? |
| 09:57:40 | 11 | A.   Mohammed Ali Rashid.  He is my brother. |
| 09:57:44 | 12 | Q.   He is your only sibling? |
| 09:57:48 | 13 | A.   Yes. |
| 09:57:48 | 14 | Q.   And are your parents living? |
| 09:57:48 | 15 | A.   Yes, they are. |
| 09:57:50 | 16 | Q.   Can you identify them, please? |
| 09:57:50 | 17 | A.   Yes.  My father is Haroom Rashid.  My |
| 09:57:54 | 18 | mother is Marian Rashid. |
| 09:57:56 | 19 | Q.   And are their ages? |
| 09:57:58 | 20 | A.   My father was born in 1949.  My mother was |
| 09:58:02 | 21 | born in 1950.  I will let you do the math. |
| 09:58:08 | 22 | MR. KEHOE:  That makes them 49 and 48. |
| 09:58:16 | 23 | Being in that arena myself. |
| 09:58:16 | 24 | Q.   Where do they reside? |
| 09:58:20 | 25 | A.   They reside in California. |

9

| | | |
|---|---|---|
| 09:58:22 | 1 | Q.  Where in California? |
| 09:58:22 | 2 | A.  In Los Angeles. |
| 09:58:24 | 3 | Q.  How long have they lived there? |
| 09:58:24 | 4 | A.  1978. |
| 09:58:26 | 5 | Q.  Since 1978 continuously? |
| 09:58:34 | 6 | A.  Yes. |
| 09:58:34 | 7 | Q.  Do they have any other residences? |
| 09:58:36 | 8 | A.  No. |
| 09:58:36 | 9 | Q.  And are your parents generally in good |
| 09:58:42 | 10 | health? |
| 09:58:42 | 11 | A.  My mother is not. |
| 09:58:44 | 12 | Q.  And do they require any assistance from you |
| 09:58:48 | 13 | and your brother? |
| 09:58:50 | 14 | A.  Could you expand on that question? |
| 09:58:50 | 15 | Q.  Do you ever need to help your mother do |
| 09:58:54 | 16 | daily tasks or shopping or paying bills? |
| 09:58:58 | 17 | A.  Yes. |
| 09:59:00 | 18 | Q.  And how long has that been the case? |
| 09:59:02 | 19 | A.  For a couple of years.  She has been |
| 09:59:06 | 20 | declining steadily. |
| 09:59:10 | 21 | Q.  Can you please briefly review your |
| 09:59:16 | 22 | educational background? |
| 09:59:18 | 23 | A.  Sure.  I have an undergraduate degree and a |
| 09:59:22 | 24 | Master's Degree. |
| 09:59:26 | 25 | Q.  What is your Master's Degree in? |

10

**GRADILLAS COURT REPORTERS**
**(310) 859-6677**

09:59:28  1          A.  Accounting.

09:59:30  2          Q.  Can you review your employment history

09:59:36  3   since obtaining your Master's Degree?

09:59:38  4          A.  Yes.  Well, let me ask the question:  Are

09:59:46  5   you asking what I have done as a professional or

09:59:48  6   where I have worked.

09:59:50  7          Q.  Actually, both.  I can be more specific if

09:59:54  8   you would like.  If you can identify your employers

10:00:00  9   in a reverse chronological manner since you obtained

10:00:04 10   your Masters Degree, that would be helpful.  We can

10:00:06 11   start there.

10:00:06 12          A.  Price Waterhouse Coopers.  After that, I

10:00:12 13   was at Lazard Feres.  I actually went back to Price

10:00:18 14   Waterhouse Coopers.  I was at Alvarez and Marsal

10:00:20 15   before I joined PWC.

10:00:22 16          Q.  I'm sorry, what was that?

10:00:24 17          A.  Alvarez and Marsal before I joined PWC.  I

10:00:30 18   then went to Moleis.

10:00:34 19              Since then I have changed industries and

10:00:38 20   I'm in the retail industry now.

10:00:38 21          Q.  Who is your employer in the retail industry

10:00:42 22   currently?

10:00:42 23          A.  The Collected Group.

         24          Q.  I'm sorry?

10:00:46 25          A.  The Collected Group.

                                                                 11

10:00:46  1      Q.   What does The Collected Group do?

10:00:48  2      A.   They own three brands, contemporary women.

10:00:56  3      Q.   What years were you with Moleis?

10:00:58  4      A.   2008 through 2013.

10:01:04  5      Q.   What did you do there?

10:01:04  6      A.   I was an investment banker.

10:01:10  7      Q.   Did you have a particular area of

10:01:12  8  concentration?

10:01:14  9      A.   In the first year that I joined, I sat in

10:01:18 10  the industrial group.  I also had worked on

10:01:24 11  transactions in restructuring, so anyone that worked

10:01:26 12  at Moleis that was below MD, you were industry and I

10:01:30 13  would say transaction agnostics.  So if there was a

10:01:32 14  capital markets need, you did capital markets.  If

10:01:36 15  it was transactions M&A's, you did M&A's.  If it was

10:01:40 16  restructuring, you did restructuring.  You were

10:01:42 17  staffed out.

10:01:44 18      Q.   And what were your titles -- what was your

10:01:50 19  title or titles at Moleis, if you had different

10:01:52 20  titles?

10:01:52 21      A.   Vice president and senior vice president.

10:02:00 22      Q.   Why did you leave Moleis in 2013?

10:02:02 23      A.   I was laid off in June of 2013, and I was

10:02:08 24  given six months.  So my last official day at Moleis

10:02:12 25  was December 31st, 2013.

                                                        12

10:02:18   1         Q.   Was that layoff part of a general reduction
10:02:20   2    in force or was it specific to you?
10:02:22   3         A.   General reduction in force.
10:02:34   4         Q.   I am sorry, I forgot to ask, are you
10:02:36   5    married?
10:02:36   6         A.   I am not.
10:02:38   7         Q.   Have you ever been married?
10:02:40   8         A.   I have not.
10:02:56   9         Q.   In 2013, let's go back to that year, were
10:03:02  10    you aware that your brother, and since your last
10:03:06  11    names are both Rashid, I am going to refer to your
10:03:08  12    brother as the defendant or your brother, if that's
10:03:12  13    clear and acceptable to you?
10:03:12  14         A.   Sure.
10:03:14  15         Q.   So let's go back to 2013.  Were you aware
10:03:18  16    that your brother participated in a review of his
10:03:22  17    expenses by Apollo Management LP, which I will refer
10:03:26  18    to as Apollo?
10:03:30  19         A.   Not that I recall.
10:03:32  20         Q.   You don't recall being aware that there was
10:03:34  21    such a review being conducted?
10:03:36  22         A.   At what timeframe?
10:03:36  23         Q.   In 2013.
10:03:38  24         A.   Throughout the whole year?  I am not
10:03:40  25    understanding the question.

                                                                    13

| | | |
|---|---|---|
| 10:03:42 | 1 | Q. Okay. Well let's try to pinpoint it to the |
| 10:03:48 | 2 | timeframe of, let's say, the second half of 2013. |
| 10:03:56 | 3 | Did you have any knowledge or awareness that a |
| 10:03:58 | 4 | review was being conducted of your brother's |
| 10:04:00 | 5 | expenses at Apollo? |
| 10:04:04 | 6 | A. In the second portion of that year, yes. |
| 10:04:08 | 7 | Q. And what did you understand the review to |
| 10:04:14 | 8 | entail? |
| 10:04:14 | 9 | A. I did not know the details. |
| 10:04:18 | 10 | Q. Did you talk to your brother about the |
| 10:04:20 | 11 | review? |
| 10:04:20 | 12 | A. Again, I did not know the details. I knew |
| 10:04:26 | 13 | a review was being conducted, but I didn't know the |
| 10:04:28 | 14 | details behind it. |
| 10:04:30 | 15 | Q. Right. Did you talk to your brother about |
| 10:04:32 | 16 | the review? |
| 10:04:32 | 17 | A. He told me a review was ongoing. |
| 10:04:36 | 18 | Q. Did he indicate why a review was being |
| 10:04:38 | 19 | conducted? |
| 10:04:40 | 20 | A. Again, he did not discuss the details. |
| 10:04:46 | 21 | Q. Did you give your brother any advice with |
| 10:04:50 | 22 | respect to the review? |
| 10:04:50 | 23 | A. I guess I am going to ask, to understand |
| 10:05:00 | 24 | the question more clearly, advice how? |
| 10:05:04 | 25 | Q. Any advice. Advice as to whether he should |

14

| | | |
|---|---|---|
| 10:05:10 | 1 | cooperate with Apollo, whether he should obtain |
| 10:05:16 | 2 | counsel, any advice. |
| 10:05:16 | 3 | A.   I mean, I would tell him, whatever |
| 10:05:20 | 4 | timeframe that anything came up:  Be honest and be |
| 10:05:26 | 5 | open and the truth is the truth. |
| 10:05:30 | 6 | Q.   Were you aware that the defendant was |
| 10:05:34 | 7 | represented by counsel in the course of the review? |
| 10:05:38 | 8 | A.   The second half of the year, yes, I was. |
| 10:05:44 | 9 | Q.   And did you have any communications with |
| 10:05:48 | 10 | your brother's counsel? |
| 10:05:50 | 11 | A.   I had spoken to them once, yes. |
| 10:05:54 | 12 | Q.   Only one time? |
| 10:05:56 | 13 | A.   It may have been more, I am not certain. |
| 10:06:00 | 14 | Q.   Why did you speak with them? |
| 10:06:02 | 15 | A.   Probably more in the context of, you know |
| 10:06:12 | 16 | -- Jeez, this is years ago. |
| 10:06:14 | 17 | Q.   Sure. |
| 10:06:16 | 18 | A.   Maybe it was about, you know, making sure |
| 10:06:22 | 19 | he had, you know, good representation, more than, |
| 10:06:30 | 20 | you know, getting representation as opposed to I |
| 10:06:32 | 21 | wasn't involved in the details, but in the |
| 10:06:34 | 22 | representation. |
| 10:06:34 | 23 | Q.   Were you asked by Mr. Rashid's counsel to |
| 10:06:38 | 24 | your brother to provide any information or |
| 10:06:40 | 25 | documents? |

15

| | | |
|---|---|---|
| 10:06:44 | 1 | A.   Not that I recall. |
| 10:06:50 | 2 | Q.   Your brother was married to Estera Khan in |
| 10:06:56 | 3 | 2013; is that correct? |
| 10:06:58 | 4 | A.   Yes. |
| 10:07:00 | 5 | Q.   Did you have any discussion with Ms. Khan |
| 10:07:02 | 6 | about the expense review? |
| 10:07:10 | 7 | A.   Again, digging back to 2013, there may have |
| 10:07:20 | 8 | been conversations, I am not sure.  I don't know |
| 10:07:22 | 9 | exact conversations or when those conversations |
| 10:07:26 | 10 | would have happened. |
| 10:07:26 | 11 | Q.   Do you recall speaking with anyone at |
| 10:07:30 | 12 | Apollo about the expense review? |
| 10:07:34 | 13 | A.   You mean, did Apollo contact me? |
| 10:07:38 | 14 | Q.   Or did you contact them; any |
| 10:07:42 | 15 | communications? |
| 10:07:42 | 16 | A.   As far as I know, no.  Nobody reached out |
| 10:07:48 | 17 | to me. |
| 10:07:48 | 18 | Q.   Do you know who John Suydam is? |
| 10:07:54 | 19 | A.   I believe he is general counsel at Apollo. |
| 10:07:58 | 20 | Q.   And I take it you did not have any |
| 10:08:00 | 21 | discussion with Mr. Suydam about the expense review? |
| 10:08:08 | 22 | A.   Mr. Suydam has never contacted me and I |
| 10:08:10 | 23 | have never contacted Mr. Suydam. |
| 10:08:12 | 24 | Q.   Are you aware of who Lisa Bernstein is? |
| 10:08:16 | 25 | A.   I believe, at the time that I was at |

16

| | | |
|---|---|---|
| 10:08:20 | 1 | Moleis, she was in HR, if I am not mistaken. |
| 10:08:26 | 2 | Q.  And did you have any conversation with Ms. |
| 10:08:30 | 3 | Bernstein about the expense review? |
| 10:08:32 | 4 | A.  I have never had contact with Ms. |
| 10:08:36 | 5 | Bernstein. |
| 10:08:36 | 6 | Q.  Does the name Eugene Donnelly mean anything |
| 10:08:42 | 7 | to you? |
| 10:08:42 | 8 | A.  Yes. |
| 10:08:42 | 9 | Q.  Who did you understand Mr. Donnelly to be |
| 10:08:46 | 10 | in 2013? |
| 10:08:48 | 11 | A.  I know at some point he was CFO of Apollo. |
| 10:08:52 | 12 | I don't know the timeframe. |
| 10:08:54 | 13 | Q.  Whether in 2013 or any time thereafter, |
| 10:08:58 | 14 | have you ever had any discussion with Mr. Donnelly |
| 10:09:00 | 15 | about your brother's expense issues? |
| 10:09:02 | 16 | A.  No. |
| 10:09:04 | 17 | Q.  Does the name Gerald Cruz mean anything to |
| 10:09:12 | 18 | you? |
| 10:09:12 | 19 | A.  No. |
| 10:09:12 | 20 | Q.  Todd Bellows? |
| 10:09:14 | 21 | A.  No. |
| 10:09:14 | 22 | Q.  Cindy Michael? |
| 10:09:24 | 23 | A.  No. |
| 10:09:24 | 24 | Q.  Let's look at some documents.  I am going |
| 10:09:32 | 25 | to start with the next Exhibit Number.  Picking up |

17

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 10:09:40 | 1  | from the McGorty deposition, our next exhibit is SEC         |
| 10:09:46 | 2  | Deposition Exhibit 32.                                        |
|          | 3  | (Plaintiff's Exhibit No. 32 was so marked                    |
| 10:09:48 | 4  | for identification as of this date.)                         |
| 10:09:50 | 5  | MR. KEHOE:  You are going to continue from                   |
| 10:09:50 | 6  | deposition -- that's fine.                                    |
| 10:09:52 | 7  | MR. THOMPSON:  Yes, it will be easier that                   |
| 10:09:56 | 8  | way.                                                          |
| 10:10:18 | 9  | For the record, SEC Exhibit 32, I think                      |
| 10:10:30 | 10 | actually we're calling them Plaintiff's Exhibits,            |
| 10:10:32 | 11 | Plaintiff's Exhibit 32.                                       |
| 10:10:36 | 12 | MR. KEHOE:  Just for the record -- I'm                       |
| 10:10:36 | 13 | sorry -- just for the record, obviously, you will            |
| 10:10:38 | 14 | continue to ask questions.  We will object to                |
| 10:10:40 | 15 | questions outside the Statute of Limitations.  This          |
| 10:10:42 | 16 | is obviously 2010, which is outside the statute.             |
| 10:10:48 | 17 | MR. THOMPSON:  The objection is noted.                       |
| 10:10:50 | 18 | For the record, what has been marked as                      |
| 10:10:52 | 19 | Plaintiff's Exhibit 32 is a document that is Bates           |
| 10:10:54 | 20 | numbered Apollo, I am going leave out the 0's,               |
| 10:11:00 | 21 | 6341748.  It appears to be an e-mail string ending           |
| 10:11:04 | 22 | with the e-mail from Ms. Rashid to Ali Rashid, dated         |
| 10:11:12 | 23 | May 25, 2010, at 11:18 p.m.                                   |
| 10:11:18 | 24 | Q.  Ms. Rashid, it's a short document.  I am                 |
| 10:11:20 | 25 | going to ask you to just read through the e-mail             |

