UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          v.<br><br>MOHAMMED ALI RASHID,<br><br>                    Defendant. | No. 17-cv-8223 (PKC) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE IN OPPOSITION TO DEFENDANT MOHAMMED ALI RASHID'S
*DAUBERT* MOTION TO EXCLUDE THE OPINIONS OF KEVIN PIERCE**

Duane K. Thompson
James M. Carlson
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20002
Direct:  (202) 551-3711

*Counsel for the Plaintiff*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  MEMORANDUM OF LAW ............................................................................................... 3
     A.   RELEVANT DISCOVERY HISTORY ................................................................ 3
     B.   LEGAL STANDARDS ......................................................................................... 5
     C.   MR. PIERCE IS QUALIFIED TO TESTIFY AS AN EXPERT ........................... 6
     D.   MR. PIERCE'S REPORT AND METHODOLOGY ............................................. 8
     E.   THE MOTION'S ARGUMENTS ARE WITHOUT MERIT ................................ 9

III. CONCLUSION ................................................................................................................. 13

**TABLE OF AUTHORITIES**

**CASES**

*Aigner El Ansary v. The N.Y. and Presbyterian Hosp.*,
  No 17-cv-3963, 2019 WL 3526714 (S.D.N.Y. Aug. 2, 2019) .......................................... 10

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ........................................................................................... 6

*Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936(KMW),
  2011 WL 1674796 (S.D.N.Y. May 2, 2011) .................................................................. 5

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
  No. 11 Civ. 2375(JSR), 2013 WL 440114 (S.D.N.Y. Feb. 15, 2013) ............................ 6

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) ............................................................................................. 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ....................................................................................................... 5

*Gjini v. United States*,
  No. 16-cv-3707, 2019 WL 498350 (S.D.N.Y. Feb. 8, 2019) ....................................... 10

*Houser v. Norfolk Southern Railway Co.*,
  264 F. Supp. 3d 470 (W.D.N.Y. Sept. 7, 2017) ........................................................... 10

*In re MTBE Prods. Liab. Litig.*,
  No 04 Civ. 5424(SAS), 2008 WL 1971538 (S.D.N.Y. May 7, 2008) ............................ 6

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
  No. 09-civ-2675, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) .................................... 13

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
  No. 04 Civ. 7369 (LTS), 2006 WL 2128785 (S.D.N.Y. July 28, 2006) ................... 5, 13

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995) .......................................................................................... 6

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ........................................................................................ 13

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010) ........................................................................... 5

*Pippins v. KPMG LLP*,
  279 F.R.D. 245 (S.D.N.Y. 2012) ............................................................................................... 2

*Ruggiero v. Warner-Lambert Co.*,
  424 F.3d 249 (2d Cir. 2005) .................................................................................................... 11

*Stinson v. City of New York*,
  2015 WL 4610422 (S.D.N.Y. July 23, 2015) .......................................................................... 11

*Treppel v. Biovail Corp.*,
  233 F.R.D. 363 (S.D.N.Y. 2006) ............................................................................................... 2

*WIZKIDS/NECA LLC v. TIII Ventures, LLC*,
  No. 17-cv-2400, 2019 WL 1454666 (S.D.N.Y. March 31, 2019) ........................................... 10

**RULES**

Fed. R. of Evid. 702 .......................................................................................................... 3, 5