18

| | | |
|---|---|---|
| 10:11:26 | 1 | string and I will have a couple of questions for you |
| 10:11:28 | 2 | about that. |
| 10:11:46 | 3 | (Witness reviewing documents.) |
| 10:11:46 | 4 | A.  Okay. |
| 10:11:46 | 5 | Q.  Do you recognize the e-mail? |
| 10:11:52 | 6 | A.  No. |
| 10:11:52 | 7 | Q.  I take it you have no reason to believe |
| 10:11:56 | 8 | that you didn't have this e-mail exchange with your |
| 10:12:00 | 9 | brother? |
| 10:12:00 | 10 | MR. KEHOE:  Objection to form. |
| 10:12:00 | 11 | You can answer. |
| 10:12:02 | 12 | A.  This is from more than 10 years -- I am |
| 10:12:06 | 13 | sorry, eight years ago.  I have not a clue. |
| 10:12:12 | 14 | Q.  You don't recall the e-mail, but was |
| 10:12:20 | 15 | Erem.rashid@Moleis.com your e-mail address in May of |
| 10:12:22 | 16 | 2010? |
| 10:12:24 | 17 | A.  Yes. |
| 10:12:24 | 18 | Q.  And do you recognize your brother's e-mail |
| 10:12:26 | 19 | address, Rashid@Apollolp.com? |
| 10:12:30 | 20 | A.  Yes. |
| 10:12:30 | 21 | Q.  Do you have any reason to believe you did |
| 10:12:34 | 22 | not have this exchange of e-mails with your brother? |
| 10:12:38 | 23 | A.  I don't recall e-mails that I would send my |
| 10:12:40 | 24 | brother from eight years ago.  If it looks like I |
| 10:12:48 | 25 | sent it, sure, but again -- |

19

| | | |
|---|---|---|
| 10:12:50 | 1 | Q.  That's perfectly understandable.  I have to |
| 10:12:54 | 2 | ask the questions and if you don't remember, that's |
| 10:12:58 | 3 | fine. |
| 10:12:58 | 4 | A.  Absolutely. |
| 10:12:58 | 5 | Q.  From the context of the e-mail, do you know |
| 10:13:00 | 6 | whether your brother was in Phoenix with your |
| 10:13:06 | 7 | parents at the time? |
| 10:13:10 | 8 | A.  I don't have a clue. |
| 10:13:16 | 9 | Q.  Looking at the e-mail at the bottom of page |
| 10:13:20 | 10 | 63417, it's from your brother to you; and it seems |
| 10:13:30 | 11 | to be referring to, "Could you do 1:30 instead of |
| 10:13:34 | 12 | 2:00?  Will check with Will also." |
| 10:13:40 | 13 | Then, the next e-mail is from you, and you |
| 10:13:42 | 14 | say, "Sure." |
| 10:13:46 | 15 | First of all, do you have any idea who the |
| 10:13:48 | 16 | reference to Will is to? |
| 10:13:50 | 17 | A.  I really don't. |
| 10:13:54 | 18 | Q.  Do you have any recollection of what you |
| 10:14:00 | 19 | were -- of what your brother was trying to schedule? |
| 10:14:10 | 20 | One of the other things I should have mentioned is |
| 10:14:12 | 21 | that while the deposition is being videotaped, for |
| 10:14:12 | 22 | the stenographer, you have to answer audibly. |
| 10:14:14 | 23 | A.  I don't know. |
| 10:14:18 | 24 | Q.  The next e-mail is one from your brother to |
| 10:14:24 | 25 | you at 1:06 p.m., on May 25th, 2010, asking:  "Can |

20

```
10:14:28   1   you check with them?"  Then, "Headed out with mom to
10:14:34   2   run errands."
10:14:36   3           Did your brother sometimes take your mother
10:14:38   4   on errands in 2010?
10:14:40   5       A.  I have no idea.
10:14:46   6       Q.  Did your mother require assistance with
10:14:48   7   daily tasks in 2010?
10:14:52   8       A.  She had a few surgeries over the years,
10:14:54   9   it's been since 2004 she has had a few surgeries.
10:15:00  10   So there have been times where we've helped her
10:15:06  11   along.
10:15:06  12       Q.  And in 2010 and thereafter, did your
10:15:14  13   brother sometimes take your parents on out-of-town
10:15:18  14   trips away from Los Angeles?
10:15:22  15       A.  I am sure that's happened, but he doesn't
10:15:26  16   take them, we would all go somewhere as a family.
10:15:30  17       Q.  You would meet them somewhere?
10:15:38  18       A.  We're a close family.  We take trips
10:15:40  19   together.  Sometimes we meet, sometimes we travel
10:15:44  20   together.  I don't even know how to answer that
10:15:48  21   question actually.
10:15:50  22       Q.  Would your trips be centered around
10:15:56  23   holidays or birthdays?
10:15:58  24       A.  Not all the time.
10:16:00  25       Q.  Sometimes?
```

21

| | | |
|---|---|---|
| 10:16:00 | 1 | A. Sometimes. |
| 10:16:00 | 2 | Q. What is your father's birthday? |
| 10:16:02 | 3 | A. My father's birthday is April 11th. |
| 10:16:06 | 4 | Q. And your mother's? |
| 10:16:08 | 5 | A. August 1st. |
| 10:16:10 | 6 | Q. Did you have a custom of taking a family |
| 10:16:18 | 7 | vacation every year? |
| 10:16:22 | 8 | A. Many, many, years ago. |
| 10:16:26 | 9 | Q. How long ago? |
| 10:16:28 | 10 | A. There have been years we've traveled. |
| 10:16:34 | 11 | There have been years we haven't traveled.  It's all |
| 10:16:36 | 12 | dependent on what's happening. |
| 10:16:52 | 13 | Q. Do you know whether you were in Phoenix in |
| 10:16:56 | 14 | late May of 2010? |
| 10:16:58 | 15 | A. I don't recall. |
| 10:17:08 | 16 | Q. Have you ever been to Phoenix with your |
| 10:17:12 | 17 | parents? |
| 10:17:14 | 18 | A. Define "ever." |
| 10:17:16 | 19 | Q. Let's say, from January of 2010 to |
| 10:17:22 | 20 | September of 2013? |
| 10:17:28 | 21 | A. I don't recall. |
| 10:17:36 | 22 | Q. Did you, back in 2010, let's say through |
| 10:17:46 | 23 | 2013, regularly use your e-mail account at Moleis to |
| 10:17:50 | 24 | communicate with your brother? |
| 10:17:56 | 25 | A. Yes. |

22

10:18:00  1      Q.  Did you have any other e-mail accounts?

10:18:06  2      A.  I am sure I did, but no.  I had a Hotmail

10:18:14  3  account, but I don't know, are you asking if I used

10:18:24  4  Moleis or did I have other e-mail accounts?  I

10:18:26  5  guess, I'm not -- I'm confused on the question.

10:18:28  6      Q.  Well, right now I was just asking whether

10:18:30  7  you had other e-mail accounts?

10:18:32  8      A.  I do have other e-mail accounts.

10:18:36  9      Q.  Did you, back in the period, let's say.

10:18:38 10  July 2010 to September of 2013?

10:18:42 11      A.  I guess.

10:18:48 12      Q.  I don't want you to guess, but if you

10:18:50 13  recall or believe that you had other e-mail

10:18:52 14  accounts?

10:18:56 15      A.  I am a little confused on the question

10:19:02 16  simply because I have had a Hotmail account since

10:19:10 17  2001, so it was there.

10:19:20 18      Q.  So that answered it.  So you had a Hotmail

10:19:24 19  account.  Did you use that account to communicate

10:19:26 20  with your brother?

10:19:26 21      A.  I am sure I have.  I don't know when, how,

10:19:34 22  or anything like that.

10:19:36 23      Q.  Did you primarily use your account at

10:19:40 24  Moleis to communicate with your brother by e-mail?

10:19:42 25      A.  Yes.

                                                          23

10:19:44   1          Q.   Did your brother regularly use his e-mail
10:19:48   2     account at Apollo to communicate with you?
10:19:56   3          A.   I don't know and don't recall, you know,
10:20:00   4     during that time period that you're asking if I
10:20:02   5     received e-mails from other accounts, to be honest.
10:20:08   6          Q.   I was actually not asking about other
10:20:12   7     accounts, I was asking whether your brother
10:20:14   8     regularly used his Apollo e-mail account to
10:20:18   9     communicate with you?
10:20:18  10          A.   I would assume so.
10:20:24  11          Q.   Did you and your brother exchange texts
10:20:28  12     back in the period we have been discussing?
10:20:30  13          A.   Yes.
10:20:32  14          Q.   Did you ever post messages for one another
10:20:38  15     on any social media platform, Facebook or LinkedIn?
10:20:46  16          A.   Could you clarify the question?
10:20:48  17          Q.   Did you ever communicate with your brother
10:20:50  18     via Facebook?
10:20:52  19          A.   To wish him a happy birthday, yes.
10:20:58  20          Q.   Linked-In or anything else?
10:21:02  21          A.   Not that I recall.
10:21:04  22          Q.   You said that you might use Facebook to
10:21:10  23     wish your brother a happy birthday.  Does that mean
10:21:14  24     you would not use Facebook to schedule trips or
10:21:20  25     dinners?

                                                                    24

| | | |
|---|---|---|
| 10:21:20 | 1 | A.  Not that I recall. |
| 10:21:24 | 2 | Q.  You can set that exhibit aside, Ms. Rashid. |
| 10:21:52 | 3 | Let's mark Exhibit 33. |
| | 4 | (Plaintiff's Exhibit No. 33 was so marked |
| | 5 | for identification as of this date.) |
| 10:22:20 | 6 | MR. KEHOE:  Just a continued objection on |
| 10:22:20 | 7 | 2010 e-mails, on the Statute of Limitations, and we |
| 10:22:26 | 8 | can move on. |
| 10:22:30 | 9 | MR. THOMPSON:  For the record, Exhibit 33 |
| 10:22:30 | 10 | is a document bearing Bates Number Apollo 107354 |
| 10:22:36 | 11 | through 57.  It appears to be an e-mail string, |
| 10:22:42 | 12 | sending e-mail from Ali Rashid to Patrick McGinnis, |
| 10:22:48 | 13 | dated August 13, 2010. |
| 10:22:56 | 14 | Q.  Ms. Rashid, you can look through the entire |
| 10:22:58 | 15 | e-mail string.  If you would like, I am primarily |
| 10:23:02 | 16 | going to be exclusively asking questions about the |
| 10:23:06 | 17 | e-mails on the very first page of the document. |
| 10:25:02 | 18 | (Witness reviewing documents.) |
| 10:25:02 | 19 | Q.  Are you ready? |
| 10:25:02 | 20 | A.  Okay. |
| 10:25:04 | 21 | Q.  The e-mail at the bottom of the page on |
| 10:25:10 | 22 | Apollo 107354, it looks like an e-mail from you to a |
| 10:25:16 | 23 | Kelly Grumbach.  The subject is St. Tropez Hotels. |
| 10:25:20 | 24 | Who is Ms. Grumbach? |
| 10:25:26 | 25 | A.  I don't remember. |

25

```
10:25:30   1          Q.  In the body of the e-mail you refer to the
10:25:34   2     Maricel, the Maricel -- am I pronouncing that
10:25:40   3     correctly?
10:25:40   4          A.  I have been never been to Mallorca, so I
10:25:42   5     don't know the pronunciation of that hotel.
10:25:46   6          Q.  Did you have a stay in Mallorca in 2010,
10:25:50   7     that you recall?
10:25:54   8          A.  No.
10:25:56   9          Q.  Did you have another trip that your brother
10:26:06  10     accompanied you on in late 2010?
10:26:14  11               MR. KEHOE:  Are we talking about on this
10:26:18  12     e-mail or generally?
10:26:22  13               MR. THOMPSON:  Just generally.
10:26:22  14               MR. KEHOE:  So it's not related -- I'm
10:26:22  15     sorry, I just wasn't tracking with you there for a
10:26:26  16     second.  So the last question, and I apologize, is
10:26:26  17     not related to this or just generally speaking?
10:26:28  18               MR. THOMPSON:  It's just generally
10:26:30  19     speaking.
          20               MR. KEHOE:  Okay.
10:26:30  21               MR. THOMPSON:  She indicated she did not go
10:26:32  22     to Mallorca or the Maricel.
10:26:36  23          Q.  Do you recall another trip with your
10:26:38  24     brother to a resort hotel in late 2010?
10:26:46  25          A.  I don't recall.
```

26

| | | |
|---|---|---|
| 10:26:50 | 1 | Q.  Do you know whether your brother made a |
| 10:26:52 | 2 | trip to Spain in August of 2010? |
| 10:26:58 | 3 | A.  I don't recall. |
| 10:27:00 | 4 | Q.  Do you know who Patrick McGinnis was? |
| 10:27:04 | 5 | A.  I do. |
| 10:27:06 | 6 | Q.  Who is Mr. McGinnis? |
| 10:27:08 | 7 | A.  He's a friend of my brother's.  He's a |
| 10:27:10 | 8 | friend of mine as well. |
| 10:27:12 | 9 | Q.  A personal friend? |
| 10:27:12 | 10 | A.  Yes. |
| 10:27:12 | 11 | Q.  Is he a business acquaintance as well? |
| 10:27:20 | 12 | A.  Personal friend. |
| 10:27:22 | 13 | Q.  Do you know whether your brother and Mr. |
| 10:27:28 | 14 | McGinnis had any vacations together? |
| 10:27:32 | 15 | A.  Pertaining to this or any -- |
| 10:27:34 | 16 | Q.  Anything? |
| 10:27:36 | 17 | A.  I don't recall. |
| 10:27:52 | 18 | Q.  Is Mr. McGinnis married? |
| 10:27:56 | 19 | A.  Not to my knowledge. |
| 10:28:06 | 20 | Q.  We are done with that one, Ms. Rashid. |
| 10:28:18 | 21 | MR. THOMPSON:  Exhibit 34. |
| | 22 | (Plaintiff's Exhibit No. 34 was so marked |
| 10:28:44 | 23 | for identification as of this date.) |
| 10:28:44 | 24 | Q.  So Exhibit 34 is a one-page document, |
| 10:28:48 | 25 | bearing Bates Number Apollo 105176.  It looks like |