I.     **INTRODUCTION**

Defendant Mohammed Ali Rashid's ("Rashid") *Daubert* Motion to Exclude the Opinions of Kevin Pierce (the "Motion") [Doc. 112-2] is almost exclusively premised on the unpersuasive argument that Mr. Pierce did not rely on sufficient facts or data in reaching the opinions contained in his initial expert report.[1]  Rashid's Motion is essentially one that goes to the weight of the evidence and not its admissibility.  In particular, the Motion argues that Mr. Pierce did not review a sufficient number of relevant Apollo emails or other material.  This argument fails.  To the contrary, Mr. Pierce constructed a database containing over 100,000 pages of Apollo documents produced both during the SEC investigation and throughout discovery in this case.  *See* Ex. A to the Pierce's Expert Report at 2[2].  In analyzing these documents, Mr. Pierce found affirmative evidence that the vast majority of expenses, which Rashid had previously admitted were wrongly classified as business, were in fact personal in nature.[3]  Ignoring this fact, Rashid claims these documents provide an unreliable factual basis for Mr. Pierce's analysis because the documents were selected during discovery via the use of search terms provided to Mr. Rashid's ex-employer, Apollo Management, L.P. ("Apollo").  This argument – and the underlying premise for it – is without any basis in law or fact.

---

[1] Though Mr. Pierce has filed an initial expert report dated April 15, 2019 and a rebuttal expert report dated May 13, 2019, the Motion only focuses on his initial expert report.

[2] For the Court's convenience, a copy of Mr. Pierce's Initial Expert Report is attached hereto as Exhibit A.

[3] In many instances, Rashid's very description of the expense indicated the absurdity of considering them valid business expenses (i.e., dinners with portfolio company executives who were not in town at the time, alleged gifts made by Rashid that were never sent or received, lavish birthday parties at New York clubs for his then wife).  Indeed, the declarations of many of the portfolio companies' executives establish such facts, and these same declarations were reviewed by Mr. Pierce and have been submitted in the form of direct testimony declarations to the Court. [Doc. 101; Ex. A to Pierce's Initial Report.]

First, the use of search terms to identify discoverable electronic material – and ultimately relevant and reliable data to be used by experts – should not be controversial at all. The use of search terms to narrow the production and lessen the burden of electronic discovery is overwhelmingly endorsed in this district. *See e.g., Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("Defined search strategies are even more appropriate in cases involving electronic data, where the number of documents may be exponentially greater" than cases involving traditional hard copy production); *Pippins v. KPMG LLP*, 279 F.R.D. 245, 251 (S.D.N.Y. 2012) (finding the use of search terms to narrow the scope of material to be reviewed as appropriate). The fact that Mr. Pierce then based his conclusions on the very same data generated by using certain search terms is not a valid ground for excluding his opinions. Moreover, the cases Rashid cites in the Motion regarding the exclusion of expert opinion based upon unreliable data deal with medical and technical experts, who wholly ignore available record evidence or are not at all qualified as experts. Those cases are wholly inapplicable here.

Second, throughout this case, Rashid's counsel has had the opportunity to request additional or different information from Rashid's former employer, Apollo, but they chose not to do so. In fact, as discussed below, the SEC specifically reached out to Rashid's then counsel – Quinn Emanuel – in an effort to work together to generate agreed upon search terms for Apollo's electronic documents, which included Rashid's calendars and emails. Rashid's then counsel, however, chose not to agree to *any* search terms with the SEC and simply served their own subpoena. Because Rashid's counsel would not agree to search terms, the SEC likewise filed their own subpoena on Apollo. Then, after receiving responses and objections from Apollo in response to their subpoena, Rashid chose not to pursue any motion practice or further discovery from

Apollo. Simply put, Rashid now complains about the evidence relied upon by one of the SEC's experts, but Rashid never attempted to obtain further evidence to support his defenses.

Moreover, the Motion fails to identify a specific email or document that Mr. Pierce did not, but should have, reviewed. Instead, the Motion claims – without any support or example – that Mr. Pierce is looking at the wrong documents. Even if Rashid's argument regarding "unreliable data" had merit – which it does not – it is fodder for cross-examination rather than a basis to exclude an expert's opinion under *Daubert* and its progeny.

In sum, all of the Motion's arguments are without merit, and Mr. Pierce's proffered opinions satisfy the requirements of Federal Rule of Evidence 702. Accordingly, the Court should deny the Motion in its entirety.