27

| | | |
|---|---|---|
| 10:28:54 | 1 | an e-mail from Ms. Rashid to your brother, dated |
| 10:29:00 | 2 | January 21, 2011. |
| 10:29:04 | 3 | Ms. Rashid, please read the e-mail, then I |
| 10:29:06 | 4 | will have a couple of questions for you about it. |
| 10:29:38 | 5 | (Witness reviewing document.) |
| 10:29:38 | 6 | Q.  Are you ready? |
| 10:29:38 | 7 | A.  I am. |
| 10:29:40 | 8 | Q.  Did you sometimes make restaurant |
| 10:29:44 | 9 | reservations for your brother? |
| 10:29:50 | 10 | A.  Yes. |
| 10:29:58 | 11 | Q.  The restaurant Scarpetta; is that located |
| 10:30:02 | 12 | in Miami, Florida? |
| 10:30:04 | 13 | A.  It looks that way from the e-mail. |
| 10:30:08 | 14 | Q.  And do you know whether your brother was in |
| 10:30:10 | 15 | Miami at the time? |
| 10:30:14 | 16 | A.  Again, January of 2011, I don't recall. |
| 10:30:22 | 17 | Q.  Do you know whether your brother went to |
| 10:30:24 | 18 | dinner at Scarpetta the following day, January 22, |
| 10:30:30 | 19 | 2015? |
| 10:30:30 | 20 | A.  I don't know. |
| 10:30:32 | 21 | MR. KEHOE:  I think it's 2011. |
| 10:30:36 | 22 | MR. THOMPSON:  I am sorry, 2011.  Thank |
| 10:30:38 | 23 | you. |
| 10:30:38 | 24 | Q.  All right.  Moving right along. |
| 10:30:50 | 25 | Exhibit 35. |

28

                1             (Plaintiff's Exhibit No. 35 was so marked

                2             for identification as of this date.)

10:31:30    3             MR. THOMPSON:  So, Exhibit 35 is another

10:31:32    4    one-page document.  This one bears numbers Apollo

10:31:38    5    68908.  It appears to be an e-mail from Mr. Rashid

10:31:44    6    to a group of people, including Ms. Rashid, dated

10:31:48    7    March 15, 2011.

                8             (Witness reviewing document.)

10:32:18    9             Are you ready, Ms. Rashid?

10:32:22   10        A.   I am.

10:32:22   11        Q.   Do you recall your brother planning a

10:32:24   12    birthday celebration for Farah Khan in March of

10:32:30   13    2011?

10:32:30   14        A.   I don't recall.

10:32:32   15        Q.   Do you know whether your brother threw a

10:32:36   16    birthday celebration for his wife around March of

10:32:42   17    2011?

10:32:42   18        A.   I honestly don't recall.

10:32:48   19             MR. KEHOE:  As with the other exhibits in

10:32:52   20    2010, this is 2011, we will object, posit our

10:32:56   21    objection on Statute of Limitations purposes, this

10:33:00   22    being beyond the Statute of Limitations, but you can

10:33:02   23    continue.

10:33:04   24             MR. THOMPSON:  So noted.

10:33:04   25        Q.   Do you recall attending a birthday

                                                                    29

| | | |
|---|---|---|
| 10:33:06 | 1 | celebration for Farah Khan in 2013? |
| 10:33:12 | 2 | MR. KEHOE:  You mean 2011? |
| 10:33:14 | 3 | MR. THOMPSON:  I am sorry, 2011. |
| 10:33:16 | 4 | A.  I don't recall. |
| 10:33:22 | 5 | Q.  Have you ever attended a birthday |
| 10:33:24 | 6 | celebration for Ms. Khan? |
| 10:33:28 | 7 | A.  Yes. |
| 10:33:28 | 8 | Q.  Do you recall approximately what years? |
| 10:33:36 | 9 | A.  Years ago.  I couldn't tell you when or |
| 10:33:40 | 10 | what date specifically. |
| 10:33:52 | 11 | Q.  Do you recall attending a birthday |
| 10:33:56 | 12 | celebration for Ms. Khan for each year? |
| 10:33:58 | 13 | A.  Each year since when?  Define the time |
| 10:34:02 | 14 | period. |
| 10:34:02 | 15 | Q.  Since 2011? |
| 10:34:04 | 16 | A.  2011 until today? |
| 10:34:06 | 17 | Q.  Until 2013, let's say? |
| 10:34:10 | 18 | A.  I don't recall. |
| 10:34:42 | 19 | MR. THOMPSON:  We're up to Exhibit 36. |
| | 20 | (Plaintiff's Exhibit No. 36 was so marked |
| | 21 | for identification as of this date.) |
| 10:35:14 | 22 | MR. THOMPSON:  Exhibit 36 bears Bates |
| 10:35:16 | 23 | Numbers Apollo 4254 through 56.  It looks likely an |
| 10:35:22 | 24 | e-mail string ending with an e-mail from Ms. Rashid |
| 10:35:26 | 25 | to her brother, dated March 27, 2011. |

30

| | | |
|---|---|---|
| 10:35:32 | 1 | A.   Ms. Rashid, please read through the e-mails |
| 10:35:36 | 2 | and let me know when you are ready to respond to the |
| 10:35:40 | 3 | questions. |
| 10:36:16 | 4 | (Witness reviewing documents.) |
| 10:36:16 | 5 | A.   Okay. |
| 10:36:18 | 6 | Q.   Do you recall whether your parents did a |
| 10:36:24 | 7 | trip to London in 2011? |
| 10:36:28 | 8 | A.   Yes. |
| 10:36:28 | 9 | Q.   They did? |
| 10:36:30 | 10 | A.   Yes. |
| 10:36:30 | 11 | Q.   Were you on that trip? |
| 10:36:34 | 12 | A.   I was. |
| 10:36:34 | 13 | Q.   Who else from the family was present? |
| 10:36:36 | 14 | A.   My brother. |
| 10:36:36 | 15 | Q.   So your parents, you and your brother? |
| 10:36:40 | 16 | A.   We were in London together, yes. |
| 10:36:42 | 17 | Q.   What was the purpose of that trip? |
| 10:36:46 | 18 | A.   My brother was there for work.  My parents |
| 10:36:50 | 19 | had come to visit relatives and I joined them. |
| 10:36:56 | 20 | Q.   What relatives were your parents visiting? |
| 10:36:58 | 21 | A.   Family. |
| 10:37:00 | 22 | Q.   Can you identify them? |
| 10:37:00 | 23 | A.   My mother's brother. |
| 10:37:04 | 24 | Q.   They lived in London? |
| 10:37:06 | 25 | A.   The family, yes. |

31

| | | |
|---|---|---|
| 10:37:10 | 1 | Q.  Did the trip extend to Paris as well? |
| 10:37:16 | 2 | A.  We were scheduled to go, we did not go. |
| 10:37:18 | 3 | Q.  Why not? |
| 10:37:20 | 4 | A.  My mother decided she needed quality time |
| 10:37:24 | 5 | with her brother. |
| 10:37:30 | 6 | Q.  In the middle of the first page of the |
| 10:37:34 | 7 | exhibit is an e-mail from your brother to you, March |
| 10:37:40 | 8 | 26, 2011, at 10:35.  There is a reference to "Popu" |
| 10:37:48 | 9 | and "Momu," are those references to your parents? |
| 10:37:52 | 10 | A.  No. |
| 10:37:54 | 11 | Q.  Who is that a reference to? |
| 10:37:56 | 12 | A.  It's my uncle. |
| 10:38:08 | 13 | Q.  Do you know who paid for your parents |
| 10:38:14 | 14 | travel and lodging accommodations on that trip? |
| 10:38:18 | 15 | A.  I believe they did, but I was not involved. |
| 10:38:24 | 16 | Q.  Who made the arrangements? |
| 10:38:28 | 17 | A.  That long ago, I don't recall. |
| 10:39:14 | 18 | Q.  You can set that aside Ms. Rashid. |
| 10:39:18 | 19 | MR. THOMPSON:  Let's mark Exhibit 37. |
| | 20 | (Plaintiff's Exhibit No. 37 was so marked |
| | 21 | for identification as of this date.) |
| 10:39:42 | 22 | MR. THOMPSON:  Exhibit 37 is Bates Number |
| 10:39:44 | 23 | Apollo 98779 to 80.  It also includes a sheet |
| 10:39:58 | 24 | indicating that the document is available in native |
| 10:40:02 | 25 | format.  That's Bates Number Apollo 95015, and then |

32

```
10:40:10   1   the native document is the last page of the exhibit.
10:40:14   2            MR. KEHOE:  Can we just -- before we go
10:40:16   3   into this subject, I am just looking at the -- I am
10:40:20   4   just trying to gather where we are going here.
10:40:22   5            The first two pages are 98779, 98780, they
10:40:32   6   are consecutive.  Then the next two are 95015, as
10:40:36   7   the other one, it is not Bates stamped.  Are we
10:40:40   8   saying this document goes together?
10:40:42   9            MR. THOMPSON:  That's my understanding, but
10:40:46  10   if you look at the actual production that Apollo
10:40:50  11   made, the document that's Bates Numbered -- let me
10:40:52  12   back up.  If you look at the actual electronic
10:40:56  13   document production and find the original e-mail
10:41:14  14   that references an attachment, specifically the
10:41:26  15   e-mail, bottom of the first page, Bates Number
10:41:28  16   Apollo 98779 from Ms. Rashid to Mr. Rashid, dated
10:41:36  17   April 11, 10:15, if you find the version of that
10:41:44  18   e-mail, that doesn't also include the subsequent
10:41:48  19   e-mails, it is possible to click on that attachment
10:41:52  20   and see what it is.
10:41:54  21            So that the page that is Bates numbered
10:41:56  22   Apollo 95015 is the attachment to that original
10:42:04  23   e-mail, so that's why they are not sequential.  It's
10:42:06  24   not possible, as I understand it, to click on the
10:42:10  25   attachment from the entire e-mail string that's
```

33

| | | |
|---|---|---|
| 10:42:18 | 1 | Bates Numbered Apollo 98779 to 80. |
| 10:42:24 | 2 | MR. KEHOE:  I just want to reserve any |
| 10:42:28 | 3 | objections to review this.  You understand my |
| 10:42:30 | 4 | question -- |
| | 5 | MR. THOMPSON:  Sure. |
| 10:42:30 | 6 | MR. KEHOE:  -- because, obviously, this is |
| 10:42:30 | 7 | not sequential.  I can't tell from this right now, |
| 10:42:34 | 8 | but why don't we just continue the questioning with |
| 10:42:36 | 9 | that caveat. |
| 10:42:40 | 10 | Of course, this is beyond the Statute of |
| 10:42:42 | 11 | Limitations, so we have a standing objection to that |
| 10:42:44 | 12 | as well. |
| | 13 | MR. THOMPSON:  Sure. |
| 10:42:44 | 14 | MR. KEHOE:  But we'll just hold that off |
| 10:42:46 | 15 | and take a look at it, revisit it at another time. |
| 10:42:48 | 16 | MR. THOMPSON:  Yes, and just so the record |
| 10:42:50 | 17 | is clear, it's my representation that after inquiry, |
| 10:42:56 | 18 | I believe the document that is the last page of the |
| 10:42:58 | 19 | exhibit was, in fact, what was attached to the April |
| 10:43:04 | 20 | 11, 10:15 e-mail, but I am relying on my legal |
| 10:43:16 | 21 | assistants who know more about that than I do. |
| 10:43:18 | 22 | Q.  Ms. Rashid have you had an opportunity to |
| 10:43:24 | 23 | review the document? |
| 10:43:26 | 24 | A.  I have. |
| 10:43:26 | 25 | Q.  Do you recall your mother's luggage being |

34

```
10:43:34   1   lost in transit on the trip to London in 2011?
10:43:40   2       A.   From this e-mail it seems like it was.  I
10:43:44   3   don't specifically recall.
10:43:44   4       Q.   You don't have a recollection of it.
10:43:48   5            Do you have a recollection of preparing a
10:43:52   6   travel plan for your mother?
10:43:54   7       A.   Honestly, from 2011, I really don't recall.
10:43:58   8       Q.   Again, it's understandable.  I have got to
10:44:02   9   ask the question, if you don't recall, that's -- and
10:44:08  10   that's your honest recollection, that is perfectly
10:44:14  11   understandable.
10:44:16  12            From the context of the e-mail, is it
10:44:18  13   apparent to you that there was a claim being made
10:44:22  14   for lost luggage, a claim being made on the Airline?
10:44:26  15            MR. KEHOE:  I am just going to object.  She
10:44:30  16   said she doesn't recall.  The document speaks for
10:44:32  17   itself.  If she doesn't recall, she doesn't recall.
10:44:36  18            MR. THOMPSON:  So noted.
10:44:56  19       Q.   First of all, do you have any reason to
10:44:58  20   believe that you did not send and receive the
10:45:02  21   e-mails reflected in Exhibit 37?
10:45:04  22            MR. KEHOE:  Object to the form.
10:45:04  23            You can answer.
10:45:06  24       A.   It looks like I did, and from reading this
10:45:10  25   e-mail, the first thing that comes across is my
```

35

```
10:45:14   1   brother and I have a very interesting relationship
10:45:20   2   for anyone who doesn't know us.  Looks like -- yes.
10:45:30   3   Yes.
10:45:30   4        Q.  On the attachment there is a reference to
10:45:34   5   baggage claim for American Express.  Do you know
10:45:42   6   whether an American Express card was used to
10:45:44   7   purchase your mother's Airline ticket?
10:45:50   8        A.  I don't know.
10:45:50   9        Q.  You don't know whose card that would have
10:45:52  10   been, I take it?
10:45:54  11        A.  I don't know.
10:46:04  12        Q.  During the London trip that we have been
10:46:08  13   discussing, were you with your brother the entire
10:46:12  14   time or no?
10:46:14  15        A.  This is this London trip?
10:46:18  16        Q.  Yes, ma'am?
10:46:20  17        A.  The one in --
10:46:24  18        Q.  The one we are talking about that was being
10:46:30  19   arranged as we saw in Exhibit 36, in late March of
10:46:36  20   2011?
10:46:38  21        A.  I was on that trip, yes.
10:46:40  22        Q.  Were you with your brother pretty much the
10:46:44  23   whole time or no?
10:46:44  24        A.  No.
10:46:46  25        Q.  When weren't you with your brother, if you
```