## II.     MEMORANDUM OF LAW

### A.     RELEVANT DISCOVERY HISTORY

Rashid's Motion essentially argues that Mr. Pierce's opinions are flawed because he was sent "on a mission to find a needle in a haystack" and was pointed to the wrong haystack. (Mot. at 15.) This tortured metaphor ignores the fact that Rashid had the opportunity during discovery to cooperatively work with both the SEC and Apollo to narrow and focus discovery in this case. They chose not to do so. In order to explain this, a short review of the third party discovery directed towards Apollo in this case is helpful.

On March 26, 2018, the undersigned counsel for the SEC emailed Rashid's then counsel indicating "we would like to discuss our respective approaches to requesting e-mails from Apollo. We would like to be able to coordinate as much as possible in an effort to reduce any discovery issues." *See* Ex. B, Carlson email of March 26, 2018. On April 11, 2018, the undersigned and Rashid's then counsel exchanged draft subpoenas in an effort to coordinate their discovery requests

targeted at Apollo.  *See* Ex. C, Carlson email of April 11, 2018 attaching draft subpoena rider; Ex. D., Sutton email of April 11, 2018 attaching draft subpoena rider.  One day later, the undersigned wrote to Rashid's then counsel indicating:

> We have received your proposed subpoena.  We note that you are proposing to receive all of Mr. Rashid's emails from Apollo.  Such a request is likely to draw an objection from Apollo and may lead to motions practice.  Thus, we do not agree with such an approach, but obviously you should pursue whatever strategy you see fit.  Nonetheless, are [there] any particular search terms that you would like added to our request? We believe Apollo will respond more quickly to our request based on its narrow tailoring, and adding additional terms may help both Parties get the discovery they need without court intervention.

Ex. E, Carlson email of April 12, 2018.  On April 12 and 13, Rashid's then counsel sent a string of emails to SEC counsel indicating they would "discuss internally" the search term approach, but ultimately indicated they would discuss their "requests and any burden objections with Apollo."  Ex. F, Sutton email string of April 12-13, 2018.  Ultimately, the SEC and Rashid served separate document subpoenas on Apollo on April 13, 2018.

On May 18, 2018, the undersigned again reached out via email to Rashid's then counsel in an effort to agree upon search terms for the outstanding subpoenas to Apollo.  In particular, the email read:

> We believe it would be very helpful to coordinate our search terms for the Parties' separate subpoenas to Apollo.  Are you available on Monday or Tuesday to discuss? We believe that by mutually agreeing to certain search terms it would aid in avoiding any battles over our subpoenas' breadth.  Please let us know your availability as soon as possible.

Ex. G, Carlson email of May 18, 2018.  Despite these efforts from the SEC's counsel, no agreement regarding search terms to be used was ever reached between the Parties.

On July 2, 2018, Rashid's present counsel substituted into this case.  [Doc. 36]  Between their document productions during the investigation in this case and in response to the Parties' subpoenas, Apollo has produced well over 100,000 pages of documents including Rashid's emails,

Rashid's calendars, various fund documents, expense reports, and other documents. Relevant to the present Motion, Rashid's counsel never filed a discovery motion seeking additional production from Apollo or seeking relief from the Court on the matter.

### B. LEGAL STANDARDS

To be admissible, expert testimony must meet the requirements established by Federal Rule of Evidence 702, as explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), and its progeny. Courts employ a three-part test in determining whether an expert's proposed testimony meets the standards set forth in Federal Rule of Evidence ("Fed. R. Evid. 702"). See *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 457 (S.D.N.Y. 2010).

First, "the witness must be 'qualified as an expert by knowledge, skill, experience, training or education.'" *Id*. (quoting Fed. R. Evid. 702). A witness can qualify as an expert based solely on practical experience. *See Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369(LTS), 2006 WL 2128785, at *5-6 (S.D.N.Y. July 28, 2006) (qualifying CPA as an expert based on his experience with financial and economic analysis); *Pension Comm.*, 691 F. Supp. 2d at 460-61 (qualifying expert based on extensive experience with hedge fund analysis).