                                                           36

| | | |
|---|---|---|
| 10:46:52 | 1 | recall? |
| 10:46:52 | 2 | A.   When he was at work. |
| 10:46:54 | 3 | Q.   And do you recall what work he was doing? |
| 10:46:56 | 4 | A.   He was at the Apollo London office. |
| 10:47:00 | 5 | Q.   And how do you know that? |
| 10:47:02 | 6 | A.   Because he would go to work in the mornings |
| 10:47:08 | 7 | and we would try to have dinner with him in the |
| 10:47:12 | 8 | evenings, if he was available. |
| 10:47:36 | 9 | MR. KEHOE:  Are you okay? |
| 10:47:38 | 10 | THE WITNESS:  I think I may need a break in |
| 10:47:40 | 11 | about five minutes. |
| 10:47:42 | 12 | MR. THOMPSON:  Do you need a break? |
| 10:47:42 | 13 | THE WITNESS:  Yes. |
| 10:47:44 | 14 | MR. THOMPSON:  Let's go off the record. |
| 10:47:48 | 15 | THE VIDEOGRAPHER:  The time is 10:38 a.m. |
| 10:47:56 | 16 | We are off the record. |
| | 17 | (Whereupon, a recess was taken.) |
| | 18 | (Plaintiff's Exhibit No. 38 was so marked |
| 11:05:30 | 19 | for identification as of this date.) |
| 11:05:30 | 20 | THE VIDEOGRAPHER:  The time right now is |
| 11:05:50 | 21 | 10:57 a.m.  We are back on the record. |
| 11:05:52 | 22 | EXAMINATION BY |
| 11:05:54 | 23 | MR. THOMPSON: |
| 11:05:54 | 24 | Q.   Mr. Rashid, do you know whether in 2011 |
| 11:05:58 | 25 | your mom or dad had an American Express card? |

37

| | | |
|---|---|---|
| 11:06:00 | 1 | A.  I am sure they did. |
| 11:06:06 | 2 | Q.  Do you know whether it was a green card, |
| 11:06:10 | 3 | black card or platinum card? |
| 11:06:16 | 4 | A.  I do not know. |
| 11:06:16 | 5 | Q.  How long were you in London during this |
| 11:06:20 | 6 | trip we have been talking about in March, April of |
| 11:06:24 | 7 | 2011? |
| 11:06:26 | 8 | A.  We were there, I think we arrived midweek. |
| 11:06:32 | 9 | We left the following week, five, six days, I think. |
| 11:06:38 | 10 | I am not sure, maybe seven, I am not sure. |
| 11:06:42 | 11 | Q.  Did you and your brother and your parents |
| 11:06:46 | 12 | sometimes go out to eat at restaurants? |
| 11:06:50 | 13 | A.  Sometimes, yes. |
| 11:06:50 | 14 | Q.  Was there any particular practice as to how |
| 11:06:54 | 15 | the bill would be handled at family dinners? |
| 11:06:58 | 16 | A.  I guess I don't understand the question. |
| 11:07:04 | 17 | Q.  Who would pay, if there was a practice? |
| 11:07:08 | 18 | A.  It all depends. |
| 11:07:10 | 19 | Q.  On what? |
| 11:07:12 | 20 | A.  It all depends on if it was an occasion, if |
| 11:07:16 | 21 | something was happening, if it was just a dinner. |
| 11:07:18 | 22 | It all depends. |
| 11:07:20 | 23 | Q.  Would your parents ever pay? |
| 11:07:24 | 24 | A.  Yes. |
| 11:07:24 | 25 | Q.  Would you brother sometimes pay? |

38

| | | |
|---|---|---|
| 11:07:28 | 1 | A.  Yes. |
| 11:07:28 | 2 | Q.  On what type of occasions would your |
| 11:07:30 | 3 | brother pay? |
| 11:07:32 | 4 | A.  It all depends.  It depends on what was |
| 11:07:32 | 5 | happening, what was going on.  There have been times |
| 11:07:36 | 6 | I have paid, there have been times when my father |
| 11:07:40 | 7 | has paid, there have been times when my brother |
| 11:07:42 | 8 | paid. |
| 11:07:44 | 9 | Q.  Has the bill ever been split or does some |
| 11:07:48 | 10 | one person always pay? |
| 11:07:50 | 11 | A.  Over the course of 48 years, I am sure |
| 11:07:54 | 12 | several practices have been adhered to.  I am not |
| 11:07:58 | 13 | really certain. |
| 11:07:58 | 14 | Q.  The reporter has marked Exhibit 38 and |
| 11:08:02 | 15 | copies have been placed in front of you, Ms. Rashid. |
| 11:08:20 | 16 | Exhibit 38 bears Bates Number Apollo 98816 to 17. |
| 11:08:28 | 17 | It looks like an e-mail string ending with an August |
| 11:08:32 | 18 | 15, 2011, 7:52 p.m. e-mail from Ms. Rashid to a |
| 11:08:38 | 19 | Kumar Khan? |
| 11:08:40 | 20 | MR. KEHOE:  Just excuse me:  The same |
| 11:08:42 | 21 | objection on the Statute of Limitation. |
| 11:08:44 | 22 | MR. THOMPSON:  So noted. |
| 11:08:46 | 23 | Q.  Ms. Rashid, if you could read through the |
| 11:08:48 | 24 | e-mail string and I'll have a couple of questions |
| 11:08:50 | 25 | for you about it. |

39

| 11:09:04 | 1 | (Witness reviewing document.) |
|---|---|---|

11:09:04  2      A.   Okay.

11:09:06  3      Q.   So who was Kumar Khan?

11:09:10  4      A.   Farah's sister.

11:09:14  5      Q.   Farah Khan's sister?

11:09:16  6      A.   Yes.

11:09:16  7      Q.   In the subject line of the e-mail at the

11:09:20  8  top of the first page, it's "Re:  Rui's birthday

11:09:26  9  dinner."  Who is Rui?

11:09:28 10      A.   Rui is also Farah's sister.

11:09:32 11      Q.   So Farah had two sisters, then?

11:09:34 12      A.   Yes.

11:09:36 13      Q.   Was this a birthday party that was being

11:09:40 14  organized?

11:09:42 15      A.   It seems so, from the subject.

11:09:44 16      Q.   Did you make the restaurant reservations?

11:09:48 17      A.   It seems so from the e-mail.

11:09:50 18      Q.   And was there, in fact, a birthday dinner

11:09:58 19  that took place at the restaurant?

11:10:00 20      A.   Again, it seems so from the e-mail, but

11:10:04 21  going back that many years, I don't specifically

11:10:08 22  recall.

11:10:08 23      Q.   Do you remember ever going to the Fig &

11:10:14 24  Olive restaurant?

11:10:16 25      A.   Over a kind of time period or --

                                                              40

11:10:18  1        Q.  Let's say -- well, let's start with on this
11:10:18  2   date?
11:10:20  3        A.  I don't -- I have been to the Fig & Olive.
11:10:24  4   I don't remember specific dates.
11:10:24  5        Q.  Is that a restaurant that you think you
11:10:26  6   went to in 2011?
11:10:28  7        A.  It could be.
11:10:30  8        Q.  Do you have a recollection of who paid the
11:10:36  9   bill for the birthday dinner?
11:10:40 10        A.  I do not.
11:10:42 11        Q.  Was there any practice with respect to who
11:10:48 12   would pay bills for birthday celebrations that you
11:10:52 13   organized?
11:10:52 14        A.  Amongst whom?
11:10:56 15        Q.  Amongst the attendees or the organizers?
11:11:00 16        A.  Well, I think I have attended several
11:11:04 17   birthday dinners, so I guess I am just trying to
11:11:06 18   clarify.  Are you referring to this specific group
11:11:08 19   or are you referring to outside the group?
11:11:10 20        Q.  Let's stick with the group that's reflected
11:11:12 21   in the addressees and the CC's in the e-mail that's
11:11:22 22   dated Tuesday, August 16?
11:11:24 23        A.  I don't recall this dinner.  Again, it
11:11:28 24   seems like there was a celebration, but I don't
11:11:32 25   recall the dinner so I don't think I would -- I know

                                                         41

11:11:34  1   I don't recall who paid or what the standard

11:11:38  2   practice was.

11:11:40  3          Q.   You can set that aside.

          4              (Plaintiff's Exhibit No. 39 was so marked

11:12:32  5              for identification as of this date.)

11:12:32  6              MR. KEHOE:   The same objection on 2011

11:12:34  7   exhibits, on Statute of Limitations.

11:12:40  8              MR. THOMPSON:   So noted.

11:12:40  9              Exhibit 39 bears Bates Numbers Apollo 94796

11:12:46 10   through 97.   It's an e-mail string from an e-mail

11:12:56 11   from Ms. Rashid to Mr. Rashid, dated December 30,

11:13:04 12   2011.

11:13:06 13       Q.   Ms. Rashid, please read through the

11:13:08 14   document and let me know when you are ready to

11:13:12 15   respond to questions.

11:13:56 16              (Witness reviewing documents.)

11:13:56 17       A.   Okay.

11:13:56 18       Q.   Did you and your family have a vacation in

11:14:02 19   Rio in December of 2011 that you recall?

11:14:08 20       A.   Me and my family?

11:14:10 21       Q.   Yes.

11:14:10 22       A.   No.

11:14:12 23       Q.   Did you?

11:14:12 24       A.   No.

11:14:12 25       Q.   You did not go to Rio in December of 2011?

                                                              42

11:14:16 1      A.  Not that I recall.

11:14:18 2      Q.  Do you know whether your brother and your

11:14:20 3  parents were there?

11:14:22 4      A.  I am just reading this e-mail and from this

11:14:28 5  e-mail it seems like I am with my parents.  So it

11:14:34 6  would seem that if I wasn't there, they wouldn't

11:14:38 7  have been there.

11:14:38 8      Q.  Do you know whether your brother was in Rio

11:15:04 9  in December of 2011?

11:15:06 10     A.  I don't recall, but from this e-mail it

11:15:10 11 seems like he is.

11:15:22 12     Q.  The top e-mail, December 30, 2011, 3:46

11:15:36 13 p.m. e-mail, there is a reference there in the first

11:15:40 14 -- in the second sentence to you:  "Mom decided that

11:15:46 15 she wanted to go immediately to Saint Regis."  Do

11:15:50 16 you recall what you were referring to there?

11:15:54 17     A.  I don't know what that is in reference to,

11:16:00 18 but knowing my mom, it seems like she wanted to go.

11:16:04 19     Q.  Where was the Saint Regis?

11:16:08 20     A.  I believe there's several Saint Regises all

11:16:12 21 over the world.

11:16:14 22     Q.  Do you know which one this was?

11:16:16 23     A.  If I had to venture a guess, just reading

11:16:20 24 this -- and, again, that's a guess, so I shouldn't

11:16:22 25 do that.  Honestly, from December 30, 2011, it would

43

| | | |
|---|---|---|
| 11:16:32 | 1 | probably be Los Angeles. |
| 11:16:36 | 2 | Q.  Was it unusual for your brother not to be |
| 11:16:38 | 3 | with your parents over the Christmas holidays? |
| 11:16:44 | 4 | A.  There have been times where we have been |
| 11:16:48 | 5 | together and there have been times where we have not |
| 11:16:52 | 6 | been together, all of us, separate of us. |
| | 7 | (Plaintiff's Exhibit No. 40 was so marked |
| | 8 | for identification as of this date.) |
| 11:17:34 | 9 | MR. THOMPSON:  Exhibit 40 is Bates Number |
| 11:17:36 | 10 | Apollo 86771 to 72.  It's another e-mail string, |
| 11:17:44 | 11 | this one ending with Ms. Rashid's e-mail dated March |
| 11:17:48 | 12 | 19, 2012, at 11:55 a.m., to Ali Rashid? |
| 11:18:00 | 13 | MR. KEHOE:  The same objection on Statute |
| 11:18:02 | 14 | of Limitations on March of 2012. |
| 11:18:06 | 15 | Q.  Mr. Rashid, please read through the e-mail |
| 11:18:08 | 16 | and let me know when you have had a chance to go |
| 11:18:12 | 17 | through it. |
| 11:18:48 | 18 | (Witness reviewing documents.) |
| 11:18:48 | 19 | A.  Okay. |
| 11:18:50 | 20 | Q.  Let's start with the e-mail at the bottom |
| 11:18:52 | 21 | of the first page, your March, 19, 2012 e-mail, to a |
| 11:19:06 | 22 | Bettina Pfeifer.  Who is Bettina Pfeifer? |
| 11:19:08 | 23 | A.  Well, I didn't sent the e-mail.  It seems |
| 11:19:10 | 24 | like Bettina sent the e-mail to me. |
| 11:19:14 | 25 | Q.  I am sorry, from her to you. |

44

| 11:19:18 | 1 | A.   I don't remember who Bettina is, but from |
| 11:19:22 | 2 | the e-mail it looks like she works at |
| 11:19:26 | 3 | Quintessentially. |
| 11:19:26 | 4 | Q.   What is Quintessentially? |
| 11:19:28 | 5 | A.   A concierge service. |
| 11:19:32 | 6 | Q.   And the e-mail indicates you're all set for |
| 11:19:38 | 7 | a party of two at Gramercy Tavern.  Do you believe |
| 11:19:46 | 8 | you made a reservation for a party of two at |
| 11:19:52 | 9 | Gramercy Tavern? |
| 11:19:52 | 10 | A.   From this e-mail, it seems so. |
| 11:19:54 | 11 | Q.   You forward the reservation information to |
| 11:20:02 | 12 | your brother in the next e-mail up, and you ask: |
| 11:20:06 | 13 | "So does this work for you?" |
| 11:20:10 | 14 | Do you see that? |
| 11:20:10 | 15 | A.   I do. |
| 11:20:12 | 16 | Q.   Then your brother responds, "Yes, for |
| 11:20:14 | 17 | sure." |
| 11:20:18 | 18 | Do you believe that you, in fact, had |
| 11:20:20 | 19 | dinner with your brother at the Gramercy on March |
| 11:20:30 | 20 | 20th, 2012? |
| 11:20:32 | 21 | A.   I don't recall. |
| 11:20:34 | 22 | Q.   I am sorry? |
| 11:20:36 | 23 | A.   I don't recall. |
| 11:20:36 | 24 | Q.   Does that date, March 20th, mean anything |
| 11:20:48 | 25 | to you?  Is that someone's birthday or any |