Second, "the expert's knowledge must be of the type that will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pension Comm.*, 691 F. Supp. 2d at 457 (quoting Fed. R. Evid. 702). "This inquiry essentially looks to whether the testimony is relevant." *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936(KMW), 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011). The court must determine whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." *Johnson & Johnson*, 2006 WL 2128785, at *6 (quoting FRE 401).

Third, "the proposed expert testimony must be based 'on a reliable foundation.'" *Pension Comm.*, 691 F. Supp. 2d at 458 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). "[A]ny specific lack of textual authority goes more to the weight of the opinion rather than its admissibility." *Johnson & Johnson*, 2006 WL 2128785, at *7 (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). Moreover, a "non-scientific expert may rely on experience to assess facts." *In re MTBE Prods. Liab. Litig.*, No 04 Civ. 5424(SAS), 2008 WL 1971538, at *8 (S.D.N.Y. May 7, 2008).

"A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). As the courts and Advisory Committee have made clear, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note; *see also E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004). "The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Amorgianos*, 303 F.3d at 266 (citation omitted) (internal quotation marks omitted); *see also Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375(JSR), 2013 WL 440114, at *25 (S.D.N.Y. Feb. 15, 2013) ("only serious flaws in reasoning or methodology will warrant exclusion" (citation omitted)).

### C.   MR. PIERCE IS QUALIFIED TO TESTIFY AS AN EXPERT

Despite the arguments put forth in Rashid's *Daubert* motion, Mr. Pierce is qualified to testify as an expert in this case. Mr. Pierce is currently a Director in the Dispute Consulting Group at Stout Risus Ross and a licensed Certified Public Accountant ("CPA") with over 22 years of

experience. *See* Ex A., Pierce's Expert Report at 4. He holds the Certified Fraud Examiner ("CFE") and Certified in Financial Forensics ("CFF") designations. *Id*. He is a member of the American Institute of Certified Public Accountants ("AICPA"), the Ohio Society of Certified Public Accountants ("OSCPA"), and the Association of Certified Fraud Examiners ("ACFE"). *Id*. Throughout his career, he has consulted with lawyers and their clients regarding business, financial and economic issues related to complex litigation and disputes in a wide array of industries. *Id*. Most of these matters related to the assessment and estimation of economic damages and/or financial forensic investigations. *Id*. Mr. Pierce has issued expert reports in many of these matters in addition to providing testimony.

During the course of his work at Stout, Mr. Pierce has performed analyses and issued expert reports relating the business and/or personal nature of expenditures by individuals and businesses. *See* Ex A., Pierce's Expert Report at 4. His work in this area includes, but is not limited to, analyzing expense reports submitted by professional services providers including attorneys and investment advisors. *Id*. Additionally, he has analyzed the business or personal nature of the expenditures of hedge fund managers, construction project owners/managers, accountants, business managers and others. *Id*. Mr. Pierce has also worked in professional services for over 22 years in which he himself has submitted expenses for reimbursement under various corporate expense policies. *Id*.

Prior to joining Stout, Mr. Pierce was a Senior Associate at The Siegfried Group, LLP, which is a national consulting firm. *See* Ex A., Pierce's Expert Report at 4. While at The Siegfried Group, LLP, he primarily worked with a "Big 4" accounting firm providing audit and review services to publicly held and large privately held companies. *Id*. His previous work experience also includes providing audit, review, compilation, internal control review and remediation, and

other accounting and consulting services at public accounting firms. *Id*. Tellingly, Mr. Pierce has been qualified as an expert in federal, state, and bankruptcy courts throughout the United States. *Id*.