45

| | | |
|---|---|---|
| 11:20:50 | 1 | particular occasion? |
| 11:20:52 | 2 | A.   That date does not ring a bell, no. |
| 11:20:56 | 3 | Q.   Do you know who paid for the dinner, if you |
| 11:21:00 | 4 | did have it with Mr. Rashid? |
| 11:21:04 | 5 | A.   I don't recall the dinner. |
| 11:21:06 | 6 | Q.   Did you and your brother ever do any |
| 11:21:10 | 7 | business together, in your capacity as an employee |
| 11:21:14 | 8 | of Moleis and in Mr. Rashid's capacity as an |
| 11:21:18 | 9 | employee of Apollo? |
| 11:21:20 | 10 | A.   Apollo was one of the funds that Moleis |
| 11:21:24 | 11 | covered.  So it wasn't just my relationship, it was |
| 11:21:26 | 12 | a firm relationship. |
| 11:21:28 | 13 | Q.   Well, I am asking about you specifically. |
| 11:21:30 | 14 | Did you and your brother ever do any business |
| 11:21:34 | 15 | related to your employers? |
| 11:21:36 | 16 | A.   We pitched Apollo several ideas over the |
| 11:21:40 | 17 | years and we covered their portfolio companies, yes. |
| 11:21:44 | 18 | Q.   When you say "we," who are you referring |
| 11:21:46 | 19 | to? |
| 11:21:46 | 20 | A.   I was not a managing director.  Managing |
| 11:21:52 | 21 | directors would take the ideas forward and they |
| 11:21:56 | 22 | would bring along teams of people that worked on |
| 11:21:58 | 23 | deals. |
| 11:21:58 | 24 | Q.   So it seems you're saying that Moleis |
| 11:22:02 | 25 | pitched business to Apollo, but I am asking |

46

| | | |
|---|---|---|
| 11:22:04 | 1 | specifically about you and your brother.  Did you |
| 11:22:08 | 2 | ever do any business together? |
| 11:22:08 | 3 | A.  I worked on deals where Ali's portfolio |
| 11:22:12 | 4 | companies were involved, yes. |
| 11:22:14 | 5 | Q.  What deals were those? |
| 11:22:16 | 6 | A.  When Metals USA went public. |
| 11:22:20 | 7 | Q.  When was that? |
| 11:22:20 | 8 | A.  March -- no.  Sometime in 2010, I don't |
| 11:22:28 | 9 | remember the exact date. |
| 11:22:30 | 10 | Q.  Any other business with your brother? |
| 11:22:34 | 11 | A.  We pitched them several times on several |
| 11:22:38 | 12 | ideas.  I worked with Apollo on numerous |
| 11:22:42 | 13 | transactions.  There was one specific transaction |
| 11:22:44 | 14 | where I was conflicted out because Apollo was on the |
| 11:22:48 | 15 | other side. |
| 11:22:48 | 16 | Q.  But, again, I am asking specifically about |
| 11:22:50 | 17 | business that you and your brother did.  Let's leave |
| 11:22:56 | 18 | the Metals 2010 going public to one side.  Any other |
| 11:23:00 | 19 | business that you recall with your brother? |
| 11:23:02 | 20 | A.  We pitched them several ideas. |
| 11:23:06 | 21 | Q.  When you say "we pitched them."  Who is the |
| 11:23:08 | 22 | "we" and who is the "them"? |
| 11:23:10 | 23 | A.  Moleis, including me on the deal team, |
| 11:23:12 | 24 | would pitch Apollo, including Ali and his team, on |
| 11:23:20 | 25 | an idea. |

47

11:23:20  1      Q.  Do you have any reason to believe that the

11:23:20  2   dinner at Gramercy, if in fact it occurred, was a

11:23:26  3   business dinner?

11:23:28  4      A.  It could have been.

11:23:28  5          MR. KEHOE:  I object.  It's speculation.

11:23:30  6          You can answer, if you can.

11:23:32  7      A.  It could have been, I don't know.

11:23:34  8      Q.  You don't know?

11:23:34  9      A.  I don't know.

11:23:34 10      Q.  Did you ever expense to Moleis any dinners

11:23:44 11   or meals that you had with your brother?

11:23:48 12      A.  Over what time period?

11:23:52 13      Q.  Let's say, January 2010 through September

11:23:56 14   of 2013?

11:24:00 15      A.  I don't recall.

11:24:02 16      Q.  You don't recall one way or the other or

11:24:06 17   you don't think you did?

11:24:06 18      A.  I don't recall one way or the other.  It

11:24:08 19   was a long time ago.

11:24:18 20      Q.  Did you pay a fee to use Quintessentially?

11:24:24 21      A.  Me, personally?

11:24:26 22      Q.  Yes.

11:24:26 23      A.  Yes.

11:24:28 24      Q.  What was the fee?

11:24:30 25      A.  It was many years ago.  I don't remember.

                                                              48

```
11:24:40   1   I haven't been a member of Quintessentially for
11:24:46   2   several years now.
11:24:48   3       Q.  Did you have access to Quintessentially
11:24:52   4   through Moleis?
11:24:52   5       A.  No.
11:24:54   6       Q.  It was your personal?
11:24:58   7       A.  Yes.
11:25:00   8       Q.  And would you use your Quintessentially
11:25:02   9   access to make reservations for meals with your
11:25:06  10   brother?
11:25:08  11       A.  I have or rather I did.
          12           (Plaintiff's Exhibit No. 41 was so marked
          13           for identification as of this date.)
11:25:50  14           MR. THOMPSON:  Exhibit 41 is Bates Number
11:25:52  15   Apollo 87078 through 79.  The last e-mail in the
11:26:00  16   string is from Ali Rashid to Erem Rashid, dated
11:26:04  17   March 29, 2012, at 5:57 p.m.?
11:26:10  18           MR. KEHOE:  The same objection on the
11:26:10  19   Statute of Limitations.  You can continue.
11:26:14  20       Q.  Let me know when you have had a chance to
11:26:16  21   read through the exhibit, Ms. Rashid?
11:26:18  22           (Witness reviewing documents.)
11:26:18  23       A.  Okay.
11:27:32  24       Q.  Do you see Mr. Rashid's e-mail to Christina
11:27:42  25   Ackerman?
```

49

| | | |
|---|---|---|
| 11:27:44 | 1 | MR. KEHOE:  Crista. |
| 11:27:46 | 2 | Q.  Do you know who Crista Ackerman was? |
| 11:27:48 | 3 | A.  I do not, but from the e-mail it seems like |
| 11:27:52 | 4 | she works at the restaurant. |
| 11:27:54 | 5 | Q.  Okay.  And in the third sentence of his |
| 11:28:02 | 6 | e-mail, Mr. Rashid states, "Farah, my sister and I |
| 11:28:06 | 7 | were hoping to bring them to ABC for dinner tomorrow |
| 11:28:12 | 8 | night.  I told them I wanted to take them to my |
| 11:28:18 | 9 | favorite restaurant in NY." |
| 11:28:20 | 10 | In the preceding sentence he indicates: |
| 11:28:22 | 11 | "So my parents decided to make a last-minute trip to |
| 11:28:26 | 12 | NY from LA, their first trip in three years."  Do |
| 11:28:30 | 13 | you see that? |
| 11:28:32 | 14 | A.  Yes, I do. |
| 11:28:34 | 15 | Q.  Did you and your parents, along with your |
| 11:28:42 | 16 | brother, in fact, have a dinner at the ABC |
| 11:28:50 | 17 | restaurant on or about March 30, 2012? |
| 11:28:58 | 18 | A.  Honestly, I don't recall. |
| 11:29:04 | 19 | Q.  Did your brother ever do any business with |
| 11:29:06 | 20 | his parents related to Apollo? |
| 11:29:12 | 21 | A.  I am sorry, I was coughing.  Could you |
| 11:29:18 | 22 | repeat that question? |
| 11:29:18 | 23 | Q.  Did your brother ever do any business with |
| 11:29:20 | 24 | your parents regarding Apollo? |
| 11:29:22 | 25 | A.  Not that I know of. |

50

11:29:22   1        Q.   Would all of your brother's dinners with
11:29:26   2   your parents have been personal dinners as opposed
11:29:30   3   to business dinners?
11:29:30   4        A.   I don't know.  You would have to ask Ali.
11:29:32   5        Q.   Were you ever at a dinner with your brother
11:29:38   6   and your parents that was a business dinner?
11:29:38   7        A.   Not that I recall -- well, actually, let me
11:29:44   8   think about that for a minute.  I would like to
11:29:48   9   think about that one.
11:29:52  10        Q.   Let me amend the question by saying a
11:29:54  11   business dinner related to Apollo?
11:29:56  12        A.   So are you referring to just the four of us
11:29:58  13   or are you referring to extended groups.
11:30:02  14        Q.   Let's take first just the four of you?
11:30:06  15        A.   From the four of us perspective, you know
11:30:14  16   -- and this is during this time period?
11:30:16  17        Q.   Let's say January 2010 to September 2013?
11:30:26  18        A.   If it's just the four of us, I would assume
11:30:30  19   it would be a family dinner.
11:30:34  20        Q.   Okay.  You also mentioned the four of you
11:30:36  21   in a more extended group.  Do you recall such
11:30:40  22   occasions?
11:30:42  23        A.   Yes, I do.
11:30:42  24        Q.   And do you recall such occasions that were
11:30:46  25   related to Apollo-related business?

51

11:30:50  1        A.  I do.

11:30:50  2        Q.  What are you recalling?

11:30:54  3        A.  I am recalling dinners where a portfolio

11:31:00  4  company CEO was present and his family was present

11:31:04  5  at the dinner.

11:31:06  6        Q.  Was that Mr. Lourenco Gonsalves?

11:31:10  7        A.  That is.

11:31:12  8        Q.  What was the portfolio company?

11:31:14  9        A.  Metals USA.

11:31:16  10       Q.  Would that have been around Thanksgiving of

11:31:18  11 2012?

11:31:20  12       A.  Probably.  I don't recall the exact

11:31:22  13 timeframe.

11:31:24  14       Q.  Do you recall it being over a holiday?

11:31:26  15       A.  I do.

11:31:26  16       Q.  Do you recall whether it was, in fact, a

11:31:28  17 Thanksgiving?

11:31:32  18       A.  I believe it was.

11:31:38  19       Q.  Were you and your parents staying at the

11:31:42  20 Saint Regis in Bar Harbour at the time?

11:31:46  21       A.  I believe so, but not 100 percent

11:31:50  22 definitive.

11:31:50  23       Q.  Do you have any recollection of whether you

11:31:54  24 stayed in adjoining rooms or rooms on different

11:31:58  25 floors?

                                                              52

11:31:58  1          A.   Honestly, I don't remember.

11:32:08  2          Q.   Do you know who paid for your parent's

11:32:10  3   hotel lodging?

11:32:14  4          A.   I believe my parents would have paid for

11:32:16  5   their hotel lodging, but I don't know.  I didn't

11:32:20  6   sign for the bill.

11:32:20  7          Q.   Tell me what you recall about a business

11:32:26  8   meeting with Mr. Lourenco Gonsalves?

11:32:30  9          A.   Business meeting?

11:32:32 10          Q.   Well, whatever meeting you were referring

11:32:34 11   to a couple of moments ago.

11:32:36 12          A.   We had dinner.  We had dinner.  Our family,

11:32:38 13   his family, and Ali was there discussing work with

11:32:42 14   Lourenco, but Ali and Lourenco were very close.

11:32:46 15   They had known each other for years.  Lourenco also

11:32:50 16   knew me because we had covered, as I mentioned

11:32:54 17   earlier, we had worked with Apollo's portfolio

11:32:58 18   companies, Metals USA being one of them, so I had

11:33:02 19   known Lourenco also in a professional capacity.

11:33:06 20               I remember that there were several times

11:33:08 21   that Ali and Lourenco were next to each other

11:33:12 22   discussing work.  I was sitting across, so I don't

11:33:16 23   know the discussion.

11:33:18 24          Q.   Where was the dinner?

11:33:20 25          A.   That specific dinner was at a Brazilian

53

| | | |
|---|---|---|
| 11:33:24 | 1 | steak house. |
| 11:33:24 | 2 | Q.  Do you remember the name? |
| 11:33:24 | 3 | A.  I don't. |
| 11:33:26 | 4 | Q.  How do you know that your brother and Mr. |
| 11:33:30 | 5 | Gonsalves were discussing business if you were |
| 11:33:32 | 6 | sitting across from them? |
| 11:33:34 | 7 | A.  That's Lourenco.  Lourenco always discussed |
| 11:33:38 | 8 | business wherever he was.  He lived and breathed |
| 11:33:40 | 9 | business. |
| 11:33:44 | 10 | Q.  Okay.  How long were you and your family in |
| 11:33:48 | 11 | Bar Harbour on that trip?  Was it the entire |
| 11:33:52 | 12 | Thanksgiving weekend? |
| 11:33:54 | 13 | A.  I believe so. |
| 11:33:54 | 14 | Q.  Was it three or four days? |
| 11:33:58 | 15 | A.  I believe so. |
| 11:34:00 | 16 | Q.  Did you have any contact with Mr. Gonsalves |
| 11:34:04 | 17 | other than the dinner? |
| 11:34:04 | 18 | A.  We did. |
| 11:34:06 | 19 | Q.  What other contact did you have? |
| 11:34:08 | 20 | A.  He was building a house.  So he invited us |
| 11:34:12 | 21 | to visit the house that was being built.  He also |
| 11:34:16 | 22 | had a boat and took his family and our family on the |
| 11:34:20 | 23 | boat. |
| 11:34:20 | 24 | Q.  Any other contacts? |
| 11:34:22 | 25 | A.  I am sorry.  I don't know what that means. |

54

11:34:26   1          Q.   Did you and your family have any other

11:34:28   2    contacts with Mr. Gonsalves during that Thanksgiving

11:34:32   3    weekend?

11:34:32   4          A.   I believe those are the two occasions.

11:34:38   5          Q.   Were the expenses that you incurred during

11:34:42   6    that vacation, did you bill any of those expenses to

11:34:46   7    Moleis?

11:34:48   8          A.   No.

11:34:48   9          Q.   Why not?

11:34:50  10          A.   I don't believe I incurred any expenses on

11:34:54  11    this trip, in the sense of I paid for my own flight

11:34:58  12    and that was me.  If we were at dinner and it was

11:35:04  13    with Ali and Lourenco, then I was not a part of that

11:35:08  14    and I don't know actually who picked up the tab.  If

11:35:12  15    I were to take my parents out to lunch, I am sure I

11:35:16  16    would have taken care of it or my dad would have

11:35:18  17    taken care of it.  I don't specifically remember

11:35:22  18    what that was, I would have to go back into that

11:35:24  19    trip and see.

11:35:26  20          Q.   Just break it down a little bit.  You paid

11:35:28  21    your own airfare and hotel expense; am I

11:35:34  22    understanding you correctly?

11:35:34  23          A.   Honestly, I know I would have paid my own

11:35:38  24    airfare.  I don't recall the rest of it, to be

11:35:42  25    honest with you.