### D. MR. PIERCE'S REPORT AND METHODOLOGY

The Motion seeks to obfuscate and confuse the actual scope of the opinions in Mr. Pierce's expert report. In contrast to the arguments raised in the Motion, the scope of the opinions in Mr. Pierce's initial expert report are actually quite narrow. As Mr. Pierce outlines in his expert report:

> As a result of Apollo's investigation into Mr. Rashid's expense reports that Mr. Rashid and his advisors self-identified items that he charged his clients as business expenses that he later reclassified as "Personal", "Partial Business Expense", or "Personal (prev. paid back)" expenses. A worksheet within Plaintiff's Exhibit 19 Bates Number APOLLO00109357 that represents Mr. Rashid's reclassification of expenses from business to personal which is referred to as the "Master Spreadsheet". As described in further detail throughout my report, the Master Spreadsheet includes 988 individual expense items noted as "Personal", "Partial Business Expense", or "Personal (prev. paid back)" totaling approximately $250,000 (the "Relevant Expenses").
>
> ***I have been asked by the SEC to analyze, investigate and evaluate, based on the documents made available to me, whether or not the 988 items are business expenses or personal expenses of Mr. Rashid.***

*See* Ex A., Pierce's Expert Report at 4 (emphasis added). In short, the SEC hired Mr. Pierce to review the 988 items[4] that Rashid previously acknowledged were misclassified as business expenses and analyze – given the available documents – whether or not they were business or personal expenses. His task was to – by using his experience, knowledge, and the data available to him – conclude for each expense item whether it was business or personal in nature.

---

[4] None of these 988 items were analyzed as part of the BDO Spreadsheet. Despite occupying a fair amount of space in the Motion, the BDO report is wholly irrelevant to any analysis performed by Mr. Pierce. He did not review it, analyze it, or base any of his conclusions on the BDO report.

In performing his task, Mr. Pierce's methodology was straightforward. As stated in his direct testimony affidavit, Mr. Pierce:

> performed the following tasks to determine whether the 988 transactions were personal or business in nature: (1) researched the listed Merchant; (2) matched Relevant Expenses to Rashid's Expenses from Apollo's Business Records; (3) analyzed Rashid's employee expense receipt forms and receipts; (4) reviewed Apollo's Travel & Expense Policies; (5) analyzed Rashid's calendar entries produced in this litigation; (6) reviewed various declarations and depositions; and (7) searched over 12,000 of Rashid's emails, which were produced in this litigation.

[Doc. 101-35, Pierce Direct Testimony Decl. at ¶ 18.] In applying that methodology, Mr. Pierce concluded that of the 988 items, $185,542 of the total $250,126 were related to personal items expensed by Mr. Rashid as business related. Of the remaining expenses, $59,313 were partial business and $5,373 are business related. [*Id*. at ¶ 15.] The Motion makes no direct attack on the above-described methodology used by Mr. Pierce.

E.     **THE MOTION'S ARGUMENTS ARE WITHOUT MERIT**

In seeking to exclude Mr. Pierce's expert opinions, Rashid appears to concede that Mr. Pierce has the knowledge, skill, experience, training, and education required to testify as an expert on this subject. To be sure, he has over two decades worth of relevant experience and has conducted analyses and reviews relating to expense reports submitted by professional service providers including attorneys and – like Rashid here – investment advisors. *See* Ex A., Pierce's Expert Report at 4, ¶ 11.

Nor does Rashid seem to disagree with the fact that Mr. Pierce's knowledge *would* assist this Court to determine a fact in issue. Mr. Pierce's report and opinions would obviously aid this Court. Mr. Pierce's opinions ultimately seek to summarize the individual instances of Rashid's expense report fraud in an effort to demonstrate Rashid's sprawling fraudulent conduct over multiple years. His work does this by independently reviewing each of the 988 instances where

Rashid previously admitted that his business expenses submitted to Apollo were actual personal expenses. These efforts will obviously assist the Court and will undoubtedly streamline the trial of this matter. In fact, without Mr. Pierce's opinions, the SEC would be forced to call witness after witness and submit document after document to prove each singular expense in an effort to outline Rashid's fraudulent course of conduct. With Mr. Pierce's work, no such burden is required.