55

11:35:42  1        Q.  Okay, but are you certain that you didn't
11:35:44  2   bill any of the expense to Moleis?
11:35:46  3        A.  I would have to see it to verify.  I don't
11:35:50  4   recall.
11:35:50  5        Q.  You don't recall one way or the other or
11:35:54  6   you don't think you did?
11:35:54  7        A.  In all honesty, you're asking me about a
11:35:58  8   trip from 2012.  Today we sit in 2018, that's
11:36:02  9   exactly how many years -- 2012 and '18, six years.
11:36:06 10   I would have to actually go back in and take a look.
11:36:10 11   I don't recall.
11:36:10 12        I know that I was working on that trip.
11:36:12 13   There were several conference calls I took on that
11:36:16 14   trip.  I worked on every trip I was on, so I really
11:36:22 15   don't recall.
11:36:38 16        Q.  Have you ever billed any expenses,
11:36:40 17   associated with a trip with your parents, to Moleis?
         18        A.  A trip with my parents to Moleis?
11:36:58 19        Q.  Have you ever billed any of the expenses
11:36:58 20   associated with a trip with your parents to your
11:37:04 21   employer?
11:37:04 22        A.  I don't recall.  I mean I worked there a
11:37:08 23   long time ago and I worked there over a five-year
11:37:10 24   period.
11:37:26 25        Q.  Do you think that would have been

                                                          56

11:37:28  1   appropriate?

11:37:30  2         MR. KEHOE:  Object to the form.  You can

          3   answer.

11:37:30  4       A.  What is the question?

11:37:32  5       Q.  Do you think it would have been appropriate

11:37:34  6   to bill Moleis for expenses that you incurred while

11:37:40  7   on a family vacation with your parents?

11:37:44  8       A.  To be quite honest, if it was a personal

11:37:46  9   trip, it's a personal trip.  If it was a personal

11:37:50 10   trip that turned into -- and as an investment banker

11:37:52 11   I can tell you, I can count on how many hands that I

11:37:56 12   have worked 36 hours straight, 26 hours straight, 24

11:37:58 13   hours straight.  So if I was on a trip and work

11:38:02 14   called, I was working.

11:38:04 15         So if I stayed in by myself and if I

11:38:08 16   decided to charge a dinner because I was working and

11:38:10 17   I was working on a deal, a pitch, whatever it was,

11:38:14 18   that was for me and that was allowable by my

11:38:18 19   company's expense policy, but if I was on a trip and

11:38:20 20   it was personal, then it's mine.

11:38:36 21       Q.  Did you have contacts with other Metals'

11:38:40 22   executives during the trip to Bar Harbour in 2012,

11:38:46 23   other executives other than Mr. Gonsalves?

11:38:48 24       A.  No.

11:38:48 25       Q.  What was your company's expense policy?

                                                        57

| | | |
|---|---|---|
| 11:38:50 | 1 | MR. KEHOE:  Object to the form; of "what." |
| 11:38:54 | 2 | Q.  You can answer.  You referred to your |
| 11:38:58 | 3 | company's expense policy a moment ago; what were you |
| 11:39:00 | 4 | referring to? |
| 11:39:04 | 5 | MR. KEHOE:  I just have a question, I'm not |
| 11:39:08 | 6 | trying to get in your way, but an expense policy on |
| 11:39:08 | 7 | what? |
| | 8 | MR. THOMPSON:  No, I'm just asking -- |
| 11:39:10 | 9 | Q.  You referred a moment ago to your company's |
| 11:39:12 | 10 | expense policy. |
| | 11 | A.  Could you read back, could you read back on |
| | 12 | the record what I just said? |
| 11:39:14 | 13 | THE WITNESS:  Could you read back on the |
| 11:39:16 | 14 | record what I just said? |
| 11:40:36 | 15 | MR. THOMPSON:  Could you read back the |
| | 16 | answer where she referred to the company's expense |
| | 17 | policy. |
| | 18 | (Record read by the Reporter.) |
| 11:40:36 | 19 | Q.  So the question is:  What were you |
| 11:40:36 | 20 | referring to when you said your company's expense |
| 11:40:40 | 21 | policy? |
| 11:40:42 | 22 | A.  I am just simply referring to the fact that |
| 11:40:46 | 23 | if I did charge an expense and that expense was |
| 11:40:50 | 24 | something related to work and there were, you know, |
| 11:40:52 | 25 | specific amounts that you could charge up to for |

58

11:40:56  1   work, then that was allowable.

11:41:04  2           MR. THOMPSON:  Mark our next exhibit 42.

          3           (Plaintiff's Exhibit No. 42 was so marked

11:41:22  4           for identification as of this date.)

11:41:24  5           MR. KEHOE:  The same objection on time, on

11:41:26  6   the Statute of Limitations.

11:41:36  7       Q.  Do you know if your brother ever charged

11:41:38  8   personal expenses to Apollo or its clients?

11:41:46  9       A.  You would have to ask him.

11:41:48 10       Q.  Your answer is you don't know?

11:41:50 11       A.  I don't know.

11:42:00 12           MR. THOMPSON:  Exhibit 42 is a single-page

11:42:02 13   document, Bates Number Apollo 86096.  It's an e-mail

11:42:12 14   string or an e-mail dated May 30, 2012, from Mr. Ali

11:42:28 15   Rashid to Mr. Ali Rashid.

11:42:58 16       A.  Okay.

11:43:00 17       Q.  The first e-mail is a 4:04 p.m. e-mail from

11:43:18 18   Quintessentially to you, Ms. Rashid; is that

11:43:20 19   correct?

11:43:20 20       A.  It seems so.

11:43:20 21       Q.  There is a reference to your table for four

11:43:22 22   at the Gramercy Tavern; do you see that?

11:43:28 23       A.  I do.

11:43:28 24       Q.  Then you forwarded that e-mail to your

11:43:30 25   brother; correct?

                                                              59

11:43:30   1          A.   It seems that way.

11:43:32   2          Q.   Do you know whether you, in fact, had

11:43:36   3   dinner at the Gramercy Tavern with your brother that

11:43:46   4   Saturday, which would have been -- I am not sure if

11:43:48   5   there are 31 days in March or 30, but either March

11:43:50   6   31st or April 1st?

11:43:52   7          MR. KEHOE:   There are 31 days in March.

11:43:56   8          Q.   So it would have been March 31?

11:43:58   9          A.   I don't recall.

11:44:00   10         Q.   Do you recall -- it indicates that there is

11:44:04   11  a table for four reserved.  Do you have any

11:44:08   12  recollection of who the other two people would have

11:44:12   13  been?

11:44:12   14         A.   I don't recall.

11:44:12   15         Q.   Do you have any recollection of the purpose

11:44:14   16  of the dinner?

11:44:18   17         A.   From 2012, no, I don't recall.

11:44:22   18         Q.   Do you have any recollection whether any

11:44:24   19  business was conducted at that dinner?

11:44:30   20         A.   I honestly don't recall.

           21             (Plaintiff's Exhibit No. 43 was so marked

           22             for identification as of this date.)

11:45:22   23         MR. THOMPSON:   Exhibit 43 is a one-page

11:45:22   24  document, Bates numbered Apollo 4502.  It appears to

11:45:30   25  be an e-mail from Bliss Spa to an S. Dunayer, D U N

                                                                    60

| | | |
|---|---|---|
| 11:45:40 | 1 | A Y E R, at Apollo? |
| 11:45:50 | 2 | Q.  Let me know when you have had a chance to |
| 11:45:56 | 3 | look at the document, Ms. Rashid? |
| 11:45:58 | 4 | (Witness reviewing document.) |
| 11:45:58 | 5 | A.  Okay. |
| 11:46:02 | 6 | Q.  Was Bliss Spa a business that you used in |
| 11:46:10 | 7 | 2011? |
| 11:46:10 | 8 | A.  Yes. |
| 11:46:12 | 9 | Q.  What did you use Bliss Spa for? |
| 11:46:14 | 10 | A.  Manicures, pedicures, facials, waxing. |
| 11:46:26 | 11 | Q.  The exhibit reflects, appears to reflect a |
| 11:46:28 | 12 | receipt for services and products in your name.  Do |
| 11:46:32 | 13 | you see that? |
| 11:46:32 | 14 | A.  I do. |
| 11:46:34 | 15 | Q.  It includes a gift card.  Do you see that? |
| 11:46:40 | 16 | A.  I do. |
| 11:46:42 | 17 | Q.  Do you have any recollection of what the |
| 11:46:44 | 18 | gift card was for? |
| 11:46:46 | 19 | A.  I don't. |
| 11:46:50 | 20 | Q.  Then there is a reference to "paid by," and |
| 11:46:52 | 21 | there is an Amex card number; do you see that? |
| 11:46:56 | 22 | A.  I do. |
| 11:46:56 | 23 | Q.  Do you know what Amex card that was? |
| 11:47:00 | 24 | A.  I don't. |
| 11:47:00 | 25 | Q.  Were you authorized to use your brother's |

61

```
11:47:04   1   Apollo supplied American Express card?
11:47:06   2        A.  No.
11:47:06   3        Q.  Did you ever use it?
11:47:06   4        A.  No.
11:47:08   5        Q.  Never?
11:47:08   6        A.  No.
11:47:08   7        Q.  Do you know why this receipt was being
11:47:12   8   forwarded from Bliss to someone at Apollo?
11:47:18   9        A.  No.
11:47:18  10        Q.  Have you ever seen this document before?
11:47:20  11        A.  Yes.
11:47:20  12        Q.  In what context?
11:47:24  13             MR. KEHOE:  Well, I can tell you that it
11:47:26  14   had to do with conversations with counsel.
11:47:28  15             I will instruct her not answer.
11:47:30  16        Q.  Other than conversations that you may have
11:47:32  17   had with counsel in preparation for your deposition,
11:47:36  18   have you ever seen this document before?
11:47:38  19        A.  No.
11:47:38  20        Q.  Did you have any discussions with your --
11:47:40  21   well, strike that.
11:47:42  22             Did your brother ever ask you to purchase
11:47:46  23   items from Bliss Spa for him?
11:47:48  24        A.  He has asked me to make an appointment,
11:47:54  25   yes.
```

62

| | | |
|---|---|---|
| 11:47:54 | 1 | Q.  Has he ever asked you to purchase gift |
| 11:48:00 | 2 | cards for him? |
| 11:48:00 | 3 | A.  Over the years I have purchased gift cards. |
| 11:48:10 | 4 | I don't specifically recall. |
| 11:48:12 | 5 | Q.  Do you know why this receipt was being |
| 11:48:14 | 6 | forwarded to someone at Apollo? |
| 11:48:16 | 7 | A.  I don't. |
| 11:48:20 | 8 | Q.  Do you recall any discussion with your |
| 11:48:20 | 9 | brother about forwarding this receipt to Apollo? |
| 11:48:26 | 10 | A.  I don't. |
| 11:48:28 | 11 | Q.  Do you know whether you were ever |
| 11:48:30 | 12 | reimbursed by Apollo for charges at Bliss Spa that |
| 11:48:34 | 13 | you incurred on your credit card? |
| 11:48:38 | 14 | A.  I don't understand the question. |
| 11:48:42 | 15 | Q.  If you incurred charges at Bliss Spa, do |
| 11:48:46 | 16 | you know whether Apollo ever reimbursed those |
| 11:48:50 | 17 | charges? |
| 11:48:52 | 18 | A.  I would not think so. |
| 11:49:04 | 19 | Q.  So the record is clear, do you have any |
| 11:49:06 | 20 | recollection of your brother asking you to purchase |
| 11:49:10 | 21 | a gift card for him in September of 2010? |
| 11:49:18 | 22 | A.  More than eight years ago, I don't recall. |
| 11:49:22 | 23 | MR. KEHOE:  The same objection on this with |
| 11:49:24 | 24 | regard to the Statute of Limitations, just for the |
| 11:49:52 | 25 | record. |

63

```
11:49:52   1        Q.  Have you ever spoken to your brother about
11:49:56   2   his submitting Bliss receipts to Apollo, relating to
11:50:00   3   services that you received?
11:50:00   4        A.  That I received?
11:50:02   5        Q.  Yes.
11:50:02   6        A.  No.
11:50:34   7             MR. THOMPSON:  44.
           8             (Plaintiff's Exhibit No. 44 was so marked
           9             for identification as of this date.)
11:50:58  10             MR. THOMPSON:  So Exhibit 44 is a
11:51:00  11   single-page document, Bates Numbered Apollo 88855.
11:51:06  12   It's an e-mail string ending in an e-mail from Mr.
11:51:10  13   Rashid to Ms. Rashid, dated September 24, 2012, at
11:51:20  14   3:17 p.m.
11:51:24  15             MR. KEHOE:  The same Statute of Limitations
11:51:30  16   objection.
11:51:48  17             (Witness reviewing document.)
11:51:48  18        A.  Okay.
11:51:50  19        Q.  So I believe you indicated a few moments
11:51:56  20   ago that you did sometimes make reservations for
11:52:00  21   your brother at Bliss Spa; is that correct?
11:52:00  22        A.  That's correct.
11:52:02  23        Q.  Why did you make reservations for him?
11:52:04  24        A.  I was a VIP client at Bliss.  So I had my
11:52:08  25   own direct number and I had specific technicians.
```

                                                              64

11:52:14   1        Q.   Do you know -- well, this refers to a
11:52:18   2   facial.  Do you know what other types of services
11:52:24   3   your brother received at Bliss?
11:52:28   4        A.   Over the years, facials, maybe a massage.
11:52:34   5   Otherwise, I am not sure.
11:52:36   6        Q.   Did you ever purchase apparel for your
11:52:44   7   father at the Zegna store?
11:52:46   8        A.   You mean Zegna.
11:52:48   9        Q.   Is that how it's pronounced?
11:52:50  10        A.   It is.
11:52:54  11        Q.   Zegna.  Z E G N A though; correct?
11:52:58  12        A.   Italian, yes.
11:53:00  13        Q.   Well, thank you.
11:53:02  14             So did you ever purchase apparel for your
11:53:06  15   father at Zegna?
11:53:08  16        A.   I had bought him gifts.
11:53:10  17        Q.   Do you know whether your brother did as
11:53:14  18   well?
11:53:14  19        A.   Both my brother and I, we bought maybe like
11:53:22  20   a belt or a tie as gifts for my father.
11:53:28  21        Q.   On what particular occasions?
11:53:30  22        A.   Usually for a birthday.
11:53:34  23        Q.   Your father's birthday is May 11th; is that
11:53:36  24   correct?
11:53:36  25        A.   Yes, that's correct.

                                                        65

11:53:38  1      Q.  Do you know if your brother purchased a

11:53:40  2  suit for your father in April of 2012?

11:53:42  3      A.  I do not know of such instance and knowing

11:53:48  4  my father, he would not allow that.