Instead, the Motion claims that Mr. Pierce's opinions are not based on reliable data. This argument fails for a number of reasons. First, the data Mr. Pierce is relying upon is not controversial – it is largely the actual emails and calendar utilized by Rashid while working for Apollo. Such material is extremely reliable and a perfectly reasonably data set for an expert to base his or her opinions. In fact, the very case law cited by Rashid on page 15 of the Motion highlights the difference between using reliable data – like emails and calendar entries – as compared to more speculative and unreliable data.

For example, Rashid cites to *Aigner El Ansary v. The N.Y. and Presbyterian Hosp.*, No 17-cv-3963, 2019 WL 3526714 at *4 (S.D.N.Y. Aug. 2, 2019). In that case, the Court excluded the opinion of a licensed psychologist because, among other things, the psychologist failed to review any of the plaintiff's medical records or made any effort to contact her providers. Rashid also cites to *WIZKIDS/NECA LLC v. TIII Ventures, LLC*, No. 17-cv-2400, 2019 WL 1454666 at *12 (S.D.N.Y. March 31, 2019). In that case, the Court did ***not*** exclude an expert in a trademark infringement case and rejected the argument that the survey performed by the expert did not survey a sufficient universe of consumers. In *Gjini v. United States*, No. 16-cv-3707, 2019 WL 498350, at *14 (S.D.N.Y. Feb. 8, 2019), the court excluded a proposed medical expert because the expert had "no medical education, training, or experience whatever." In *Houser v. Norfolk Southern Railway Co.*, 264 F. Supp. 3d 470, 477 (W.D.N.Y. Sept. 7, 2017), the Western District found a

collision expert's testimony unreliable in a tort case because it was "speculative, based upon an unsupported and inaccurate interpretation of the record evidence, and posits blanket conclusory statement of causation and liability." Finally, in *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 254 (2d Cir. 2005), the Second Circuit affirmed the district court's exclusion of a medical expert's opinion that the diabetes drug produced by the defendant could cause cirrhosis when the expert could point to no studies, or anything else, concluding that that the drug could cause or exacerbate cirrhosis. None of these cases are even remotely applicable to Mr. Pierce's methodology or the data he relied upon in reaching his opinions.

Second, Rashid's claim that Mr. Pierce was led to "the wrong haystack" is simply wrong. First, the use of search terms to cull through large amounts of electronic data has long been endorsed by this court and should be completely non-controversial by now. *See Treppel*, 233 F.R.D. at 374; *Pippins*, 279 F.R.D. at 251. Moreover, as discussed above, the SEC tried to work with Rashid to agree on search criteria and efforts with regard to Apollo's production in this case. This Court has recognized that requiring a search of every email or electronic file kept by numerous custodians over a multi-year stretch is unreasonably burdensome. *Stinson v. City of New York*, 2015 WL 4610422, at *5 (S.D.N.Y. July 23, 2015). This is why "it is critical that the parties work together to define search criteria that will lessen the burdens of electronic discovery." *Id.* The SEC attempted to do just that. Rashid, however, did not agree to **any** search terms with the SEC and instead sought an overly broad subpoena as to Apollo. Then, after Apollo's document production in this case, Rashid did not seek to further enforce that subpoena. In short, Rashid claims the data pool used by Mr. Pierce was flawed and incomplete but refused to work with the SEC, Apollo, or this Court to obtain what information he thought was relevant. To now claim Mr. Pierce had the "wrong data" borders on the absurd.

Rashid also contends that the SEC search terms in its subpoena to Apollo were designed not to return emails evidencing business purposes and should have included the names of the portfolio companies in the Apollo funds. This argument rings untrue. First, searching Rashid's emails for the names of the portfolio companies in the Apollo funds would have returned such a large number of irrelevant emails rendering the culling process useless. Second, Rashid makes no claim that his calendars were subjected to the same search terms as his emails. In fact, Rashid calendars were produced as kept by Apollo not subject to any search term culling.