11:53:52  5      Q.  How do you know whether your father would

11:53:54  6  know -- well --

11:53:56  7      A.  Knowing my father, I do know my father, so

11:54:00  8  knowing my father, I know he would not allow that.

11:54:04  9      Q.  Are you saying that your father would not

11:54:06 10  accept a gift of a suit from your brother?

11:54:08 11      A.  Or me.  That is correct.

11:54:10 12      Q.  Did you have an account at Zegna?

11:54:12 13      A.  Me, personally?

11:54:14 14      Q.  Yes.

11:54:14 15      A.  There was a specific associate we worked

11:54:18 16  with.  I don't know if you can ever have an account.

11:54:20 17  There is no charge account.

11:54:24 18      Q.  Who was the specific associate that you

11:54:26 19  worked with?

11:54:26 20      A.  A gentlemen by the name of Joel.

11:54:28 21      Q.  Joel?

11:54:28 22      A.  Yes.

11:54:28 23      Q.  Do you know Joel's last name?

11:54:36 24      A.  I do not.

11:54:36 25      Q.  Do you know if he is still there?

                                                              66

11:54:38   1        A.   I do not.

11:54:40   2        Q.   Was Joel the specific person that your

11:54:46   3   brother worked with as well?

11:54:46   4        A.   I believe he was someone the family worked

11:54:48   5   with.

11:54:48   6        Q.   Where does your brother reside right now?

11:55:04   7        A.   He splits his time in several cities.  I

11:55:06   8   mean, I don't know the answer to that.  I don't

11:55:08   9   understand the question.

11:55:10  10        Q.   Where does your brother have residences?

11:55:12  11        A.   He has residences in New York and, I

11:55:20  12   believe, in Florida.

11:55:24  13        Q.   Do you know your brother's address in New

11:55:28  14   York?

11:55:28  15        A.   I do.

11:55:28  16        Q.   What is it?

11:55:30  17        A.   404 Park Avenue South.

11:55:36  18        Q.   And in Florida?

11:55:38  19        A.   I do not know.

11:55:38  20        Q.   How long has your brother had a residence

11:55:42  21   in New York?

11:55:42  22        A.   A few years.

11:55:48  23        Q.   How about the residence in Florida?

11:55:50  24        A.   I don't know.

11:55:50  25        Q.   Other than the residences in New York and

                                                              67

```
11:55:56   1    Florida, do you know if your brother has other
11:56:00   2    residences?
11:56:00   3         A.  I do not know.
11:56:06   4         Q.  Going back to Zegna, here is a hard
11:56:12   5    question for you:  How do you pronounce the first
11:56:16   6    name?
11:56:16   7         A.  Ermenegildo.
11:56:20   8         Q.  I will never get that.
11:56:20   9         A.  Give me a minute because I am heavily
11:56:22  10    medicated.  E M E R G I L D O, Ermenegildo.
11:56:30  11         Q.  Thank you for that.
11:56:34  12             Just since you mentioned you are medicated,
11:56:34  13    I need to ask, are your medications --
11:56:40  14         A.  -- mind altering, no.
11:56:46  15         Q.  They are not affecting your memory or the
11:56:48  16    way you are testifying?
11:56:48  17         A.  I am on Mucinex and Advil.
11:56:54  18         Q.  Well, we'll get you out of here soon.
11:56:54  19             Is your brother currently employed?
11:56:56  20         A.  No, he is self-employed.
11:56:58  21         Q.  Is he consulting then?
11:57:00  22         A.  Yes.
11:57:00  23         Q.  Do you know what type of clientele he has?
11:57:04  24         A.  I do not know.
11:57:06  25         Q.  Do you know what's the nature of -- what
```

68

| 11:57:06 | 1 | field he is consulting it? |
| 11:57:08 | 2 | A.   He is, I think, working in hospitality and |
| 11:57:16 | 3 | just across the board.  I think he is agnostic, I am |
| 11:57:22 | 4 | not sure. |
| 11:57:22 | 5 | Q.   You indicated that your brother splits his |
| 11:57:24 | 6 | time between Florida and New York; do you know how |
| 11:57:34 | 7 | much time he spends in each place? |
| 11:57:38 | 8 | A.   No, I don't. |
| 11:57:40 | 9 | Q.   Is your brother still married to Farah |
| 11:57:50 | 10 | Khan? |
| 11:57:50 | 11 | A.   He is not. |
| 11:57:50 | 12 | Q.   Do you know whether your brother tried to |
| 11:58:06 | 13 | get jobs with other private-equity firms after he |
| 11:58:10 | 14 | left Apollo? |
| 11:58:10 | 15 | A.   I'm sure he interviewed. |
| 11:58:16 | 16 | Q.   Do you know whether he received any offers? |
| 11:58:18 | 17 | A.   I don't. |
| 11:58:20 | 18 | Q.   Did you discuss that with your brother at |
| 11:58:22 | 19 | all? |
| 11:58:22 | 20 | MR. KEHOE:   I am going to object to the |
| 11:58:24 | 21 | relevance.  What is the relevance of all of that. |
| 11:58:28 | 22 | You can answer. |
| 11:58:32 | 23 | A.   I am sorry, could you restate the question? |
| 11:58:36 | 24 | Q.   Did you discuss your brother's efforts to |
| 11:58:38 | 25 | secure employment with him, after he left Apollo? |

69

```
11:58:44  1        A.  We talked about what he wanted to do, but I
11:58:48  2   don't know the specifics of what he was going after.
11:58:52  3        Q.  Do you know what your brother told
11:58:54  4   perspective employers about why he left Apollo?
11:58:56  5        A.  I do not.
11:58:58  6        Q.  It's not a subject you discussed with him?
11:59:00  7        A.  No.
11:59:02  8        Q.  Did you try to help your brother in his job
11:59:04  9   search at all?
11:59:06 10        A.  I had left financial services, so, no.
11:59:14 11        Q.  You had left financial services by --
11:59:16 12        A.  Moleis.  I changed industries.
11:59:24 13        Q.  Do you recall there being any publicity
11:59:30 14   regarding Mr. -- your brother's departure from
11:59:32 15   Apollo?
11:59:34 16        A.  Yes.
11:59:34 17        Q.  Did you discuss that with your brother?
11:59:36 18        A.  This was after he had left Apollo, yes.
11:59:44 19   Yes, I did.
11:59:44 20        Q.  What do you recall discussing?
11:59:46 21        A.  The negative publicity.  You know, the
11:59:52 22   phone calls that my parents were getting.
11:59:56 23        Q.  What phone calls were your parents getting?
11:59:58 24        A.  People just randomly just calling the
12:00:02 25   house.
```

70

12:00:02  1      Q.  People they knew?

12:00:04  2      A.  No.  And my mother was not well, so it was

12:00:08  3  nothing that both of us appreciated.

12:00:12  4      Q.  Did your brother ever discuss with you,

12:00:14  5  whether the publicity affected his ability to secure

12:00:18  6  employment?

12:00:20  7      A.  I think that would affect anybody's ability

12:00:28  8  to get employment.  Such negative publicity, random

12:00:32  9  people calling my parents and reporters harassing

12:00:34 10  them, you know, harassing all of us, it was all over

12:00:40 11  the news.  You know, today, with the news cycle,

12:00:44 12  it's not just the New York Post, it's a global

12:00:48 13  event.

12:00:48 14          So it was sad, and yes, I am sure that,

12:00:52 15  from my family's devastation and the fact that just

12:00:56 16  seeing what my mother was going through, yes.  I

12:01:02 17  think it would hurt anybody's chances to get gainful

12:01:04 18  employment going forward.

12:01:06 19      Q.  Do you know whether your brother is still

12:01:08 20  attempting to secure employment in the investment

12:01:14 21  advisory field?

12:01:16 22      A.  I don't know if he is in active dialog

12:01:22 23  today or not, but I think his chances have been

12:01:26 24  severely hindered thanks to a wonderful thing called

12:01:30 25  Google, and anybody can look up anything.

71

12:01:32  1        Q.  Has your brother talked to you about what
12:01:38  2   he would like to do career wise?
12:01:42  3             MR. KEHOE:  Again, objection to the ongoing
12:01:44  4   questions, regarding the relevance of this for this
12:01:46  5   proceeding.  This is well beyond the terms of the
12:01:48  6   complaint that we have.
12:01:50  7             You can answer this question, but I will
12:01:52  8   say this, counsel, that unless you can tell me how
12:01:58  9   this pertains here, I am going to instruct the
12:02:00 10   witness not to answer much further on this.
12:02:04 11             MR. THOMPSON:  Objection is noted.
12:02:04 12             MR. KEHOE:  I am not finished yet.  This
12:02:06 13   has got nothing to do with the four corners of the
12:02:08 14   complaint that you filed.
12:02:10 15             MR. THOMPSON:  I do disagree.  I have a
12:02:16 16   couple of more questions.  I don't think you have a
         17   basis to instruct the witness here.
12:02:18 18             MR. KEHOE:  If it's well beyond the bounds
12:02:20 19   of the four corners of any complaint, and is not
12:02:24 20   going to lead under Rule 26 to admissible evidence,
12:02:28 21   then on that score, if this goes much further, I am
12:02:32 22   going to instruct the witness not to answer, period
12:02:36 23   and we can take it up with the Judge and you can
12:02:38 24   explain to the Judge why, based on your complaint,
12:02:40 25   questions about what my client is doing in November

                                                              72

| | | |
|---|---|---|
| 12:02:42 | 1 | of 2018 have any bearing on these proceedings. |
| 12:02:46 | 2 | So why don't you continue with your |
| 12:02:48 | 3 | questions and we will see where we go. |
| 12:02:50 | 4 | MR. THOMPSON:  Your objection is noted.  I |
| 12:02:52 | 5 | have got a couple of more questions.  I think they |
| 12:02:54 | 6 | do go to both the need for an injunction and |
| 12:02:56 | 7 | materiality, I will say that much. |
| 12:02:58 | 8 | MR. KEHOE:  That's fine.  You can ask and |
| 12:03:00 | 9 | we will see. |
| 12:03:04 | 10 | Q.  Has your brother ever indicated to you that |
| 12:03:10 | 11 | he has any regrets about his conduct during his time |
| 12:03:20 | 12 | at Apollo? |
| 12:03:22 | 13 | A.  Define "regret," in terms of what conduct? |
| 12:03:24 | 14 | Q.  His conduct relating to submission of |
| 12:03:28 | 15 | expenses.  Has your brother ever indicated to you |
| 12:03:30 | 16 | that he regrets anything that he did? |
| 12:03:36 | 17 | A.  I am trying to sort the question and |
| 12:03:40 | 18 | understand.  I think what my brother and I have |
| 12:03:44 | 19 | discussed on this topic and what you're asking, I |
| 12:03:48 | 20 | think, is more, he was the youngest partner at |
| 12:04:02 | 21 | Apollo.  He always worked.  I always work.  My |
| 12:04:08 | 22 | parents ingrained work ethic in us.  They are |
| 12:04:12 | 23 | immigrants.  They came to this country with nothing |
| 12:04:14 | 24 | and they educated their kids.  So, you know, I think |
| 12:04:20 | 25 | to end up in the situation he did when he was the |

73

```
12:04:22   1   youngest partner promoted at the firm, at a firm
12:04:26   2   where he came from a different culture and a
12:04:28   3   different background, it was a great honor and
12:04:34   4   praise to my parents that they did a good job.  You
12:04:38   5   know, a nice pat on the back.  And then to see him
12:04:38   6   go through what he's gone through, I think what we
12:04:44   7   all feel and, you know, have gone through since the
12:04:48   8   news cycle is not about regret, it's just about
12:04:54   9   trying to understand, you know, what just happened.
12:05:00  10          Yes, it affected my mother's health even
12:05:02  11   more.  It's sad that we are where we are today.
12:05:10  12          MR. THOMPSON:  Let's go off record.
12:05:12  13          THE VIDEOGRAPHER:  The time right now is
12:05:16  14   11:54.  We are off the record.
12:20:46  15          (Whereupon a recess was taken.)
12:20:46  16          THE VIDEOGRAPHER:  This marks the beginning
12:20:58  17   of tape number 2.  The time right now is 12:10 p.m.
12:21:08  18   we are back on the record.
          19   EXAMINATION BY
12:21:10  20   MR. THOMPSON:
12:21:10  21      Q.  Ms. Rashid, I just have a few more
          22   questions right now.
12:21:14  23          Going back to questions about the sales
12:21:16  24   associate at Zegna, Joel, was he based in New York
12:21:24  25   or Los Angeles, if you recall?
```

                                                            74

| | | |
|---|---|---|
| 12:21:26 | 1 | A.   Los Angeles, I believe. |
| 12:21:32 | 2 | Q.   And when was the last time that you would |
| 12:21:34 | 3 | have had any dealings with Joel? |
| 12:21:36 | 4 | A.   I don't recall. |
| 12:21:42 | 5 | Q.   Was it within the last couple of years? |
| 12:21:50 | 6 | A.   Honestly, I don't remember the last time. |
| 12:21:54 | 7 | Q.   Do you still shop at Zegna? |
| 12:22:00 | 8 | A.   No.  Zegna is men's, Zegna is not women's, |
| 12:22:06 | 9 | so anytime I purchased an item it was for my father. |
| 12:22:10 | 10 | There are no women's items at Zegna. |
| 12:22:16 | 11 | Q.   In the period from January 2010 to |
| 12:22:22 | 12 | September 2013, did you ever have any communications |
| 12:22:30 | 13 | with your brother's personal assistants at Apollo? |
| 12:22:38 | 14 | A.   I have left messages for Ali. |
| 12:22:44 | 15 | Q.   Did you have any conversations with them, |
| 12:22:48 | 16 | other than leaving messages? |
| 12:22:54 | 17 | A.   No.  He had many assistants over the years. |
| 12:22:56 | 18 | I didn't know them personally.  When I would call |
| 12:22:58 | 19 | and they answered, I would leave messages. |
| 12:23:00 | 20 | Q.   Did your brother ever talk to you about his |
| 12:23:04 | 21 | personal assistants? |
| 12:23:08 | 22 | A.   Not specifically.  We shared frustrations |
| 12:23:12 | 23 | about constant rotations of changing assistants. |
| 12:23:22 | 24 | Q.   Thank you, Ms. Rashid.  I don't have any |
| 12:23:24 | 25 | more questions for you on direct examination? |