Rashid also hints that he objects to Mr. Pierce's presumption that the 988 entries he examined were personal unless substantiated as business expenses. Any such objection is meritless. First, each of these 988 entries were those Rashid admitted during Apollo's investigation that he had improperly classified as personal. Moreover, Rashid made this determination after having access to his calendar and email through his attorneys and Paul Weiss during Apollo's internal investigation. Second, as discussed in the SEC's Trial Brief, Apollo's T&E Policies required professionals who incurred business expenses to demonstrate their business purpose. [Doc. 100, SEC Trial Brief at 7.] The presumption that these expenses were – without other evidence – personal is entirely reasonable.[5]

Finally, insofar as Rashid is claiming there are documents or other pieces of information that Mr. Pierce did not consult in forming his opinions, this is classic fodder for cross-examination. "Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the

---

[5] Again it is worth noting that Mr. Pierce **did** find affirmative evidence that the vast majority of these expenses were, in fact, personal in nature.

weight, not the admissibility, of the testimony." *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir. 1996) (per curiam) (internal quotations and citations omitted). In other words, Rule 702 "embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York,* 414 F.3d 381, 395 (2d Cir. 2005). What data Mr. Pierce used and how he came to his conclusions based on that underlying data is basis for cross-examination not exclusion. *See Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09-civ-2675, 2012 WL 526722, at *6 (S.D.N.Y. Feb. 14, 2012) (opponent may challenge the purported bases of expert's opinion on cross-examination); *Johnson & Johnson*, 2006 WL 2128785, at *7 (same). It is telling, however, that the Motion does not identify a single document Mr. Pierce should have examined but did not.[6]

### III. CONCLUSION

As stated above, Mr. Pierce's over 20 years of experience and substantial knowledge of accounting and especially his specialized knowledge regarding the analysis of expense reports submitted by professional services providers including investment advisers qualifies him to testify in this case. Rashid does not argue this. Nor does Rashid directly attack his methodology.

Instead, Rashid attacks the fact that Mr. Pierce based his opinions on Rashid's emails and calendar entries. Even though such material is routinely used as a basis for expert opinions, Rashid claims Mr. Pierce was led to the "wrong haystack" of data. But during discovery, Rashid's counsel would not agree to search terms for Apollo's data. Nor did they seek to enforce their subpoena against Apollo claiming they had not produced certain documents. Nor do they point to specific documents Mr. Pierce should have looked at in forming his opinions. Instead, in his Motion,

---

[6] The Motion also claims that Mr. Pierce has never provided "his documentation for the expenses he reviewed." (Mot. at 14.) This claim is misleading. Mr. Pierce's report contains a spreadsheet identifying his analysis and conclusions for each of the 988 entries he examined. As for Mr. Pierce's work papers, Rashid's counsel never subpoenaed them or issued a discovery request for them.

-13-

Rashid broadly criticizes the SEC, Paul Weiss, BDO, and others.  But the Motion does not offer a valid basis for excluding Mr. Pierce's proffered expert opinions.

For all these reasons, the Court should deny the Rashid's motion to exclude.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Of Counsel: | /s/ James M. Carlson |
| Corey A. Schuster | Duane K. Thompson |
| Donna K. Norman | James M. Carlson |
| Securities and Exchange Commission | Securities and Exchange Commission |
| 100 F Street NE | 100 F Street NE |
| Washington, D.C. 20549 | Washington, D.C. 20549 |
|  | ATTORNEYS FOR PLAINTIFF |

Dated:  September 6, 2019

-15-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the CM/ECF system – or by other methods if so noted – on September 6, 2019 upon all counsel listed below:

Gregory W. Kehoe
David Friedman
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200
Kehoe@gtlaw.com
FriedmanD@gtlaw.com

Theresa M.B. Van Vliet
Genovese Joblove & Battista, P.A.
200 E. Broward Blvd., Ste. 1110
Ft. Lauderdale, FL 33301
(954) 453-8000

***Attorneys for Defendant***

        /s/ James M. Carlson
        James M. Carlson