75

| | | |
|---|---|---|
| 12:23:30 | 1 | MR. KEHOE:  I might just have a few |
| 12:23:30 | 2 | follow-up questions based on some of the questions |
| 12:23:32 | 3 | that were asked before.  I will try to take them in |
| | 4 | the sequence in which they came. |
| | 5 | EXAMINATION BY |
| | 6 | MR. KEHOE: |
| 12:23:36 | 7 | Q.  Do you recall questions by Mr. Thompson |
| 12:23:38 | 8 | about Pat McGinnis? |
| 12:23:38 | 9 | A.  I do. |
| 12:23:40 | 10 | Q.  And who is Pat McGinnis? |
| 12:23:42 | 11 | A.  Patrick McGinnis -- |
| | 12 | Q.  Patrick McGinnis? |
| 12:23:46 | 13 | A.  -- he is a family friend of Ali and me. |
| 12:23:50 | 14 | Ali and Patrick went to Georgetown together. |
| 12:23:52 | 15 | Q.  Was Patrick McGinnis in the financial |
| 12:23:54 | 16 | services business? |
| 12:23:56 | 17 | A.  He was. |
| 12:23:56 | 18 | Q.  Do you know if your brother and he talked |
| 12:24:02 | 19 | about the financial services business when they went |
| 12:24:06 | 20 | out for drinks or dinner? |
| 12:24:08 | 21 | A.  I am sure they did.  They were both in the |
| 12:24:10 | 22 | same industry. |
| 12:24:12 | 23 | Q.  Let me, I am going to be jumping around a |
| 12:24:16 | 24 | bit, so I am not going to be covering everything |
| 12:24:18 | 25 | that was covered by Mr. Thompson, but just a couple |

76

```
12:24:24   1   of e-mails that I would like to follow up on, maybe
12:24:26   2   in a representative fashion so we don't have to go
12:24:28   3   through all of them.
12:24:30   4           If you could pull, for instance, Exhibit
12:24:32   5   40.  I think it's Plaintiff's Exhibit 40, and this
12:24:42   6   is a reservation for two at the Gramercy Tavern; do
12:24:50   7   you see that?
12:24:50   8       A.  I do.
12:24:50   9       Q.  I believe that if we look at 42, 42 is, it
12:25:00  10   looks like Bettina, it is an e-mail from Bettina B E
12:25:10  11   T T I N A, concerning four at the Gramercy Tavern.
12:25:18  12   Do you see that?
12:25:18  13       A.  I do.
12:25:18  14       Q.  "I currently have a table for four"?
12:25:22  15       A.  I do.
12:25:22  16       Q.  I believe Mr. Thompson asked you questions
12:25:24  17   like this and you said that you didn't recall this
12:25:28  18   dinner?
12:25:30  19           MR. THOMPSON:  Objection as to form.
12:25:34  20       A.  That's correct.
12:25:34  21       Q.  Do you recall if you were even part of the
12:25:38  22   four people for whom this reservation was made?
12:25:44  23       A.  I do not recall.
12:25:48  24       Q.  So not only do you not recall the dinner,
12:25:50  25   you don't even recall if it was four other people,
```

77

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | including your brother, for which you didn't even        |
| 12:25:54 | 2  | attend.                                                  |
| 12:25:54 | 3  |      A.  I would be hard pressed to recall a dinner      |
| 12:25:56 | 4  | that was in 2012, which is more than six years ago.      |
| 12:26:02 | 5  |      Q.  Let me go to some questions that Mr.            |
| 12:26:06 | 6  | Thompson asked you about the trip on Thanksgiving        |
| 12:26:12 | 7  | 2012 and I believe that you talked about having          |
| 12:26:14 | 8  | dinner with Mr. Gonsalves and your brother in, I         |
| 12:26:20 | 9  | believe it was a Brazilian steak house?                  |
| 12:26:24 | 10 |      A.  That's correct.                                 |
| 12:26:24 | 11 |      Q.  Where was that?                                 |
| 12:26:26 | 12 |      A.  Where was that?                                 |
| 12:26:28 | 13 |      Q.  Yes.                                            |
| 12:26:28 | 14 |      A.  In Florida.                                     |
| 12:26:30 | 15 |      Q.  Now, before we go into that.  You had also     |
| 12:26:32 | 16 | mentioned, and correct me if I am wrong, if I            |
| 12:26:34 | 17 | misstate anything that you say -- that you said,         |
| 12:26:36 | 18 | excuse me.                                               |
| 12:26:38 | 19 |          You mentioned that Moleis had done some         |
| 12:26:42 | 20 | work on the IPO for Metals USA?                          |
| 12:26:46 | 21 |      A.  That's right.  We were not lead, which          |
| 12:26:48 | 22 | basically means Moleis -- well, at the time that I       |
| 12:26:52 | 23 | was there Moleis did not underwrite securities.  So      |
| 12:26:56 | 24 | we were what you would call a co-manager in the          |
| 12:27:00 | 25 | securities industry.                                     |

78

| | | |
|---|---|---|
| 12:27:00 | 1 | Q.  But did you work on that for Moleis, on the |
| 12:27:04 | 2 | IPO? |
| 12:27:04 | 3 | A.  I did. |
| 12:27:04 | 4 | Q.  When was that approximately? |
| 12:27:06 | 5 | A.  I believe around 2010. |
| 12:27:08 | 6 | Q.  Let's go back to Thanksgiving of 2012.  You |
| 12:27:16 | 7 | talked, in response to questions by Mr. Thompson, |
| 12:27:18 | 8 | about you and your brother and parents being in |
| 12:27:24 | 9 | Florida and having dinner and going on a boat with |
| 12:27:28 | 10 | Mr. Gonsalves? |
| 12:27:28 | 11 | A.  That's right. |
| 12:27:30 | 12 | Q.  What was going on during that period of |
| 12:27:34 | 13 | time?  By the way, let me withdraw that question. |
| 12:27:36 | 14 | You mentioned that your brother was friends |
| 12:27:40 | 15 | with Lourenco Gonsalves; is that right? |
| 12:27:42 | 16 | A.  That's correct. |
| 12:27:42 | 17 | Q.  What was his professional relationship with |
| 12:27:48 | 18 | Metals USA; and I say "his," am talking about your |
| 12:27:52 | 19 | brother's? |
| 12:27:52 | 20 | A.  My brother was on the board of Metals USA. |
| 12:27:56 | 21 | My brother had worked with Lourenco and Metals USA |
| 12:28:00 | 22 | was since he was a young professional at Apollo and |
| 12:28:06 | 23 | basically the running joke with Lourenco, he liked |
| 12:28:08 | 24 | to call Ali his younger brother.  In fact, the joke |
| 12:28:12 | 25 | even came up at dinner with my parents; and Lourenco |

79

| | | |
|---|---|---|
| 12:28:18 | 1 | was very fond of Ali, he respected Ali's |
| 12:28:22 | 2 | professional achievements, as well as what Ali had, |
| 12:28:26 | 3 | you know, brought to the table from a Metals USA |
| 12:28:32 | 4 | perspective.  There was mutual respect there. |
| 12:28:34 | 5 | Q.  So, let's go back to some questions asked |
| 12:28:36 | 6 | by Mr. Thompson concerning Thanksgiving 2012.  And I |
| 12:28:38 | 7 | just want to expand on it a little bit. |
| 12:28:42 | 8 | Was there any business transaction pending |
| 12:28:44 | 9 | in Thanksgiving 2012 involving Metals USA? |
| 12:28:48 | 10 | A.  There was a transaction that was announced |
| 12:28:52 | 11 | post-Thanksgiving, which was the acquisition of |
| 12:28:56 | 12 | Metals USA by Reliance Steel and Aluminum. |
| 12:29:00 | 13 | Q.  And what was the value of that transaction? |
| 12:29:02 | 14 | A.  Market value at that time, the announced |
| 12:29:06 | 15 | transaction value -- excuse me, I think it was north |
| 12:29:08 | 16 | of a billion dollars. |
| 12:29:10 | 17 | Q.  So, and this was how long after |
| 12:29:14 | 18 | Thanksgiving? |
| 12:29:14 | 19 | A.  A couple of months. |
| 12:29:16 | 20 | Q.  So was this transaction in negotiations |
| 12:29:18 | 21 | during that period of time, to your knowledge? |
| 12:29:20 | 22 | A.  I know the transaction was being |
| 12:29:24 | 23 | contemplated.  Moleis was representing Reliance, |
| 12:29:30 | 24 | however, I was conflicted out of the deal, so I did |
| 12:29:32 | 25 | not know the details of the transaction, but I know |

80

| | | |
|---|---|---|
| 12:29:34 | 1 | that there had been talks and, I mean, the amounts |
| 12:29:38 | 2 | of time, I think, every investment bank had pitched |
| 12:29:42 | 3 | Metals USA to do something over the years, that's |
| 12:29:44 | 4 | what investment banks, we all do; but I know there |
| 12:29:48 | 5 | was a transaction pending in terms of, you know, |
| 12:29:52 | 6 | talks had begun, discussions.  What was the right |
| 12:29:56 | 7 | path for Metal?  My boss had pitched it; several |
| 12:30:00 | 8 | other bankers had pitched it. |
| 12:30:02 | 9 | So I know Ali and Lourenco were always |
| 12:30:06 | 10 | talking about:  What are we going to do about |
| | 11 | Metals?  Are we in acquisition mode or production |
| 12:30:10 | 12 | mode?  What are we doing? |
| 12:30:10 | 13 | Q.  Going to Thanksgiving 2012, with your |
| 12:30:12 | 14 | brother, on the board of Metals USA, would it have |
| 12:30:18 | 15 | been unusual for Lourenco and your brother to be |
| 12:30:20 | 16 | talking about business transactions, including this |
| 12:30:24 | 17 | one billion dollar deal during that time frame? |
| 12:30:28 | 18 | A.  Not at all. |
| 12:30:28 | 19 | Q.  Let me reverse it the other way:  Given |
| 12:30:32 | 20 | that they were on the cusp of a 1 billion dollar |
| 12:30:36 | 21 | sale -- and by the way, the sale information was |
| 12:30:40 | 22 | public information? |
| 12:30:40 | 23 | A.  That is correct.  Metals USA was a public |
| 12:30:44 | 24 | company.  Reliance Steel and Aluminum was a public |
| 12:30:46 | 25 | company.  These were all public filings. |

81

```
12:30:48   1        Q.   There was Tombstone added in the Wall
12:30:52   2   Street Journal?
12:30:52   3        A.   That's correct.
12:30:52   4        Q.   Turning it back the other way:  Given this
12:30:56   5   pending sale and given Ali's, your brother Ali's
12:31:02   6   role on the board, as a member of the board, would
12:31:06   7   it have been highly unusual for them not to be
12:31:10   8   talking business during this time?
12:31:12   9        MR. THOMPSON:  Objection as to form.  Calls
12:31:14  10   for speculation.
12:31:16  11        Q.   You can answer.
12:31:16  12        A.   Having been in the industry and having been
12:31:18  13   a banker for 10 years, I would say that it would
12:31:22  14   seem -- it would make him the worst investment
12:31:24  15   professional in the world to not be talking to his
12:31:28  16   portfolio CEO about what to do with the portfolio
12:31:32  17   company.
12:31:32  18        Q.   So while you were conflicted out of the
12:31:36  19   deal, is it clear to you, ma'am, that during these
12:31:40  20   visits with Mr. Gonsalves during Thanksgiving 2012,
12:31:44  21   and I include the dinner as well as the boat ride,
12:31:48  22   is it clear to you that your brother and Lourenco
12:31:52  23   Gonsalves were talking business during those
12:31:54  24   meetings on both of those days?
12:31:56  25        MR. THOMPSON:  Objection.
```

82

```
12:31:56   1        A.   They broke out several times to talk about
12:32:00   2   work.
12:32:00   3             MR. KEHOE:  Can I just have one moment?
12:32:02   4             Ma'am, thank you very much.  I have no
12:32:08   5   further questions.
12:32:08   6             MR. THOMPSON:  And I have nothing further.
12:32:10   7             Thank you very much, Ms. Rashid.
12:32:12   8             MR. KEHOE:  We will read.
12:32:14   9             THE VIDEOGRAPHER:  The time right now is
12:32:16  10   12:21 p.m. we are off the record.
          11             (At 12:21 P.M., the deposition proceedings
          12   concluded.)
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```

                                                              83

```
 1
 2
 3
 4
 5
 6            I, EREM RASHID, do hereby declare
 7    under penalty of perjury that I have read the
 8    foregoing transcript of my deposition; that I have
 9    made the such corrections as noted herein, in ink,
10    initialed by me, or attached hereto; that my
11    testimony as contained herein, as corrected, is true
12    and correct.
13
14    _____ I have made changes to my deposition.
15    _____ I have NOT made any changes to my deposition.
16
17            EXECUTED this _____ day of _____,
18    _____, at _____, _____.
                   (City)                      (State)
19
20                      _____
                        EREM RASHID
21
22
23
24
25
                                                         84
```

```
 1                        ERRATA SHEET
 2      Deposition of: EREM RASHID
        Date taken:  November 15, 2018
 3      Case: SEC vs. Ali Rashid, et al.
        PAGE LINE
 4      ____ ____      CHANGE: _____
                       REASON: _____
 5
        ____ ____      CHANGE: _____
 6                     REASON: _____
 7      ____ ____      CHANGE: _____
                       REASON: _____
 8
        ____ ____      CHANGE: _____
 9                     REASON: _____
10      ____ ____      CHANGE: _____
                       REASON: _____
11
        ____ ____      CHANGE: _____
12                     REASON: _____
13      ____ ____      CHANGE: _____
                       REASON: _____
14
        ____ ____      CHANGE: _____
15                     REASON: _____
16      ____ ____      CHANGE: _____
                       REASON: _____
17
        ____ ____      CHANGE: _____
18                     REASON: _____
19      ____ ____      CHANGE: _____
                       REASON: _____
20
        ____ ____      CHANGE: _____
21                     REASON: _____
22      ____ ____      CHANGE: _____
                       REASON: _____
23
24
        Signed    _____
25      Dated     _____

                                                    85
```

**GRADILLAS COURT REPORTERS**
**(310) 859-6677**

```
 1  STATE OF NEW YORK      )
 2                         ) SS
 3  COUNTY OF SUFFOLK      )
 4
 5          I, hereby certify that the witness in the
 6  foregoing deposition EREM RASHID, was by me duly
 7  sworn to testify to the truth, the whole truth and
 8  nothing but the truth, in the within-entitled cause;
 9  that said deposition was taken at the time and place
10  herein named; and that the deposition is a true
11  record of the witness's testimony as reported by me,
12  a duly certified shorthand reporter and a
13  disinterested person, and was thereafter transcribed
14  into typewriting by computer.
15          I further certify that I am not interested
16  in the outcome of the said action, nor connected
17  with nor related to any of the parties in said
18  action, nor to their respective counsel.
19          IN WITNESS WHEREOF, I have hereunto set my
20  hand this 21st day of November, 2018.
21  Reading and Signing was:
22  xx requested __ waived __ not requested
23          _____
            MONIQUE CABRERA
24
25
```

86